UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY RYAN GOVE,

         Plaintiff,

   v.                                     Case No. 18-cv-1335-pp

SARGENTO FOODS, INC.,

         Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO DISMISS MAGISTRATE JUDGE'S ORDER (DKT. NO. 6), DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 12), QUASHING SUBPOENA, DENYING PLAINTIFF'S MOTION FOR STATUS CONFERENCE (DKT. NO. 14) AND GIVING PLAINTIFF A DEADLINE OF AUGUST 30, 2019 BY WHICH TO FILE SECOND AMENDED COMPLAINT**

The plaintiff, representing himself, filed a complaint on August 29, 2018, dkt. no. 1, and a motion to proceed without prepaying the filing fee, dkt. no. 2. Six weeks later, Magistrate Judge David Jones issued an order requiring the plaintiff to file an amended complaint by November 9, 2018. Dkt. No. 5. Over two weeks before that deadline, the plaintiff filed a document titled "Motion to Request the Order Directing Plaintiff to File Amended Complaint by Magistrate Judge David E Jones To Be Dismissed." Dkt. No. 6.

The day before the deadline Judge Jones had set, the court received from the plaintiff an amended complaint. Dkt. No. 7. Since then, the plaintiff has filed a motion to compel production of documents, dkt. no. 12, and a motion for a status conference, dkt. no. 14. This order addresses the plaintiff's motion for waiver of the filing fee, denies the plaintiff's other pending motions and screens the plaintiff's amended complaint. Because the amended complaint does not state a claim upon which relief can be granted, the court will give the

1

plaintiff a deadline by which to pay a partial filing fee and by which to file a second amended complaint.

## I.   Background

The plaintiff filed his complaint on August 29, 2018 and, as is required by this court's policy, the clerk's office randomly assigned the case to Magistrate Judge David E. Jones. Dkt. No. 1.

On September 6, 2019, the court received from the plaintiff a Consent to Proceed Before a Magistrate Judge form. Dkt. No. 4. There was a case number on the form—18-CV-1335, which is the case number for this case. But no one had written the name of the plaintiff or the name of the defendant in the caption. There was a signature at the bottom of the form, but there was no box marked to indicate whether the signature belonged to the plaintiff, the defendant or someone else. Id.

A week later, on September 14, 2018, the plaintiff re-filed the Consent to Proceed Before a Magistrate Judge Form. Dkt. No. 4. He included a cover letter, which stated, "Please file –be on safe side. –didn't have Plaintiff checked Thank you." Id. at 1. This time, the box for "Plaintiff/petitioner (attorney or pro se litigant) was marked below the signature line. Id. at 2. There was also a handwritten note at the bottom of the form that said, "Called ECF Help Desk 866-438-5410 WI523 on 9-11-18. Spoke to Mary about not checking the Plaintiff box. –She said it was filed as refused. They could read my handwriting (signature)." Id.

About a month later, on October 10, 2014, Judge Jones "screened" the plaintiff's complaint. As Judge Jones explained in his October 10, 2018 order, 28 U.S.C. §1915 requires a court to verify two things before authorizing a plaintiff to proceed without prepaying the filing fee: (1) that the plaintiff is

unable to pay the filing fee; and (2) that the case "is not frivolous nor malicious, does not fail to state a claim on which relief may be granted, and does not seek monetary relief against a defendant that is immune from such relief." Dkt. No. 5 at 1 (citing 28 U.S.C. 1915(a) and (e)(2)). Dkt. No. 5 at 1. Judge Jones did not analyze whether the plaintiff had the ability to pay the filing fee; he went right to the allegations in the complaint and concluded that they were "not sufficient for the Court to determine whether [the plaintiff] states a claim on which relief may be granted." Id. at 3. Judge Jones explained that

> [a]lthough it appears as though [the plaintiff] is making a retaliation claim, he must provide more detail about what happened, who was involved, and what each person did. Further, [the plaintiff] states that he was discriminated against in violation of Title VII but does not provide any facts to raise a right to relief above the speculative level. [The plaintiff] must provide detail about who discriminated against him, what discriminating acts occurred, and whether the discrimination was based on race, religion, or some other class protected by law.

Id. Judge Jones gave the plaintiff a chance to amend the complaint, but cautioned the plaintiff that the amended complaint would supersede his original complaint—meaning that any claims that he'd made in the original complaint that he didn't include in the amended one would be deemed "withdrawn" by the court. Id. He ordered the plaintiff to file an amended complaint on or before November 9, 2018. Id. at 4.

A few days after Judge Jones issued the screening order, the clerk's office re-assigned the case to this court.

