UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY RYAN GOVE,

                Plaintiff,

                                    Case No. 18-cv-1335-pp

   v.

SARGENTO FOODS, INC.,

                Defendant.

**ORDER DISMISSING CASE FOR FAILURE TO STATE A CLAIM AND DENYING AS MOOT PLAINTIFF'S MOTION TO TRANSFER (DKT. NO. 22)**

In its July 26, 2019 order screening the amended complaint, the court ordered that if the plaintiff wished to proceed with the case, he must file a second amended complaint explaining who harassed him, when, where, how and why. Dkt. Nos. 19. The plaintiff timely filed the second amended complaint. Dkt. No. 20. The court will dismiss the second amended complaint for failure to state a claim. It will deny as moot the plaintiff's motion to transfer the case to the Green Bay division of the Eastern District. Dkt. No. 22.

I.    **Screening the Second Amended Complaint**

    A.    <u>Standard</u>

Under 28 U.S.C. §1915(e)(2)(B)(ii), in cases where the court has allowed a plaintiff to proceed without prepaying the filing fee, the court "shall" dismiss the case if it determines that the case fails to state a claim upon which relief may be granted. In determining whether the complaint states a claim, the court

1

applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Because the plaintiff is representing himself, the court must liberally construe the allegations of his complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

B.    Facts Alleged in the Second Amended Complaint

The plaintiff alleges that he worked as a laborer for Sargento Foods, Inc. in the North Building of its Hilbert, Wisconsin plant from 2012 until April 30, 2018. Dkt. No. 20 at 5. Early in the second amended complaint, he summarized his claims:

> I was fired by Sargento Foods Inc. April 30th, 2018 due to retaliation for demanding disciplinary action against the ongoing discriminating, harassing, threaten [sic] and assaulting actions by a socially-knit group of co-workers. This [sic] main active participants in this group is as follows: Katherine Clauson, Bruce Behnke, Melissa Bratz, Victoria Zahn, Amy Fucile, Jeff Van Asten, William Roit.

Id.

The plaintiff describes himself as a "Christian." Id. He says that he was fifty-seven years old and identifies himself as male. Id. He says that because of his faith, he did not have sex outside of marriage, and that management and his co-workers were aware of this fact. Id. at 6.

1. *Alleged Sexual Harassment*

a. Katherine Clauson

The plaintiff says that Katherine Clauson was a Manpower, Inc. temporary worker; he says she began on a ninety-day probationary period and then was hired as a fulltime worker. Id. at 5. While it is not clear, it appears that the plaintiff alleges that Clauson was twenty-two years old, with a large age gap between her twenty-two years and his fifty-seven. Id. The plaintiff alleges that in 2017, Clauson harassed him, both during her probationary period and after she was hired full-time, and that her behavior was ignored by Sargento management "without corrective measures or, discipline." Id.

The plaintiff asserts that on February 2, 2017, in front of a crowd of women, Clauson told him "how hot she was." Id. On February 21, 2017, Clauson filed a complaint against the plaintiff with the Human Resources Department; the plaintiff says that in a meeting three days later, in a conversation with HR representative Maria Herrera, Herrera said that the complaint was an email issue and that it seemed resolved. Id. at 6. The plaintiff asserts that he was never told what the complaint was or shown the complaint, "which was standard protocol," and he alleges that Clauson filed the complaint

3

in an attempt to get him fired in retaliation for the plaintiff for not accepting Clauson's advances. Id. The plaintiff alleges that on March 29, 2017, Sargento offered Clauson a full-time position with the company "to be filled at a later date," despite the fact that the plaintiff had made Sargento aware of "other harassment issues." Id.

The plaintiff next asserts that on April 5, 2017, while Clauson was still a temporary worker through Manpower, Inc., she and Amy Fucile "[t]hreaten gestures to vandalize [his] motor vehicle." Id. The plaintiff says, "She did it out retaliation for my answer to HR representative Maria Herrera question me to why she was so angry that I didn't sleep with her. I answered 'maybe she was because she could seduce a older man?'" Id. The plaintiff says that he reported this event to HR personnel Jeff Kiesner and Maria Herrera, and that Keisner said, "She's not even hired and she doing this." Id.

The plaintiff alleges that on April 19, 2017, Clauson, while a full-time probationary employee, made a "[s]exual gesture of fellatio" at him as he was leaving the production area in retaliation for the plaintiff's answer to defend himself to Victoria Zahn's sarcastic accusation about him telling on Clauson. Id. He says he reported this event to HR representative Maria Herrera who was aware of the incident, investigated it and had proof that it happened. Id.

