UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY RYAN GOVE,

        Plaintiff,

v.                                                       Case No. 18-cv-1335-pp

SARGENTO FOODS, INC.,

        Defendant.

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO TRANSFER CASE TO GREEN BAY DIVISION (DKT. NO. 41) AND DENYING PLAINTIFF'S MOTION TO REVOKE PREVIOUS REQUEST TO WAIVE SERVICE (DKT. NO. 44)**

        On August 29, 2019, the plaintiff, representing himself, filed a second amended complaint. Dkt. No. 20. The plaintiff sued Sargento Foods, Inc., his former employer, under Title VII alleging a hostile-work-environment, retaliation and sex and age discrimination. Id.; see dkt. no. 39 at 1. On August 6, 2021, the court received from the plaintiff a motion asking to transfer the case from the Milwaukee Division of the Eastern District of Wisconsin to the Green Bay Division. Dkt. No. 41. The motion quotes 28 U.S.C. §1404(a). Id. at 3, 6.

        The court also received from the plaintiff a motion to "revoke the previous request to waive service of a summons, complaints, or any other service n [sic] this case." Dkt. No. 44.

        This order denies both motions.

1

## I. Factual Background

The second amended complaint alleged that the plaintiff worked for the defendant in the north building of its Hilbert, Wisconsin plant from 2012 to 2018. Dkt. No. 20 at 5. The plaintiff claimed that the defendant fired him on April 30, 2018 "due to retaliation for demanding disciplinary action against the ongoing discriminating, harassing, threaten and assaulting actions by a socially-knit group of co-workers." Id. He provided the names of the "main active participants" in the alleged group: Katherine Clauson, Bruce Behnke, Melissa Bratz, Victoria Zahn, Amy Fucile, Jeff Van Asten and William Roit. The plaintiff asserted that he was "suing for the violation of [his] civil rights of Sexual, Gender, Religion, Civil Conspiracy; not limited to, but including Harassment, Threats of Violence, Physical abuse, wrongful firing, and employer liability in a hostile work environment." Id.

The second amended complaint asserted that on February 2, 2017, Katherine Clauson approached him several times in a sexual manner by telling him "how hot she was." Id. The plaintiff said that he walked away from Clauson, and that she retaliated against him due to this rejection. Id. The plaintiff claimed that Clauson was a "Manpower Inc. temporary worker" during the period that some of the alleged conduct occurred. Id. The plaintiff also asserted that Clauson later was hired into a full-time position and that the defendant ignored her "discriminatory/harassing behaviors." Id. The plaintiff alleged that the defendant discriminated against him because he was older than Clauson and because he is a male. Id. He maintained that management

2

and his co-workers were aware of his faith and the impact that his faith had on his decision not to have sex outside of marriage. Id. at 1-2.

The plaintiff said that Clauson filed a complaint with the defendant's human resources department on February 21, 2017, though he indicated that he was not aware of the nature of the original complaint. Id. The plaintiff asserted that Clauson was hired to a full-time position on March 29, 2017, but that the position was to be filled at a later date. Id.

The plaintiff claimed that Clauson and Amy Fucile threatened through gestures to vandalize his motor vehicle on April 5, 2017. Id. He asserted that "she" did this out of retaliation for his conversation with Maria Herrera, an employee in the human resources department, about Clauson's sexual advances. Id. The plaintiff asserted that he reported the conduct to human resources, specifically Jeff Kiesner and Herrera, but that the company took no corrective measures. Id.

The second amended complaint alleged that Clauson and Victoria Zahn made sexual gestures toward the plaintiff at work on April 19, 2017. Id. Again, the plaintiff said that he reported this to Herrera in human resources. Id. The plaintiff asserted that Herrera "was well aware of it, investigated it, and had proof of this event happened." Id. He claimed that no corrective measures were taken by the defendant. Id.

According to the plaintiff, Clauson made more sexual gestures toward the plaintiff on April 24, 2017. Id. The plaintiff asserted that Jorge Santos, a co-worker, asked him about Clauson's conduct and was scheduled for a meeting

3

with management at 8:30 a.m. Id. The plaintiff claimed that this was further proof of the defendant's knowledge of the conduct. Id. The plaintiff asserted that Clauson was in a ninety-day probation period at this time and that the defendant should have fired her. Id. By April 27, 2017, someone—presumably the defendant—told Katherine Clauson that she would be working at Kiel during the third shift starting the next week. Id. at 7. According to the plaintiff, this transfer was a result of the fact that "[m]anagement knew what was going on and shipped her out to get her away from [him]! Id. The plaintiff alleged that on July 29, 2017, Katherine Clauson appeared as active on his "messenger email" after she had blocked him four months earlier. Id. The plaintiff reported it to human resources and told Kiesner that he had now blocked her. Id.