On October 24, 2018—about ten days after the clerk's office had reassigned the case to this court—the court received the "Motion to Request the Order Directing Plaintiff to file Amended Complaint by Magistrate Judge David E Jones to be Dismissed." Dkt. No. 6. The plaintiff began by noting that in

September 2018 he'd filed his refusal to consent to the magistrate judge's authority, but after driving an hour and a half back home, he'd realized that he hadn't marked the "plaintiff" box on the form. Id. at 1. He said that he'd called the clerk's office the next day and learned that the form had been rejected as illegible. Id. He noted that he'd re-sent the form the next week. Id. He said that he received Judge Jones's screening order on October 12, 2018, and said that the question he was pondering was why his case had been assigned to a magistrate judge when he'd asked, in writing and in person with a clerk's office employee, to have his case assigned to a district court judge. Id. at 2. He acknowledged that he had since received something telling him that the case had been reassigned to Judge Pepper. Id. He expressed concern that "someone in your courthouse would . . . do a favor for a friend or for money, by deliberately filing the documents wrongly." Id. He complains that the error "will cost me additional monies at a time when a tight budget is essential." Id. He stated that he did not "need anyone in the Federal Court system assisting [the defendant] or their attorneys in any of their endeavors that is out of the scope of normal business practices," and expressed the hope that "this was just a clerical error." Id. The plaintiff also asked for more time to file the amended complaint (if he still needed to do so), indicating that he was trying to find a lawyer. Id. Finally, he asked for an investigation into "how this so-called error happened." Id.

On November 8, 2018—the day before the deadline Judge Jones had set—the court received from the plaintiff a document captioned "Order Directing Plaintiff to File Amended Complaint." Dkt. No. 7. It appears that the plaintiff intended this document to be an amended complaint. He indicated that the original complaint had incorrectly reflected the date on which he was

terminated—the original complaint had said April 19, 2018, but the correct date was April 30, 2018. Id. at 1. He then went on to list "notable occasions on which [he] was harassed, and or, discriminated against at Sargento Foods INC." Id. This five-page document was not on the court's complaint form and did not contain the words "Amended Complaint." The plaintiff attached nineteen pages of letters, notes and other documents. Dkt. No. 7-1. Among these documents was a Dismissal and Notice of Rights form from the Equal Opportunity Commission dated June 15, 2018, informing the plaintiff that the EEOC was not going to bring suit on his behalf, but that he had ninety days from the receipt of the notice to file his own lawsuit. Id. at 16.

Two months later, the court received a letter from a lawyer representing Sargento Foods. Dkt. No. 9. The letter indicated that on December 18, 2019, "Sargento's process server was hand-delivered a copy of Plaintiff's August 29, 2018 Complaint." Id. Counsel indicated that Sargento would not be responding to the complaint, given its understanding that the plaintiff had filed an amended complaint and the court had not yet screened that document. Id.

Two months later, the court received a letter from the plaintiff. Dkt. No. 10. The letter described a late February 2019 incident at a Menard's store in Appleton, Wisconsin, where the plaintiff had encountered a former work colleague. Id. The letter asserted that the former work colleague had "forcibly, violently" struck the plaintiff in the shoulder. Id. at 1. The plaintiff alleged that this act "was a deliberate, premeditated assault" which "add[ed] to [his] story about the circle of abuse, which occur[ed] due to [his] association with Sargento Foods INC." Id. Two days later, the clerk's office received a letter from the plaintiff, informing the clerk that he intended to serve a subpoena on Menards for production of "the surveillance video." Dkt. No. 11. The plaintiff

asked whether he ought to serve Menards with the subpoena and give a copy to defense counsel or vice versa, and asked whether he was required to copy defense counsel on documents he files with the court. Id. at 2. He concluded by indicated that he had emailed the Eastern District Bar Association and "FreeLegalAnswers.org" for free legal advice, but that no one had responded; he said he had "pages of questions" to ask. He also indicated that he'd been trying to find a lawyer, without success. Id.

On May 9, 2019, the court received from the plaintiff a "motion to compel production of documents." Dkt. No. 12. The motion stated that on March 11, 2019, he had served on Menards a subpoena that he obtained from the Green Bay branch of the district court; he said that his understanding was that "it didn't matter" if the subpoena was "notarized" in Milwaukee or in Green Bay, as long as it was issued by the federal court for the Eastern District of Wisconsin. Id. at 1. He stated that he'd asked Menards for the video of the incident on three occasions, without receiving it. Id. at 2. He also indicated that there had been a hearing in state court regarding a temporary restraining order, during which "[i]t was made clear to everyone" that Menards had "been subpoenaed for the surveillance video footage" and that the plaintiff was waiting for a reply. Id. Th plaintiff asked the court to compel Menards to comply with the subpoena, to award him costs and fees and to give him an opportunity to address any issues.

Less than a week later, the court received a request from the plaintiff, asking for an update on the status of his subpoena. Dkt. No. 13. He said that the matter was urgent because there was a "sensitive window in obtaining the evidence that could disappear." Id. He also stressed that the video was "factual

evidence that will provide a direct-link to the my [sic] Petition against Sargento Foods INC." Id.

Two days after his request for an update, the plaintiff filed a motion for a status conference on the motion to compel, reiterating that the matter was urgent. Dkt. No. 17.

On May 21, 2019, non-party Menard, Inc. filed a response to the plaintiff's motion to compel discovery. Dkt. No. 15. The response asserted that the plaintiff violated various of the Federal Rules of Civil Procedure in serving Menard's with a subpoena. Id. It asked the court to deny the plaintiff's motion to compel production and to quash the subpoena. Id. at 10. Menard's attached several documents to the response, including a copy of the subpoena. Dkt. No. 15-1 at 6.