The plaintiff alleges that Clauson again made a "[s]exual gesture of imitating fellatio (whistling/blowing) as she was walking" past the plaintiff on April 24, 2017. Id. The plaintiff characterizes this as a "continuation of the previous stunt." Id. The next day the plaintiff was working with Jorge Santos,

4

who asked the plaintiff about what was going on; the plaintiff says, "was scheduled for a meeting with management at 8:30 AM." Id. It is not clear whether the plaintiff, Santos or Clauson was scheduled to meet with management, but the plaintiff says that this is "more proof management was aware of Katherine Clauson's actions." Id. The plaintiff says that Clauson was in her ninety-day probationary period and should have been fired for this. Id.

The plaintiff says that on April 27, 2017, Clauson was informed that starting the following week, she would be working third shift at Kiel,[1] the plaintiff asserts that management "knew what was going on and shipped her out to get her away from me!" Id. at 7.

The plaintiff asserts that on July 28, 2017, Clauson "show[ed] up active" on his messenger email "after roughly 4 months . . . of being blocked by Katherine Clauson by the advice of HR management Maria Herrera." Id. The plaintiff says that he suggested to Maria Herrera in their "so-called email issue meeting" that if it was an issue, "why doesn't she just block me." Id. He says he reported the issue to HR management Jeff Keisner, and told Kiesner that even thought the plaintiff previously was blocked by Clauson, now the plaintiff was blocking Clauson. Id. Keisner commented, "Keep it that way." Id.

The plaintiff asserts that the human resources management at Sargento ignored these and other incidents and took no disciplinary measures. Id. He

---

[1] Sargento's web site indicates that it has four facilities in Wisconsin, located in Plymouth, Kiel, Hilbert and Elkhart Lake. https://www.sargento.com/our-company/about-us.

says that because there were no disciplinary measures, "a series of discriminatory acts quickly escalated into an unwelcomed intimidating, harassing behaviors by both Sargento co-workers and later by Sargento management." Id. He says that from the rest of 2017 through his termination date on April 30, 2018, working at Sargento "became the most hostile environment" the plaintiff ever had encountered, severe enough to affect his health, life and work. Id.

   b. Tammy Wolf/Kathy Griffey

  The plaintiff says that some time in the later summer months of 2017, before the "messenger activation stalking stunt by Katherine Clauson on 07-29-2017," Tammy Wolf made a "Sexual Comment of 'I like a mushroom with a nine inch stem'" as she walked past the plaintiff while he was working. Id. The plaintiff says that he turned around to look, briefly shaking his head in disbelief. Id. He says that on December 6, 2017, he was working when Kathy Griffey stopped to talk to him. He told her that her upper lip was raw, and the plaintiff says that Griffey made a "Sexual Comment of 'needing something to suck on.'" Id. The plaintiff says he asked Griffey several times to quite saying sexual innuendo to him, and she responded that it was her New Year's resolution. Id.

  The plaintiff asserts that when he told HR representative Maria Herrera what some of the women were saying sexually and talking to him about, Herrera "didn't have anything to say." Id. He says he made clear to Herrera that sexual topics were "unwanted by [him]" and that the women were "well aware

of it." Id. He says that Sargento's management posted a sexual discrimination policy on the bulletin board but that "sexually harassments still continued!" Id.

### 2. *Alleged Threats/Assaults*

The plaintiff says that on February 8, 2018, he was behind Aaron Beitler in the hand washing area when he overheard Beitler say, "Every time I see [the plaintiff] I want to beat the fuck out of him." Id. at 8. The plaintiff says that Beitler was reacting to rumors that he heard from Bill Roit and Katherine Clauson's friends. Id.

The plaintiff alleges that on February 5, 2018, as he walked by Jeff Van Asten in the lunchroom, Van Asten commented that "someone should put him six feet under." Id. The plaintiff asserts that the prior week, Van Asten and Bruce Benke "were gloating like they always do when they think I'm in trouble," and says "[t]hey knew something [he] didn't." Id. He says that "[s]omething changed." Id.