The plaintiff claimed that the defendant failed to take any disciplinary actions against those involved, causing him to face discrimination, intimidation and harassment by both co-workers and management. Id. He asserted that from this point in 2017 through his termination, he endured an intensely hostile work environment. Id.

The plaintiff alleged that Tammy Wolf made a sexual comment while walking by him. He believed this happened during "later summer" of 2017 but before Clauson unblocked him on the messenger email service at the end of July. Id. On January 6, 2017, Kathy Griffey allegedly made a sexual comment during a conversation with the plaintiff. Id. The plaintiff claimed that he had told her several times not to make sexual comments to him. Id. Human resources worker Herrara allegedly had nothing to say about either of those

4

events, but the plaintiff asserted that the defendant's management "put up a sexual discrimination policy on the encased bulletin board." Id.

The plaintiff alleged that he endured verbal threats and assault. The plaintiff alleged that on February 5, 2018, he heard Jeff Van Asten and Bruce Benke comment that "someone should put him six feet under." Id. at 8. On February 8, 2018, Aaron Beitler allegedly threatened the plaintiff in a hand washing area. Id. at 7. The plaintiff alleged that Beitler did not realize the plaintiff was near him when Beitler said that "'every time I see him (me) I want to beat the fuck out of him[].'" Id. at 7-8. The plaintiff said that Beitler was reacting to rumors from William Roit and Clauson's friends. Id. at 8. The plaintiff asserted that he was threatened by Emily DenDecker, an employee in quality control, as well as Owen Carle and Ricky Ferron, both process technicians. Id. The plaintiff alleged that they all threw boxes filled with product at him. Id. He claimed that this was because he did not obey DenDecker's orders; he said that she did not have authority over him. Id. He also related DenDecker's conduct to his issues with Clauson. Id. The plaintiff claimed that he reported these interactions to human resources. He contended that Laura Biehm, an individual in the human recourses department, expressed that she believed the comment by Beitler to be a threat. Id. The plaintiff alleged that Kiesner said "no one should have to . . . be treated like that." Id. According to the plaintiff, both Biehm and Kiesner refused him the opportunity to file a complaint. Id.

5

The plaintiff alleged that Carle made "insinuating remarks" to Ferron as the plaintiff walked by on March 12, 2018. Id. The remarks allegedly related to the reason Clauson was on a different shift. Id. The plaintiff alleged that he received an apology from Ferron later that day. Id. at 10. The plaintiff asserted that Van Asten mocked and laughed at the plaintiff as he walked by on July 21, 2017. Id. He claimed that Van Asten's comments came after a "retaliatory stunt" by Van Asten and Cathy Beil one day prior. Id. The plaintiff said that Van Asten and Beil blamed him for a problem with a cheese cutting machine and that Beil tried to have him suspended. Id. at 9. He maintained that three other employees attempted a different "stunt to make it look like [the plaintiff] wasn't working" on December 13, 2017. Id. The plaintiff claims that he reported these events to human resources. Id. at 8-9. He stated that he took two days off of work after the box throwing incident. Id. at 10. When he returned, he gave Kiesner a letter explaining what his co-workers were doing and how management's inaction contributed to his problems. Id.

The plaintiff alleged that on September 7, 2017, Shaun Carter approached the plaintiff and told him that Clauson was coming back to work at the plaintiff's building and shift. Id. at 9. The plaintiff asserted that "[m]anagement supervisor spread the rumors thru the co-workers that Katherine Clauson was coming back to the north Hilbert building in a process tech meeting." Id. The plaintiff claimed that he asked Kiesner about Clauson coming back and Kiesner told the plaintiff that he had nothing to worry about

6

and his "slate [was] clean," although the plaintiff indicated that he was worried that Clausen wouldn't stop her harassment of him. Id.