The court received the plaintiff's first reply brief on May 29, 2019. Dkt. No. 16. He asked the court to give him an extension of time to file a full reply, but also responded to some of the arguments in Menard's response. Id. at 1-2. The court received the plaintiff's second reply on June 3, 2019; it asked the court to reject Menard's objections and compel Menard's to respond to the subpoena. Dkt. No. 17.

Finally, on June 13, 2019, the court received a set of documents from the plaintiff. Dkt. No. 18. It's not clear why the plaintiff filed these documents; they appear to be letters between the plaintiff and various people at Sargento and at Menard's. There are twenty pages of documents in this most recent filing.

## II. The Court's Initial Comments

The Milwaukee division of the Eastern District of Wisconsin is assigned four district court judges and three magistrate judges. Over three years ago,

however, one of the three district court judges became very ill; he passed away in early September 2016. While this meant that there were only three active district court judges handling a case load meant for four, the court was lucky enough at the time to have a "senior" district judge carrying a full case load. That judge, however, fully retired in March 2017. Since then, the three remaining district court judges have handled a case load meant for four, and the number of cases being filed has steadily increased. At present, this court has some five hundred civil cases and a heavy load of criminal cases (many of which have multiple defendants, and several of which are scheduled for trial). In the eleven months since the plaintiff filed his complaint, the court has presided over several trials, including a two-week civil rights trial.

Although the clerk's office assigned this case to Judge Pepper in October 2018, the court is only now able to review it. The combination of the court's delay in reviewing the case and the plaintiff's frequent filings has created a procedural tangle. The court regrets that its delay has contributed to this tangle. It hopes to get the case back on track with this order.

**III.  The Plaintiff's Motion to Request the Order Directing Plaintiff to File Amended Complaint by Magistrate Judge David E Jones to be Dismissed (Dkt. No. 6)**

As discussed above, the plaintiff did not consent to a magistrate judge issuing the final judgment in his case. The court received his first refusal on September 6, 2018, dkt. no. 3, but because the plaintiff didn't fill out all the boxes and blanks on the form, the clerk's office had trouble reading his signature. The plaintiff talked to a clerk's office staff member and re-filed the form on September 14, 2018. Dkt. No. 4. Nonetheless, the case did not get reassigned to Judge Pepper for another month, and in the meantime, Judge Jones issued his screening order.

The court first addresses the plaintiff's concern that the reassignment was delayed because of some conspiracy or collusion between the court's staff and the defendant, and his request that the court investigate why his case was not reassigned immediately upon the court's receipt of his documents. In September 2018, the court had a policy requiring that before the clerk's office could reassign a case based on lack of consent, the court had to receive the completed consent forms from all the parties in the case. In September 2018, the court had received the *plaintiff's* refusal to consent, but it had not received one from the defendant. This was because the court had not yet ordered the complaint to be served on the defendant. Under the court policy in effect at the time, however, the clerk's office could not reassign the case until it received a consent form from the defendant.

The judges of the Eastern District changed that policy on October 15, 2018, due to some problems that had arisen. (In fact, one of those problems was just the one that arose in the plaintiff's case—in cases involving self-represented plaintiffs who ask to waive the filing fee, it can take weeks or months for a defendant to be served and return the consent form.) On the day the judges voted to change the policy, the clerk's office reassigned every case in which one party had filed a refusal to consent. The plaintiff's case was one of the many cases that got reassigned from a magistrate judge to a district court judge on that day. The delayed reassignment of the plaintiff's case was not due to conspiracy or collusion between the clerk's office and the defendant, nor was it a clerical error. It was the result of a judicial policy that was in place when the plaintiff filed his refusal to consent, but which the judges later voted to change.

As to the plaintiff's request that the court dismiss Judge Jones's screening order, the court will deny that request. The plaintiff complains that Judge Jones should not have been allowed to issue the October 10, 2018 screening order because the plaintiff did not consent to his authority to do so. The plaintiff cites Federal Rule of Civil Procedure 72(a) as support for his argument. The plaintiff appears to believe that Judge Jones did not have the authority to issue an order screening his complaint because the plaintiff had not consented to Judge Jones entering final judgment in the case. He is incorrect.

Title 28, United States Code §626(b)(1)(A) provides:

> A judge may designate a magistrate judge to hear and determine *any pretrial matter* pending before the court, except for a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss for failure to state a claim upon which relief can be granted and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

28 U.S.C. §636(b)(1)(A). (Emphasis added). The statute allows this court—Judge Pepper or any other district court judge—to designate Judge Jones to determine any pretrial matter pending before the court. A screening order qualifies as "any pretrial matter." Judge Jones did not dismiss the plaintiff's case or issue a final judgment. He ordered the plaintiff to file an amended complaint. Judge Jones had the authority to issue that order because the court designated him to do so under §626.

Even if Judge Jones hadn't had the authority to issue the screening order requiring the plaintiff to amend his complaint, the result would not have been different. If I (Judge Pepper) had screened the August 29, 2018 complaint

(rather than Judge Jones), I would have required the plaintiff to file an amended complaint. The August 29, 2018 complaint alleges that the plaintiff was fired "because of the sexual harassment, discrimination, religion discrimination/physical abuse, bullying + other harassments," and says that the events were "out of retaliation of speaking up and sticking up for myself." Dkt. No. 1 at 2-3. The complaint then mentions Title VII of the Civil Rights Act of 1964. Id. at 2.