The plaintiff asserts that on March 12, 2018, he was palletizing on line 320 and that quality control personnel Emily DenDecker and process technicians Owen Carle and Ricky Ferron assaulted him by throwing and hitting him with boxes filled with products. Id. He says he changed palletizing lifts, but that forklift driver Tony Wittman laughed at him and asked him why he wasn't working at the other lift. Id. The plaintiff says that "[t]his act was because of Emily DenDecker attitude and influence." Id. He says that although DenDecker was not in a position of authority over him, she was telling him what to do. Id. He asserts that DenDecker had been harassing and intimidating

7

him for some time "due to the Katherine Clauson issues, her attitude was horrible towards" the plaintiff. Id.

The plaintiff says that he reported these threats and assaults to HR management Jeff Kiesner and Laura Beihm. Id. He says that Beihm asked him whether he considered Beitler's statement a threat, and that the plaintiff responded by asking her, "Would you consider it a threat?" Id. Biehm responded in the affirmative, so the plaintiff said, "then the answer is Yes!" He says that Kiesner and Biehm both refused him an opportunity to file a complaint, but he says that Kiesner said, "no one should have to should have to be treated like that." Id.

3. *General Harassment*

The plaintiff alleges that later in the day on March 12, 2018, after Owen Carle and Ricky Ferron assaulted him, as the plaintiff walked by Ricky Ferron, Owen Carle loudly made insinuating remarks to the effect that Katherine Clauson couldn't come to first shift because of the plaintiff's lies; the plaintiff says this was a false rumor and that he just kept walking. Id.

The plaintiff says that on July 21, 2017, Jeff Van Asten and Bruce Benke were mocking and laughing at him as he walked by, insinuating that he was in trouble from the retaliatory stunt Van Asten and Cathy Beil[2] had pulled the day before—"(Cheese cutter stopping)." Id. He asserts that this was retaliatory behavior "due to Katherine Clauson issues." Id.

---

[2] Later in the complaint the plaintiff refers to Cathy Bail—the court assumes that Cathy Beil and Cathy Bail are the same person.

8

The plaintiff contends that he reported these acts to HR managers Jeff Kiesner and Laura Beihm "in good faith." Id.

### 4. Conspiracy

The plaintiff asserts that on July 20, 2017, Cathy Bail and Jeff Van Asten acted like it was his fault that the cheese cutting machine stopped and that Cathy Bail tried to have him falsely suspended. Id. at 9. He says this was retaliation due to the Katherine Clauson issues. Id. He alleges that on December 13, 2017, Wendy Mueller, Amy Fucile and Melissa Bratz set up a stunt to make it look like he wasn't working. Id. The plaintiff asserts that supervisor Eric Driessen was aware of both these acts and questioned the plaintiff about them. Id. He says Driessen questioned him about how the plaintiff felt about meeting their quotas. Id. The plaintiff says that management did not pursue any disciplinary actions against him because Katherine Clauson's sexually discriminatory acts "were still in the 300 day time frame." Id.

The plaintiff alleges that on September 7, 2017 Shaun Carter came up to him and said he heard that Katherine Clauson was coming back to north building first shift. Id. The plaintiff says, "Management supervisor spread rumors thru the co-workers that Katherine Clauson was coming back to the north Hilbert building in a process tech meeting . . . [f]our months after her discrimination and harassments acts against [the plaintiff]." Id. After work, the plaintiff asked HR representative Jeff Kiesner about Clauson coming back and Kiesner told him that he had "nothing to worry about" and that his "slate" was

9

"clean." Id. The plaintiff says, "In other words, there's nothing on file of these allegations." Id. Kiesner gave the plaintiff the "itinerary" of Clauson's schedule, of when she would be coming back. Id. The plaintiff says that he responded that he "didn't care what Clauson's schedule [was], she didn't stop what she's doing". Id. He says that Kiesner told him, "remember the 'R' factor;" the plaintiff says the "R factor" means rape. Id. The plaintiff says that this remark related to "a previous Katherine Clauson's parking lot stunt I which spoke to HR about and along with other coworker harassments in a meeting with Human Resources on 08-28-2017." Id. The plaintiff alleges that Sargento had this event on parking lot surveillance cameras. Id.

The plaintiff contends that at the anniversary dinner banquet event on February 1, 2018, HR personnel Sonia Otte deliberately did not have his name called for acknowledgment of five years of service, unlike anyone else in his group. Id. at 10. He says that the company president, Louie Gentine, personally apologized to him for this "so called miscommunication." Id. The plaintiff claims that this was retaliation by Sargento "due to Katherine Clauson issues." Id. The plaintiff says that at the same event, HR personnel Jeff Kiesner intentionally changed the dinner orders from what the plaintiff had requested. Id. He says he told his date that this was what Sargento did to people who said or did something that Sargento didn't want to hear. Id. The plaintiff says, "This is a prime example of how management retaliates against/treats you when you whistle blow against other workers or stick up for yourself." Id. He alleges that these acts were deliberate. Id.