The plaintiff alleged that Sonia Otte, an employee in human resources, intentionally omitted him from acknowledgement of his years of service at an anniversary dinner banquet on February 1, 2018. Id. at 10. He alleged that the president of the company apologized to the plaintiff for the oversight. Id. The plaintiff asserted that Kiesner "intentionally changed the dinner orders from what I have requested," and that this was "a prime example of how management retaliates against/treats you when you whistle blow against other workers or stick up for yourself." Id.

At some point, the plaintiff allegedly tried to file a "grievance complaint" with the defendant but was prohibited from doing so by Kiesner and Beihm in human resources, as well as someone in training with the department. Id.

The plaintiff alleged that on March 29, 2018, his supervisor, Eric Driessen, refused to sign his quarterly safety sheets. Id. The plaintiff said that this would have caused a "vast reduction in [his] yearly bonus." Id. The plaintiff alleged that several days later, on April 6, 2018, he met with Herrera and Beihm in human resources. Id. The plaintiff asserted that Herrera and Beihm "forced a mandatory participation of [him] in a 'Fitness for Duty Exam' by a forensic psychologist." Id. He claimed that this was retaliatory behavior by the defendant. Id.

## II. Procedural History

When the plaintiff filed his original complaint on August 28, 2018, he also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. Magistrate Judge Jones ordered the plaintiff to file an amended complaint by November 9, 2018. Dkt. No. 5. On October 15, 2018, the case was reassigned to this court. The plaintiff filed an amended complaint November 8, 2018. Dkt. No. 7.

On January 8, 2019, Keith E. Kopplin, counsel for the defendant, sent a letter to the court saying that his client's process server was "hand-delivered" a copy of the plaintiff's original complaint on December 18, 2018. Dkt. No. 9. Kopplin's letter stated that he was aware that an amended complaint had been filed in the case, which superseded the original complaint. Id. at 1. Kopplin also said that he had not yet been served with the amended complaint and did not intend to file a substantive response "[u]nless and until Plaintiff's claims are allowed to proceed, and a copy of his November 8, 2018 filing is thereafter properly served." Id. On March 8, 2019, the court received a letter from the plaintiff in which he addressed service of the amended complaint. Dkt. No. 11. The plaintiff explained that "I didn't serve the Amended Complaint due to the fact that thru my history with Sargento, I anticipated part of the paperwork would disappear in the transaction. And if it were required I would send them at a later date." Id. at 1.

On July 26, 2019, the court granted the plaintiff's motion to proceed without prepaying the filing fee and ordered the plaintiff to file a second

amended complaint by August 30, 2019. Dkt. No. 19. The order instructed that the plaintiff must not serve the second amended complaint on the defendant until the court authorized him to do so. Id. at 28. The plaintiff filed his second amended complaint on August 29, 2019. Dkt. No. 20. He then filed a motion to transfer case to the Green Bay Division of the Eastern District of Wisconsin. Dkt. No. 22.

On November 25, 2020, the court ordered the case dismissed for failure to state a claim and denied as moot the plaintiff's motion to transfer venue. Dkt. No. 23. The court entered judgment the same day. Dkt. No. 24. The plaintiff appealed the dismissal, dkt. no. 25, and the United States Court of Appeals for the Seventh Circuit vacated this court's decision and remanded the case for further proceedings, dkt. no. 37. On August 5, 2021, the court issued an order vacating its previous judgment of dismissal and ordered the United States Marshals Service to serve a copy of the second amended complaint on the defendants. Dkt. No. 39.

On August 6, 2021, the day after the court's order vacating its judgment and before the defendant had been served, the plaintiff filed another motion to transfer venue to the Green Bay Division. Dkt. No. 41. The defendant filed its waiver of service on September 7, 2021. Dkt. No. 42. The waiver form indicated that the defendant was sent the waiver request on August 16, 2021. Id. The plaintiff then filed a "Motion to revoke the previous request to waive service of a summons, complaints, or any other service in this case." Dkt. No. 44. The

defendant filed an answer to the second amended complaint on October 15, 2021. Dkt. No. 46. It has not responded to either of the plaintiff's motions.

### III. Venue

The plaintiff's motion to transfer quoted 28 U.S.C. §1404, which states that "a district court may transfer any civil action to any other district or division where it might have been brought" upon consideration of "the convenience of parties and witnesses" and "the interest of justice[.]" "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). "The statute permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 978 (7th Cir. 2010) (quoting Stewart, 487 U.S. at 29).