But the complaint did not describe any sexual harassment—it did not say who harassed the plaintiff, or when, or where, or how. The complaint did not describe any discrimination, so there was no way to tell whether the plaintiff believed he was discriminated against because of his gender, his race or ethnicity or his age. The complaint mentioned religious discrimination, but did not identify the plaintiff's religion or say how the defendant discriminated against him based on that religion. The complaint says that this harassment and discrimination occurred in retaliation for him speaking up for himself, but he didn't explain how he spoke up, or who retaliated against him. Judge Jones was correct—the August 29, 2018 complaint did not state sufficient facts for him, or for me, to decide whether he'd stated a claim for which a federal court has the authority to grant relief.

The court will deny the plaintiff's motion to dismiss Judge Jones's October 10, 2018 screening order.

## IV.     Motion to Proceed Without Prepayment of Filing Fee (Dkt. No. 2)

### A.     The Plaintiff's Ability to Pay the Filing Fee

A district court may authorize a plaintiff to proceed without prepaying the $350 filing fee and $50 administrative fee required to start a civil lawsuit if the plaintiff submits an affidavit listing his assets, indicating that he is unable

to pay the fees and stating his belief that he is entitled to the relief he seeks. 28 U.S.C. §1915(a). Section 1915 "is designed to ensure that indigent litigants have meaningful access to the courts." Neitzke v. Williams, 490 U.S. 319 324 (1989).

The plaintiff's affidavit states that he is not employed and not married. Dkt. No. 2. He does not support any dependents. Id. at 1. As for income, he states that he receives $1,240 after taxes and did some side work totaling about $165 in the year prior to the date he filed his complaint. Id. at 2. He reports monthly expenses of $515 in rent, $500 in other household expenses, $65 in storage and $58 in car insurance for a total of $1,138. Id. at 2-3. He states that he owns two older-model cars that are not in good shape and that he has about $4,000 in a checking or savings account. Id. at 3. He reports having $50,000 in an IRA account and stocks worth around $12,000. Id. at 4. He further explains that, at the time he filed the affidavit, he had enough money to live on for about two and a half months, but that after that he would have to dip into his savings; the affidavit indicates that the plaintiff does not have medical insurance and is paying for prescriptions and medical bills out of his bank account. Id.

The plaintiff filed this affidavit eleven months ago. The court assumes that the plaintiff has not been successful in finding a job, and that he has had to begin using his savings to support himself. For these reasons, the court concludes that the plaintiff does not have the ability to pay the $400 filing fee.

B.     The Allegations in the November 8, 2018 Amended Complaint

1.     *Legal Standard*

In enacting 28 U.S.C. §1915—the federal statute that gives courts the ability to waive all or party of a filing fee—"Congress recognized . . . that a

litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." Neitzke, 490 U.S. at 324. Therefore, §1915(e)(2)(B) requires a court to dismiss a case filed by an unrepresented plaintiff at any time if the court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." For this reason, courts "screen" complaints filed by self-represented plaintiffs who ask for fee waivers.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Fenton v. City of Chi., 827 F.3d 632, 635 (7th Cir. 2016). At the screening stage, the court accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Hotchkiss v. David, 713 F.App'x 501, 504 (7th Cir. 2017). A court may dismiss a claim as legally frivolous if it is "based on an indisputably meritless legal theory." Id. (citing Neitzke, 490 U.S. at 327-28). The court, however, may not dismiss a claim as frivolous simply because it finds that "the plaintiff's allegations are unlikely." Johnson v. Stovall, 233 F.3d 486, 489 (7th Cir. 2000) (citing Denton, 504 U.S. at 33).

To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead every fact supporting his claims; he needs only to give the defendant fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the

speculative level." Id. "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." United States ex rel. v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003). Because the plaintiff represents himself, the court must liberally construe the allegations of his complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### 2. *Facts Alleged*

The document the court received on November 8, 2018 says that the plaintiff was terminated from employment at defendant Sargento Foods on April 30, 2018. Dkt. No. 7 at 1. The document lists what the plaintiff refers to as "notable occasions" on which he was harassed and/or discriminated against "At Sargento Foods INC." Id. He describes an incident in February of 2018 at a work anniversary banquet where a human resources manager "intentionally harassed [him]." Id. He follows this allegation by reporting that "History at Sargento Foods INC is when you file a grievance or complain about a co-worker, management retaliates against you." Id.

The plaintiff describes a March 2018 incident where "[t]hree co-workers; Ricky Ferron, Owen Carle, and Emily Den Decker deliberately physically abused [him] as [he] was working." Id. He says that "management" learned of this incident, but "refused [him] the opportunity to tell [his] side of the story, and to file a grievance complaint." Id. The plaintiff next alleges that in April 2018 management "mandated [him] to agree to participate in a fitness for duty exam by a forensic psychologist or be terminated." Id. He alleges that in management's letter about their reasons for requiring an exam, "they acknowledge[d] some of the previous [d]iscrimination and harassment issues that have occurred, specifically the Katherine Clauson issues." Id. at 1-2. The

plaintiff says that the defendant mandated this psychological exam "out of retaliation, violation of Title VII." Id. at 2.