The plaintiff asserts that after he was assaulted on March 12, 2018, he took two days off work due to the stress. Id. When he returned, he gave HR personnel Jeff Kiesner a letter explaining what his coworkers were doing and how the lack of discipline on Sargento's part contributed to the issues. He says he spoke of the assault by Ricky Ferron, Emily DenDecker and Owen Carle and the comment that Carle had made to Ferron, as well as an incident later in the day when Victoria Zahn "thru hands right in front of [the plaintiff's] face" because he accidentally turned around and walked in front of her. Id.

The plaintiff says he tried to file a grievance complaint against the company with Jeff Kiesner and Laura Beihm and "one back up in training supervisor" whose name he thinks was Stacy. Id. He says that all of them refused to allow him the opportunity to file a complaint. Id. (The plaintiff indicates that later in the morning, Ricky Ferron came to him and apologized for how he'd acted on March 12; when the plaintiff responded that he expected it from other people but not from Ferron, Ferron got very defensive and said, "It's my apology." Id.)

The plaintiff says that on March 29, 2018, supervisor Eric Driessen refused to sign his quarterly safety sheets after they'd been sitting on his chair for three or four days. Id. The plaintiff says that the result of this "would have been a vast reduction in yearly bonus," and he again asserts that this was in retaliation "from the Katherine Clauson discrimination behaviors and the 03-12-2018 assault." Id.

11

On April 6, 2018, the plaintiff met with HR representatives Maria Herrera and Laura Beihm. He says that they "forced" him to participate in a "Fitness for Duty Exam" by a forensic psychologist. Id. The plaintiff says that this was "Sargento's retaliations for the most recent hostile environment act by it workers, all because Katherine Clauson was still employed at Sargento." Id. The plaintiff says that while he was writing statements on the form he was required to sign, and as he was trying to concentrate to get his statement right, Herrera said, "What are you writing a book." Id. at 11. The plaintiff says that Herrera was distracting him. Id. The plaintiff says that in the meeting, he brought up a point about HR management allowing Katherine Clauson to apply for jobs in the north building, "when she shouldn't have the right to apply for any jobs with what she's done." Id. Herrera responded that that was "her decision." Id. The plaintiff says, however, that once a person is suspended or disciplined for any reason at Sargento, the person is not allowed to apply for any other positions for at least six months. Id. The plaintiff says he also raised a point about how Sargento "shipped off Katherine Clauson to other plants to elevate the problem." Id. He says that Herrera replied that "she was sent there for training." Id. The plaintiff says that he responded that "it doesn't matter how you spin it, we know why she was sent there, and the truth never stays buried." Id. The plaintiff says that Herrera suddenly became quiet and that Beihm came back with his copy of the signed document. Id.

5. *Conclusion*

At the end of the second amended complaint, the plaintiff summarized his claims differently than he had in the beginning. He stated that "Sargento hired Katherine Clauson knowing she actively tried to seduce a male co-worker, filed a false accusation report in retaliation, and did the sexual/religious discriminating and harassing acts to a man of his faith and beliefs." Id. He says that as the discriminatory acts escalated, Sargento was forced to schedule Clauson at other plaints in Kiel and Plymouth, which caused coworkers who socialized with Clauson to increase harassment, discrimination and retaliatory acts. Id. He says that management tried to pressure him to quit through harassing behaviors and was looking for a reason to fire him, and that "[b]oth parties" created the most severe hostile environment he'd ever encountered. Id. The plaintiff says that the final decision to fire him was made after Ferron, DenDecker and Carle—all Clauson's friends—assaulted him, because management thought it was easier to get rid of one person than half a dozen. Id.

The plaintiff says that Sargento's discrimination against him "was religion, sexual, gender, and civil conspiracy." Id. He says that Sargento had first-hand knowledge of the sexually discriminatory acts of his co-worker due to his faith and the fact that he was an older male. Id. He alleges that "Sargento did everything to cover up the discriminatory behaviors of Katherine Clauson, Co-workers and finally involving themselves in a civil conspiracy to oust [him]." Id. at 11-12. The plaintiff asserts that if the shoe were on the other

13

foot, and a man had done what Clauson did, "Sargento would have walked him out the door immediately and suspended him, until the outcome of their investigation." Id. at 12.