  A. <u>Convenience of the Parties and Witnesses</u>

Section 1404 instructs the court to consider the convenience of the chosen venue for the parties and witnesses. Under this prong, "courts generally consider the availability of and access to witnesses," "each party's access to and distance from resources in each forum[,]" "the location of material events[,] and the relative ease of access to sources of proof[.]" Research Automation, 626 F.3d at 978 (citations omitted). "When weighing the convenience of the parties, one must also keep the plaintiff's choice of forum in mind; however, 'when the

10

situs of the events is not within the plaintiff's choice of forum, then the factor will only receive little weight.'" Wilde v. Beneficial Int'l, Inc., No. 06-C-1009, 2007 WL 2053458, at *6 (E.D. Wis. Jul. 16, 2007) (citing Chi., Rock Island and Pac. R.R. Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955); Anchor Wall Sys., Inc. v. R. & D. Concrete Prods., Inc., 55 F. Supp. 2d 871, 874 (N.D. Ill. 1999) ("The weight accorded a plaintiff's choice of forum is further lessened if the chosen forum lacks any significant connection to the claim.")).

1. *Availability of and Access to Witnesses*

The plaintiff asserts that his "home location" is at an inconvenient forum, that the interest of justice requires that the court transfer the case, that the transfer would eliminate a "travel burden clause" for key witnesses, that this court's docket is more congested that "an alternative district" and that he will be severely prejudiced if the court denies the motion. Dkt. No. 41 at 1. He asserts that "[m]any witnesses have employment and residence located in this Green Bay Division venue." Id. at 3. The plaintiff asserts that "[w]itnesses who travel to Hilbert, WI and live within a ½ hour commute to the Sargento Hilbert facility account for a extremely high percentage of the Sargento Food Inc. employee witnesses." Id. at 4. He says these witnesses would be required to travel as much as 116 miles to Milwaukee. Id. (Oddly, he also argues that he anticipates that the defendant will provide travel arrangements to Milwaukee for those witnesses, but he claims it would be burdensome for them to have to travel to one of the defendant's facilities to take advantage of that transportation. Id. at 5.)

11

The plaintiff discusses a "travel burden clause." Id. at 6. The court does not know what he means by this; 28 U.S.C. §1404(a) makes no reference to a travel burden. It refers only to the convenience of parties and witnesses and the interest of justice. The plaintiff asserts, however, that if any of the witnesses employed by the defendant are financially handicapped, moving the case to the Green Bay division would help them. Id. at 6.

The court infers from the plaintiff's motion that he believes that some of the potential witnesses are likely located in Hilbert, Wisconsin; Hilbert is closer to the Green Bay Division than to the Milwaukee Division. But the plaintiff provided no specific information about any of the witnesses. He has not given the court a list of potential witnesses. He does not say which witnesses work at which facility. He does not explain where the "key witnesses" live or why it would be more burdensome for them to travel 116 miles than forty or fifty miles for a trial. The court does not have enough information to allow it to conclude that transferring the case to the Green Bay Division would be more convenient for the witnesses.

2. *Access to and Distance from Resources in Each Forum*

The defendant is in Sheboygan County, Wisconsin, which is in the Milwaukee Division, but the headquarters is almost equidistant between the Green Bay and Milwaukee courthouses.

3. *Location of Material Events*

It is not clear from the second amended complaint where each of the alleged events occurred. The second amended complaint alleges that the

12

defendant's Hilbert location is where many of the plaintiff's coworkers engaged in their alleged conduct. Hilbert is in the Green Bay division. But the human resources department and any management witnesses may be employed at the defendant's headquarters in Sheboygan County. The court lacks information to determine whether this factor weighs in favor or against transfer.

### 4. *Relative Ease of Access to Sources of Proof*

Sources of proof other than witnesses likely would be located in the defendant's human resources department and with the plaintiff. The human resources department is most likely to have evidence such as copies of workplace complaints and email communications relating to human resources issues. The plaintiff asserts that he now lives much closer to the Green Bay division, but that is only one factor for the court to consider. As the court noted, there may be witnesses and evidence at the defendant's Sheboygan County headquarters, which is in the Milwaukee division.