The plaintiff then explained that he was providing the court with documents that he presented to the defendant. Id. at 2. He says that the defendant's correspondence shows that it had first hand knowledge of what was going on. Id. The plaintiff asks for $150,000 in damages and charges the defendant with "not only knowingly allow[ing] peers to discriminate and harass individuals; but support[ing] and abet[ting] with them in the process, thus creating the most hostile work environment [he] ever encountered!" Id. 2. He later says that "at the jury trial," he will present "all events, documentation, and witness testimonies in these matters of Religious/Sexual discrimination, harassment, and physical abuse." Id.

The plaintiff indicates that Judge Jones, in his screening order, "also stated that [the plaintiff] might be filing this out of retaliation." Id. The plaintiff insists that he is suing to seek justice, to change the defendant's corporate culture and to prevent what happened to him from happening to others. Id.

 The plaintiff signed and dated the bottom of page three. Id. at 3. The next two pages appear to be a letter from the plaintiff to the defendant's human resources department—he references "you (HR)" numerous times. Id. at 4. In this letter, the plaintiff talks further about his problems with "Katie Clauson," a name he mentioned in the previous three pages. The letter alleges that Ms. Clauson tried to get the plaintiff fired after he "walked away from her advances [] so many people knew she wanted to sleep with [the plaintiff]." Id. at 4. It also alleges that Ms. Clauson "constantly laughed at [the plaintiff] and even threatened to vandalize [his] car. Did a gester [sic] to [him] as she was walking by [him] suggesting that [he] perform fellatio, and days later whistling and

blowing reminding [him] of her earlier escapades." Id. He says that "all this tension at work" is because of the issues with Ms. Clauson and states that he "constantly hear[s] rude remarks, put[s] up with bad attitudes and listen[s] to smart ass comments from the harassing social club members about Katie not being at our building because of Tim and his lies." Id.

The plaintiff attached nineteen pages of documents to this filing. Dkt. No. 7-1. Most of the documents appear to be correspondence between him and employees of the defendant and documents relating to his dispute with the defendant. See dkt. no. 7-1. He included his "Charge of Discrimination" to the Wisconsin Equal Rights Division, which included the following:

> I worked for respondent for approximately six years. My last position was as a Laborer. I was sexually assaulted by some of my female coworkers. Management and Human Resources were aware of the harassment, but they took no corrective action. After my complaints, the harassers and their friends continued to harass me, including various threats against myself and my personal property. On March 16, 2018, I submitted a detailed letter regarding the harassment. On April 6, 2018, respondent indicated I would be required to attend EAP counseling. I went to the session, but was still suspended. I was then terminated.

> I believe respondent discriminated against me because of sex (male), religion (non-denominational), and in retaliation for making internal complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended, including §704(a).

Id. at 9. The plaintiff also included an Equal Employment Opportunities Commission "Inquiry Information" form which explained his situation like this:

> Roughly a year ago, a woman at work came on to me. I walked away from her. I return she and the social click at work tried to get me fired. All the woman at work know that due to my faith, I don't sleep with woman outside to marriage. After continuing harassment from her and the social click, my employer sent her to a different plant for training (to get her out of there). She is back at our plant but working at another building. Her social club friends have been trying to get me fired, so she can return to our north building. I have continually listened to threats, verbal abuse, and physical abuse.

Allow of this has created a hostile work environment. This is nothing new of the social clicks harassment to me. This has been going on for several years and all the company does is sweep it under the carpet. Because of this, it is an ongoing, again, and again, and again. The latest issue was on March 12, 2018. My company has refused to allow me to file a grievance complaint.

Id. at 11.

3. *Analysis*

"Under Title VII, an employer may not discriminate based on 'race, color, religion, sex, or national origin.'" Abrego v. Wilkie, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting 42 U.S.C. §2000e-2(a)). To state a Title VII discrimination claim, a plaintiff must show that

(1) he is a member of a class protected by the statute, (2) that he has been the subject of some form of adverse employment action (or that he has been subjected to a hostile work environment), and (3) that the employer took this adverse action on account of the plaintiff's membership in the protected class.

Id. At the pleading stage, the plaintiff need not prove his case; the Seventh Circuit has held that "'in order to prevent dismissal under Rule 12(b)(6), a complaint alleging [Title VII] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [protected class status].'" Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1027 (7th Cir. 2013) (quoting Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008)).

To state a hostile work environment claim,

a plaintiff must allege (1) [he] was subject to unwelcome harassment; (2) the harassment was based on [his] national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe and pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability.

Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty., 804 F.3d
826, 833 (7th Cir. 2015). Finally, "[t]o plead a Title VII retaliation claim, a
plaintiff must (though [he] need not use the specific terms) allege that []he
engaged in statutorily protected activity and was subjected to adverse
employment action as a result of that activity." Id.