C. <u>Discussion</u>

1. *Legal Standards*

a. Discrimination

The plaintiff alleges sex, religious, and age discrimination; hostile work environment based on sexual harassment; and civil conspiracy.

"Under Title VII, an employer may not discriminate based on 'race, color, religion, sex, or national origin.'" <u>Abrego v. Wilkie</u>, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting 42 U.S.C. §2000e-2(a)). To state a Title VII discrimination claim, a plaintiff must show that

> (1) he is a member of a class protected by the statute, (2) that he has been the subject of some form of adverse employment action (or that he has been subjected to a hostile work environment), and (3) that the employer took this adverse action on account of the plaintiff's membership in the protected class.

<u>Id.</u>

Under the Age Discrimination in Employment Act of 1967, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623.

At the pleading stage, the plaintiff need not prove his case; the Seventh Circuit has held that "in order to prevent dismissal under Rule 12(b)(6), a complaint alleging [Title VII] discrimination need only aver that the employer

14

instituted a (specified) adverse employment action against the plaintiff on the basis of [protected class status].'" Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1027 (7th Cir. 2013) (quoting Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008)).

b.  Hostile work environment

To state a hostile work environment claim,

> a plaintiff must allege (1) [he] was subject to unwelcome harassment; (2) the harassment was based on [his] national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe and pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability.

Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty., 804 F.3d 826, 833 (7th Cir. 2015). To state a hostile work environment claim specifically due to sexual harassment, a plaintiff must allege that:

> (1) [he] was subjected to unwelcome sexual harassment; (2) the harassment was based on [his] sex; (3) the harassment unreasonably interfered with [his] work performance by creating an intimidating, hostile or offensive working environment that seriously affected [his] psychological well-being; and (4) there is a basis for employer liability.

Moser v. Ind. Dept. of Corr., 406 F.3d 895, 902 (7th Cir. 2005).

For a plaintiff to succeed on a hostile work environment claim, he must show that "the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment." Davison v. State Collection Service, Inc., 824 F. App'x 424, 426 (7th Cir. 2020) (quoting Smith v. Ill. Dep't of Transp., 936 F.3d 554, 560 (7th Cir. 2019)). "Whether harassment reaches this level depends on 'the frequency

15

of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Mendenhall v. Mueller Streamline Co., 419 F.3d 686, 691-92 (7th Cir. 2005)).

c.    Retaliation

"To plead a Title VII [or ADEA] retaliation claim, a plaintiff must (though [he] need not use the specific terms) allege that []he engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." Id.; see Reed v. Innovative Health & Fitness, No. 05-C-0987, 2007 WL 725066, at *11 (E.D. Wis. Mar. 7, 2007), aff'd sub nom. Reed v. Innovative Health & Fitness Ltd., 259 F. Appx. 875 (7th Cir. 2008) (unpublished) (same as to the ADEA). Statutorily protected activity includes filing complaints with the EEOC and protesting unlawful discrimination. See 42 USCA §2000e-3(a); 29 U.S.C.A. §623(d).

d.    Conspiracy

Civil conspiracy involves "a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful." N. Highland Inc. v. Jefferson Mach. & Tool Inc., 898 N.W.2d 741, 747 (Wis. 2017) (quoting City of Milwaukee v. NL Indus., Inc., 278 Wis.2d 313, 691 N.W.2d 888 (citation omitted)). A civil conspiracy claim has three elements: (1) the formation and operation of a conspiracy; (2) a wrongful act or acts done pursuant to the conspiracy; and (3) damage resulting from the act or acts. Id.

16

2. *Analysis*

The plaintiff has filed three complaints trying to state a claim against his former employer for harassment and discrimination. He has described a multitude of incidents, from co-workers throwing filled boxes at him on one occasion to someone forgetting to recognize his years of service at the annual dinner. The court has no doubt that Sargento was not a good work environment for the plaintiff. It appears that co-workers often were unkind or rude to him and that he was not always treated with the respect he felt he deserved. But while the plaintiff asserts that he was discriminated against based on his gender, age and religion, the second amended complaint demonstrates that the plaintiff believes that his coworkers treated him badly because he rejected the advances of their friend Katherine Clauson over a three-month period in early 2017 and possibly got her transferred to another plant.