### B. Interests of Justice

This prong of the transfer analysis "relates to the efficient administration of the court system." Research Automation, 626 F.3d at 978. "[C]ourts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." Id. "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." Id.

13

1. *Docket Congestion and Likely Speed to Trial*

This court's docket is busy. But so is Judge Griesbach's. Judge Griesbach is the only Article III judge in the Green Bay division (there are four Article III judges in the Milwaukee division). Both divisions are busy; this factor weighs neither in favor of nor against transfer.

2. *Familiarity with the Relevant Law*

The plaintiff's claims arise under federal law, which is the same regardless of which division hears the case. The plaintiff has presented no evidence that one division would have greater familiarity Title VII law than the other. This factor weighs neither for nor against transfer.

3. *Desirability of Resolving Controversies in Each Locale and Relationship of Each Community to the Controversy*

The defendant's headquarters are in the Milwaukee division, which may provide it some small interest in having the dispute resolved in that division. The plaintiff says that some witnesses work at the Hilbert facility, which may give the defendant a small interest in having the dispute resolved near that community. The plaintiff does not live in *either* division. This factor weighs neither in favor of nor against transfer.

C. Conclusion

Based on the sparse information the court has before it, none of the factors weigh in favor of transferring the case to the Green Bay division. The court will deny the defendant's motion without prejudice.

## IV. Motion to Revoke Previous Request (Dkt. No. 44)

The plaintiff has asked the court to revoke the "previous request to waive service of a summons, complaints, or any other service in this case." Dkt. No. 44 at 1. The plaintiff says that because he is representing himself, he is not "well versed" in the "getting around the formal court procedures and/or manipulating the system, or this case." Id. at 2. He says that he is very frugal and that he agreed to waive unnecessary expenses for himself, the court and the defense. Id. He asserts that in light of the events that have occurred over the past three years, he wishes to revoke, for his protection, "the previous 'request to waive service of a summons, complaints, or any other service in this case . . . .'" Id. The plaintiff asserts that "members of the Clerk of Court" deliberately mishandled and harassed his brief to the Seventh Circuit Court of Appeals "for the Sargento defense team or representing law firm." Id. at 2-3. He says that despite his frugality, he is leaving nothing to chance. Id. at 3. The plaintiff asserts:

> I need everything submitted to me and the courts, to be signed with a delivery confirmation, to alleviate any questions of any notice or document being sent.
>
> These activities directed either from the Sargento internal legal team; or thru the hiring of the third largest law firm in the world, Ogletree, Deakins, Nash, Smoak & Steward, P.C., has put me in a precarious position. In don't see how the direct actions of how attorney Keith E. Kopplin has conducted himself, changing now that Attorney Jesse R. Dill presides over the case.
>
> For this reason; I request to revoke the 'Waiver of the Service of Summons' from here on.

Id.

The court has no idea what happened with the plaintiff's brief in the Seventh Circuit Court of Appeals. But a waiver of service has nothing to do with delivery of pleadings or other documents to the court, or to the plaintiff. Federal Rule of Civil Procedure 4(d)(1) says that a defendant that has been sued has a "duty to avoid unnecessary expenses of serving the summons." It allows the plaintiff to notify the defendant that it has been sued and ask that defendant whether it will waive the expenses of having the summons and complaint formally served. And if a defendant fails to waive service "without good cause," the court may impose the expense of service on the defendant. Rule 4(d)(2).

The defendant has abided by its obligation to avoid costs; it waived service. Dkt. No. 42. In fact, the defendant has filed its answer. Dkt. No. 46. The next step in the lawsuit is for the court to issue an order requiring the parties to file a scheduling order under Fed. R. Civ. P. 26(f).

The court understands that the plaintiff feels that he was treated very badly by the defendant and that he feels that he is at a disadvantage because the defendant has the money to hire lawyers while he is representing himself. But the defendant's lawyers have done nothing improper or illegal in this lawsuit. They have followed the rules. The court will deny the plaintiff's motion.

## V. Conclusion

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to transfer the case to the Green Bay division. Dkt. No. 41.

The court **DENIES** the plaintiff's motion to revoke the previous request to waive service of a summons, complaint, or any other service in this case. Dkt. No. 44.

The court will enter a separate order instructing the parties to confer and to file a Rule 26(f) plan.

Dated in Milwaukee, Wisconsin this 3rd day of March, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**