Even though the plaintiff objected to Judge Jones having screened his
original complaint, he would have done well to follow some of Judge Jones's
advice. For example, Judge Jones told the plaintiff that he needed to label his
amended complaint "Amended Complaint." Dkt. No. 5 at 3. The document the
plaintiff filed on November 8, 2018 isn't labeled "Amended Complaint," so the
court can't be entirely sure that that is what the plaintiff meant it to be. Judge
Jones also told the plaintiff that, under the law in Seventh Circuit (of which
this court is a part), an amended complaint had to be complete in and of
itself—it couldn't refer the court back to the original complaint for critical facts.
Id. at 3-4. The document the plaintiff filed on November 8, 2018 seems to be
the plaintiff's attempt to add facts to the complaint he filed in August 2018.

More important, the document the plaintiff filed on November 8, 2018
still does not provide the court with enough information to figure out whether
the plaintiff has alleged claims upon which a federal court can grant relief. The
plaintiff describes a February 2018 incident at which a human resources
manager allegedly "intentionally harassed [him]." Dkt. No. 7 at 1. The plaintiff
provided the name of the manager—Sonia Otte. But he did not explain what
Otte did to harass him. He did not explain whether the harassment happened
once, or whether Otte harassed him repeatedly. He didn't say that Otte
harassed him because of his national origin or religion or race. He said only

that she harassed him at an event at Elkhart Lake. That is not enough to state a claim under Title VII.

At the end of his description of the February 2018 incident, the plaintiff alleges that when one files a grievance or a complaint about a co-worker at Sargento, "management retaliates against you." Id. Title VII prohibits employers from retaliating against employees for engaging in prohibited activities. But the plaintiff did not allege that he complained about Otte's harassment, and did not allege that Sargento retaliated against him or how. He said he was fired in late April 2018—that's two months after the alleged incident with Otte. The plaintiff does not explain why he believes his filing was related to what Otte did to him.

The plaintiff alleges that in March 2018, three different employees—Ricky Ferron, Owen Carle and Emily Den Decker—physically abused him while he was working. Id. (The plaintiff then cites 18 U.S.C. §6—that is a federal statute that defines the words "department" and "agency" for the purposes of Title 18, so the court is not sure how it is relevant to the plaintiff's claims.) The plaintiff does not explain how these individuals abused him. He does not allege that they abused him because of his race or national original or gender or religion. He alleges that this "event was the catalyst" that led to him being fired, but does provide facts supporting that assertion. Id.

The plaintiff asserts that in April 2018, "management"—he does not say who—required him to agree to submit to a psychological exam or be fired. Id. He says management gave him a letter that "acknowledged some of the previous Discrimination and harassment issues that have occurred, specifically the Katherine Clauson issues." Id. at 1-2. He says management did this in retaliation against him, in violation of Title VII. Id. Nowhere in this document

does the plaintiff describe "the Katherine Clauson issues." He does not say what "management" was retaliating against him for doing.

The plaintiff indicates in this document that he is providing the court with documents that he gave to Sargento, id. at 2, and as noted, he attached nineteen pages of documents, dkt. no. 7-1. It appears that the plaintiff expects the court to comb through all the documents he filed and try to figure out what his claims are from those documents. That is not how federal lawsuits work. A party cannot file a stack of documents with the court and say, "Here—you read all this and figure out what I'm trying to allege." As the Seventh Circuit put it, "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin out of a bucket of mud." U.S. ex rel. Garst, 328 F.3d 374, 378 (7th Cir. 2003).

That said, last two pages of the November 8, 2018 document—the two pages that appear to be a letter from him to the defendant's human resources department—and his charging documents to the Wisconsin Equal Rights Division and the EEOC contain facts that indicate the plaintiff might be able to allege a claim under Title VII, if he files an amended complaint that provides sufficient detail about the harassment he claims he suffered from whoever Katherine Clauson is, what he told the defendant about it and what the defendant did (or didn't) do about what he told them.

This court—Judge Pepper—will give the plaintiff one, last opportunity to file a complaint that states a claim upon which a federal court can grant relief. The court is including with this order a Guide and a blank complaint form for non-prisoner's filing without a lawyer. The plaintiff must use this form to prepare his second amended complaint. He must write the words "Second Amended" in front of the word "Complaint" at the top of the first page of the

complaint form. He must put the case number for this case—18-cv-1335—on the line under the words "Case Number" on the first page. In the section for "(Full name of defendant(s)),)" the plaintiff must list the names of every defendant he sues. In the "Statement of Claim" section—the lines on pages 2 and 3—the plaintiff should explain who harassed him, when they harassed him, *how* they harassed him—what, exactly, they did to him—where they did it, and (if he knows) why. He must do this for every person he claims harassed him. He must explain how the defendant—Sargento Foods—knew about these events, and what (if anything) the defendant did when it learned of them. The plaintiff must put this information in the second amended complaint; he cannot just tell the court to look at all the other documents he has filed so far and figure it out. He must say, for example, that on around a particular date, in a particular location, a named person did something to harass him. An example might be, "Sometime in the first week of May 2018, while I was in the lunch room at Sargento Foods, Jane Smith whistled at me and told me that she wanted me to come home with her. This made me uncomfortable. I told my supervisor, Melissa Johnson, but she told me that I should stop being so sensitive."