The plaintiff's allegations about Clauson's behavior do not state a claim for discrimination or for a hostile work environment. The plaintiff says that Clauson told him she was hot in front of a group of women, filed an HR complaint against him with unknown contents, threatened to vandalize his car and twice made sexually suggestive gestures toward him. Three events which the plaintiff construes as having been sexual in nature do not constitute the kind of severe, pervasive harassment described by the Seventh Circuit. Because of his beliefs, the plaintiff found these incidents offensive. But the small number of acts, taking place over months, do not support an argument

17

that the harassment—if it was that—was pervasive. At worst, Clauson's behavior was "merely vulgar and inappropriate." Hostetler v. Quality Dining, Inc., 218 F.3d 798, 805-806 (7th Cir. 2000).

The same is true of the comments allegedly made by Tammy Wolf and Kathy Griffey. Each woman made one remark which the plaintiff found distasteful. Perhaps Griffey made other remarks; the plaintiff says that he asked her to stop using sexual innuendo around him and she responded that it was her New Year's resolution to do so. But the plaintiff describes only one incident with Griffey and one with Wolf, and while both comments might have been vulgar or inappropriate, they do not constitute a hostile work environment or discrimination.

To the extent that other workers at Sargento were disrespectful or unkind to the plaintiff or even retaliated against him because they were friends with Clauson, such actions do not violate federal law. Federal law prohibits discrimination based on protected classifications such as gender, race, religion or age; it does not prohibit discrimination based on social cliques or loyalty to friends.

The plaintiff attempts to shoehorn his claims into the categories of gender, age and religious discrimination by asserting that he was a fifty-seven-year-old male at the time of the events and that his co-workers knew that his religious beliefs meant that he did not believe in extra-marital sex. But he does not allege that a single person—neither Clauson nor any other co-worker—mentioned anything about his gender, his age or his faith. The plaintiff

*assumes* that women made what he considered to be offensive comments to him because they knew about his religious beliefs, but nothing in his allegations supports that assumption. He *assumes* that HR did not credit his complaints because of his age, but nothing in his allegations support that assumption. Nor does the plaintiff do more than summarily allege that these offensive remarks interfered with his work

The plaintiff alleges that some employees harassed him in a way that interfered with his work—specifically that DenDecker, Carle, and Ferron threw filled boxes at him, forcing him to move to a different pallet. Dkt. No. 20 at 8. He also alleges that Jeff Van Asten and Bruce Benke made threatening remarks both to his face and behind his back. See id. at 7–8. But again, the plaintiff repeatedly asserts that these co-workers took these actions because they were mad at him about his interactions with Clauson, not because of his age or gender or religion.

The plaintiff's retaliation claim fails for the same reason. Title VII and the ADEA protect those who make specific kinds of protests, including protests of unlawful discrimination or filing official complaints with the EEOC. See 42 USCA §2000e-3(a); 29 U.S.C.A. §623(d). The plaintiff doesn't allege that he performed any protected acts during his employment. The box-throwing incident was not based on gender, age or religion so filing a complaint about it isn't a protected act.

Civil conspiracy is a state law claim. A federal court cannot hear and decide a state-law claim unless the lawsuit is between parties from different

19

states and involves a claim for $75,000 or more in damages, 28 U.S.C. §1332, or unless the state law claim is "so related to claims in the action" over which the court has jurisdiction "that they form part of the same case or controversy," 28 U.S.C. §1367. Both the plaintiff and Sargento are citizens of Wisconsin (Sargento Foods, Inc. is a Wisconsin corporation with its principal office in Plymouth, Wisconsin, https://www.wdfi.org/apps/CorpSearch/ Details.aspx?entityID=1S08516&hash=136507677&searchFunctionID=f1e279d d-e4d7-4e67-a15d-5ff79b213d87&type=Simple&q=sargento), and because the plaintiff has not stated any federal claims upon which the court can grant relief, it cannot consider the state-law claim using its supplemental jurisdiction.

While the court understands that the plaintiff strongly feels that he was ill-treated at and by Sargento, he has not stated any claims recognizable by a federal court and the court must dismiss the case.

## II.     Motion to Transfer (Dkt. No. 22)

The plaintiff also recently filed a motion to transfer the case to the Green Bay division of the Eastern District of Wisconsin. Dkt. No. 22. Because the court is dismissing the case, the court will deny the motion as moot.

## III.     Conclusion

The court **DENIES AS MOOT** the plaintiff's motion to transfer. Dkt. No. 22.

The court **ORDERS** that this case is **DISMISSED** for failure to state a claim for which a federal court can grant relief. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 25th day of November, 2020.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**

21