If the plaintiff files a second amended complaint that complies with this order, it will take the place of any other complaints he has filed. That is why it must contain *all* the allegations the plaintiff wants to make, and name *all* the people against whom he wants to make them. If the plaintiff files a second amended complaint that complies with this order by the deadline the court sets, the court will screen it.

## V.  Motion to Compel Production of Documents (Dkt. No. 12)

Because the plaintiff does not have a lawyer, and presumably does not understand how federal lawsuits work, he has inappropriately involved a third party in the case. Before explaining how that came about, the court will lay out what usually happens in suits by plaintiffs who represent themselves.

The court already has explained that the law requires the court to screen complaints filed by plaintiffs who ask the court to waive the filing fee. This is to make sure that the ability to file "free" cases doesn't cause plaintiffs to flood the court with frivolous lawsuits. Thus, when a plaintiff is representing himself and asks for waiver of the filing fee, nothing else can happen in the case until the judge has screened the complaint.

Once the judge screens a complaint, she can do one of three things. First, she can dismiss the complaint if she finds that it does not state a claim for which a federal court can grant relief. Second, if she thinks the plaintiff might be able to state a claim if given the opportunity, she can give the plaintiff a deadline by which to amend the complaint. (That is what Judge Jones did in October, and what I'm doing now.) Third, if the complaint states a claim for which a federal court can grant relief, the judge can order the Marshals Service to serve the complaint on the defendant.

The judge does not order the complaint to be served on the defendant until she has made sure that the complaint states a valid federal claim. This is to save the court's resources as well as the defendant's. Only after the court has issued an order allowing the plaintiff to proceed with certain claims does the court have the summons and complaint served on the defendant. At that point, the court also gives the defendant a deadline by which to answer the complaint or file some other kind of response (such as a motion to dismiss).

Once the court has ordered service on the defendant, and received the defendant's answer, then—and only then—may the parties start to exchange documents and other information about the allegations in the complaint.

This case has not yet reached the stage where the court has ordered the complaint to be served on the defendant, because as explained above, the plaintiff has not yet filed a complaint that states a claim upon which a federal court can grant relief. The plaintiff, however, has jumped the gun.

The plaintiff says in his March 5, 2019 letter to the clerk of court that when he filed his complaint back in August 2018, he asked the clerk's office staff if he was supposed to serve the papers. Dkt. No. 11 at 1. He says the clerk told him that the papers "normally don't get served until you get a court date." Id. He indicates that as he was calling around to try to find a lawyer to represent him, someone asked him whether he served the papers, and when he said he hadn't, the person who asked him the question sounded surprised. This made the plaintiff wonder whether he'd done something wrong, so he said that he "served the original summons on December 18, 2018." Id.

The court suspects that whoever the plaintiff talked to was not aware of federal court practices, or of how this court proceeds in cases where a self-represented plaintiff asks to waive the filing fee. The plaintiff did not do anything wrong by not serving the papers; he should not have served the papers on December 18, 2018.

The plaintiff learned, when counsel for Sargento filed his letter of January 8, 2019 (dkt. no. 9), that he didn't properly "serve the papers of the Amended Complaint." Dkt. No. 11 at 1. He says that at that point, he called the clerk's office again, and was told by a staff member that because he'd asked to waive the filing fee, the court would serve his papers if the case moved forward.

Id. While members of the clerk's office staff are not allowed to give parties legal advice, that staff member provided the plaintiff with accurate information. If and when I—Judge Pepper—decide that the plaintiff has filed a complaint that states a claim for which relief can be granted, I will have the Marshals Service serve the complaint on the defendant.

In the meantime, however, on March 6, 2019, the court received the letter from the plaintiff alleging that on February 27, 2019, Stephen VanderWeele, a "former peer" with whom he'd worked at Sargento, struck him. Dkt. No. 10. In that letter, the plaintiff stated, "Looking back to why I was terminated; Sargento Foods INC implied that I obstructed the investigation by their hand picked Forensic Psychologist." Id. He asserted that if he had defended himself when he was "assaulted at Menards," the defendant "would have argued the fact that my self-defense was an act of violence." Id. He contended that the defendant would have "portrayed" any attempt to defend himself at Menard's as validation for the defendant's reason for terminating the plaintiff, and argued that VanderWeele's action was "an extension of that was not only blessed and perpetuated by Sargento Food INC, but also ordained." Id.

The event the plaintiff described in this letter took place months after the plaintiff filed this federal lawsuit, and almost a year after the plaintiff says he was fired by the defendant. It appears that the plaintiff told the court about this incident because he believes that the incident constitutes evidence that supports his claims against the defendant.

Even if evidence of this incident might support the plaintiff's claims, the time has not yet come for the plaintiff to collect evidence. Parties do not collect evidence until after the defendant has answered the complaint, and *that* does

not happen until after the court has ordered the defendant served with the complaint.

In his March 5, 2019 letter to the clerk's office, however, the plaintiff stated that he intended to serve a subpoena on Menard's "requesting the surveillance video before they reuse the data." Dkt. No. 11 at 2. The plaintiff asked the clerk several questions—upon whom should he serve the subpoena? To whom should he give copies? Must he send copies of everything he files in court to the defendant? He indicated that he was not asking for legal advice. He also indicated that he'd been trying to get free legal help and to find a lawyer, without success. Id. The clerk of court did not answer this letter, because whether the plaintiff realized it or not, he *was* asking for legal advice.

Two months later, the court received the plaintiff's motion asking the court to compel Menard's to give him the surveillance video. Dkt. No. 12. The plaintiff attached to the motion sixteen pages of documents, including a March 12, 2019 letter he received from Menard's senior corporate counsel explaining why Menard's would not be complying with the subpoena. Dkt. No. 12-2 at 1-2. (The remaining attached documents relate to a state-court case the plaintiff has brought against Stephen VanderWeele.) As the court noted, Menard's has responded and asked the court to deny the motion and quash the subpoena (which the plaintiff appears to have obtained by going to the clerk's office at the federal court in Green Bay), dkt. no. 15, and the plaintiff has filed two replies, dkt. nos. 16, 17. The plaintiff also has filed a couple of letters asking what is going on with his motion. Dkt. Nos. 13, 18.

The court will deny the plaintiff's motion to compel Menard's to comply with the subpoena, and will grant Menard's request to quash the subpoena. First, the court has not yet authorized the plaintiff to begin collecting

"discovery," or information supporting his claims, because the court has not determined that he has a federal claim. The court does not authorize parties to begin collecting discovery until after the defendant has been served and has filed an answer. Second, Menard's is not a party to this lawsuit. Even if the court had authorized the plaintiff to start collecting discovery, the Federal Rules of Civil Procedure would allow him to collect discovery from the *defendant*, not from non-parties. Third, as counsel for Menard's points out, the subpoena is invalid. The subpoena asked for surveillance video from at least four different locations, even though he alleges that the incident took place only in the check-out line. Dkt. No. 15-1 at 6. He asked for all employee payroll records; the court cannot imagine how the records of Menard's employees would be relevant to the plaintiff's claim that Mr. VanderWeele struck him. In the box where the plaintiff was supposed to put the day by which he wanted Menard's to produce the items, the plaintiff listed the date of the incident—a date that had passed. Id. The subpoena does not comply with Rule 45 in several other ways.

If the plaintiff wants surveillance video to use in his state court case against Mr. VanderWeele, he must use the state court system to obtain it. He cannot use a federal subpoena to obtain evidence for a state-court proceeding. If he wants the video to use as evidence in this federal case, he has acted prematurely. If the plaintiff files an amended complaint, and if this court concludes that it states a claim and orders it served on the defendant, and if the defendant answers, there will come a time when the plaintiff can begin to collect discovery. That will be the appropriate time for him to ask the court for assistance in gathering evidence from non-parties, if that evidence is relevant to his claim.

## VI. Motion to Request for Status for Non-Party Subpoena (Dkt. No. 14)

The court will deny the plaintiff's motion for a status conference to discuss his motion to compel, for the reasons it has explained above.

## VII. Location of the Lawsuit

In one of his documents, the plaintiff noted that because he lives in Combined Locks, Wisconsin, he must travel over ninety minutes to get to the Milwaukee courthouse. He also appears to have gone to the clerk's office in Green Bay to obtain the blank subpoena form.

Combined Locks is in Outagamie County. As the plaintiff can see if he visits the court's web site, clicks on "Our Court," then clicks on the "Counties Served by Division" link, Outagamie County is in the Green Bay Division of the Eastern District of Wisconsin. The chief judge of the Eastern District, Judge William C. Griesbach, Jr., has issued a general order regarding case assignment to the two divisions of the Eastern District. The court encloses a copy of that order for the plaintiff's review. The court notes only that on page 2 of the order, there is a section discussion the circumstances under which a party may ask to transfer a case from one division to another. The court encourages the plaintiff to review that order.

## VIII. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that the plaintiff's Motion to Request the Order Directing Plaintiff to File Amended Complaint by Magistrate Judge David E Jones to be Dismissed is **DENIED**. Dkt. No. 6.

The court **ORDERS** that the plaintiff's Motion to Compel Production of Documents Compliance with Non-Party Subpoena is **DENIED**. Dkt. No. 12.

The court **ORDERS** that the subpoena the plaintiff served on Menards, Inc. on March 11, 2019 is **QUASHED**.

The court **ORDERS** that the plaintiff's motion for a status conference is **DENIED.** Dkt. No. 14.

The court **ORDERS** that by the end of the day on **Friday, August 30, 2019**, the plaintiff shall file a second amended complaint that complies with this order. The court **ORDERS** that the plaintiff must file the second amended complaint in time for the court to receive it by the end of the day on Friday, August 30, 2019. If the court does not receive a second amended complaint from the plaintiff by the end of the day on Friday, August 30, 2019, the court will dismiss this case for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

The court **ORDERS** that the plaintiff must not serve the second amended complaint on the defendant, and must not attempt to collect discovery or other evidence from the defendant or non-parties, until authorized to do so by this court.

Dated in Milwaukee, Wisconsin this 26th day of July, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**