EASTERN DISTRICT OF WISCONSIN

CLERK USDC EDWI

2022 JUL 11 P 2: 46

TIMOTHY RYAN GOVE,

Plaintiff,

v.

SARGENTO FOODS INC.,

Defendant

Case No. 18-CV-1335

Honorable Judge Pamela Pepper

## MOTION TO DEPOSITION WITNESSES PREVIOUS QUASHED DUE TO INVALID PROCEDURE RULING

July 7, 2022

Your Honor,

I am looking to deposition the previous people that were quashed at the 06-27-2022 hearing and one additional one. The events listed below occurred while working at Sargento Foods in 2017, as early as 10 months and up to when I was terminated. I will now reveal these facts, to make my case why these people need to be deposition.

I will say this again; I am not looking to throw people in jail for what they done for Sargento's legal team. Some people are gullible, some are protective, and some are greedy. This is a declaration of waiver stating that I will not file any charges against any of them for the act of using a child for enticement, harassment or discrimination or any other state or federal codes pertaining to this. Previous lies on the motions filed will be exempt from perjury charges. I will only consider filing perjury charges if someone deliberately lies in the deposition and are caught. There will be no need for anyone to have to obtain an attorney. It's a fair deal; I just want people to tell the truth.

These arguments are directed for the deposition people of Taylor Chevalier, Jane Gilles-Copps, Susan Osmond, Jeffery Buechel and Barbara Finnel.

## MY BASIS FOR DEPOSITION THEM, WHAT SARGENTO'S INTENTION WAS

Either be for acts of harassment, and/or due to acts of sexual or religious discrimination to disprove my faith and its belief's of absence of sex before marriage as false.

- Acts of harassment due to sexual, religious and age discrimination; by incorporating younger women, since the seduction of older women and 21 yr old Katherine Clauson wasn't successful in disproving my faith beliefs.
- These depositions will prove management used younger women to obtain an advantage in leverage in deterring a possible litigation case through harassment and/ or sexual, age, or religious discriminations.
- Any one or a combination of any number of these offenses constitutes an effort to bury the truth of the allegations to what has manifested at their facility. The sole purpose of these acts was to get an individual which posed a problem, out of the way.
- I have the right to know, the court has the right to know, the public has the right to know, and the jury so it can rule on a correct verdict has the right to know the truth!

### 1. FACTS OF CHEVALIER AND BUECHEL'S

Regardless, of what they said in their motions to quash their deposition, Taylor Chevalier and the Buechel's are lying.

- Taylor Chevalier stated she has never seen me or knew me, or has been to Xperience Fitness Inc.
- The truth is Chevalier and my paths crossed 3 times intentionally, organized by Eric Driessen and Sargento.

A) Xperience Fitness swimming pool, details listed explained below under 'This is where Taylor Chevalier and the Buechel's come in'.
B) Eric Driessen's home. Eric Driessen my supervisor at Sargento, his house was 3 to 4 blocks from my house. I used his street regularly as a shortcut to avoid traffic lights for 5yrs, until I

got fired and then discovered out of a fluke event, he lived there. I was unaware where he lived prior to this.

Chevalier and his niece, Madison was playing basketball in September of 2018 at Eric Driessen's. As I was driving by and seen girls playing basketball, I had a bad gut feeling about driving past his house and took a left instead. I changed my course due to knowing Eric's demeanor. At this point, I never knew who the girls were.

C) September 2019, Madison Driessen and Taylor Chevalier walked past my house. Sargento was trying to find out if I could recognize Taylor. *My outdoor camera system was removed in preparation of me moving to Michigan.* I was fabricating a cube trailer, they came from the opposite side I was working on and had no way of seeing me from the direction they were coming from. As they walked by; Madison Driessen said hi to me, I returned the gesture; Taylor Chevalier looked straight ahead and kept walking. This event helped me to recognize both the girls and who Chevalier really was, and find out her real identity. The direction they came from wasn't a coincidence; if they came from the other way, I would have had more time to see them, which they didn't want. Buechel's made the phone call telling them what side I was working on.

## THESE ARE THE FACTS

- I emailed Kayla McCann the results from Xperience Fitness findings into Chevalier inquiry about attending their facilities, on June 15, 2022. *Xperience personnel Paul DeLang, told me there was no records of Chevaliers from Menasha in their system.* Taylor Chevalier was served papers on June 12, 2022 and first filed a motion on June 17, 2022. I'm not accusing McCann of coaching or tampering with a witness.
- I lived 6.2 miles away from Xperience Fitness in Menasha, WI right off of Oneida Street by Hwy 441. Driving there takes me 9-15 minutes, depending on the traffic lights from my home in Combined Locks, WI. At Xperience I would change from my street clothes to my swimming apparel; and in the showers room counter, I would put my shampoo, conditioner, and shaving stuff. Under normal circumstances; by the time I left home and entered the swimming area was at least an half an hour, give or take a couple of minutes.
- Taylor Chevalier lived with her parents in Menasha, WI. There residence was 1.8 miles from Xperience Fitness or around five minutes travel time.

## WHY IT IS IMPORTANT TO DEPOSITION BOTH CHEVALIER AND BUECHEL'S

As I mentioned in 'Motion for subpoenas Served to Key Witness to be Compelled' DKT.73 p.3 last paragraph. Sargento put in action 'scenario's of using younger women to disprove my faith beliefs of not having sex before marriage thru acts of enticements. This was implemented in an effort to have the ability to eliminate a possible future litigation case. Furthermore it proves management was well aware of my faith beliefs and the events which were listed in my second amended complaint. Sargento Foods was using both these people in their respective specific roles.

- Due to a scheduling error on my part in picking of my vacation, I missed a day of work where I never called in, I was docked 8 pts out of a 16 point attendance system. Attendance was never an issue with me, until I missed numerous days due to the Clauson events. I was now maxed out on the point system, and subjected to a possible discipline action.
- Sargento was aware I was swimming at Xperience Fitness thru conversations with peers at work. A lot of people were aware I swam in the morning before work.
- I was swimming at least 3 times a week, usually every other day or on the third day. I was fairly consistent with my schedule.
- Do to events at work involving both management and peers; I realized Sargento was looking to get rid of me.
- In a response to events, I changed my schedule from swimming at 5-5:30am until after work. This was done to prevent an unlikely event from occurring at the gym parking lot, which would result in being late at work, and being fired!

## THIS IS WHERE CHEVALIER AND BUECHEL'S COME IN

- Sargento was looking for someone to entice with me at the place I swam at. If they would have asked an hourly worker; and if something happen which required discipline of them,

a person could have it hung over their head. Not only that, but imagine what other things could have gone wrong with this.
- They needed someone who had access to a younger woman, in which they could trust! In October of 2017; that was Sargento supervisor Eric Driessen. Eric's or his niece's choice was Madison's best friend, Taylor Chevalier.
- This is the catch! They could have used anyone who wasn't living in the area, or related to Driessen, and I would never been able to find them. But they couldn't use just anyone, because they needed someone who lived close by to the gym.
- I can't prove how they knew I switched my schedule, but they did. Not only did they know my schedule was switched, but they were well aware I wasn't at the pool for a couple of days.
- This is where Buechel's came in. They needed someone to notify them that I was on my way to Xperience Fitness. Buechel's made the phone call!
- Taylor Chevalier was on-call and ready to go. She met me at Xperience Fitness in the pool and inquired to me about my webbed gloves, my snorkel setup, other things, and then proceeded to the whirlpool. The whirlpool was on the side off of the pool by the men's locker room. If I would have followed her or went into the whirlpool, they would have made their case for an argument.
- As in my previous motion, when I went to my car with my travel bag, Buechel's had a clear vision of me coming and going. DKT. 73 p. 3. I have a good argument to suspect Buechel's have been reporting to Sargento, my activities for quite some time. This I can prove if I'm allowed to!

### THIS IS WHY IT WAS SO IMPORTANT TO DEPOSITION THEM

- I had two types of cameras in my home. One is an outdoor camera and the other is an indoor camera. I used a camera for the window facing outside when I took the outdoor camera's down. How ironic is this; Sargento's legal team operative who infiltrated the church I was doing a bible study at, is the one who suggested I purchase an security camera system.

- Both these cameras have not been viewed as we speak. They have not viewed do to the fact; I understand I have to notify the defendant, if I discover something on them. Deposition first, then view them.
- There is a very good chance I have footage of both Buechel's daughter doing her harassment stunts for Sargento, and Madison Driessen and Chevalier walking past my house. This is the reason I need to depose them first, people will be more inclined to tell the truth if they don't know what I have!
- Chevalier's home was roughly 5 miles from my house, and I believe Madison Driessen's home would in a similar distance range. It would be uncommon for a couple of girls walking in a neighborhood so far from her home, unless they had a purpose.
- Fact. Jeff Buechel called me right after he was served and asked what the subpoena was. If you would have heard his voice; he was shaking, he sounded scared, and there is a reason for it.
- The bottom line; Sargento is claiming that they were never involved in harassing or discriminating against me. A deposition of the Buechel's along with the outdoor video will prove, that they not only were they harassing me at work, but also after employment. The after employment harassment acts, are a clear indication they did it also while I was employed in an effort to create an environment to pressure me to quit. *Steele v. Schafer, 535 F. 3d 689 -Court of Appeals, Dist. of Columbia Circuit 2008. [7].*

2. <u>Barbara Finnel</u>

- As noted in my 'second amended complaint' DKT. 20 p10. Sonia Otte and Jeff Kaiser both human resources personnel, deliberately harassed me at my 5 yr dinner banquette. Otte for not calling my name to be recognized for my service at the dinner; and Kaiser, intentional ordering a dinner plate which included pork, after we discussed my dates biblical diet and the menu. Finnel was a witness to the events, and to my reactions and comments I made regarding in what transpired. She is a witness to these deliberate harassments Sargento committed to shame and mock me.
- Barbara Finnel niece and her girlfriends were over for a July 4, for a gathering at her sister's house in 2019. This was a continuation of the stunt the pastor at Cross Walk

Church of Appleton pulled. Its purpose of us stopping there meant was as a harassment stunt to dissuade the litigation from continuing?
- For the record; I distanced myself from being around Finnel; after she celebrated about you quashing the motion to compel Menards to release video footage of the assault, by a Sargento peer on February 27, 2019. DKT.19 p.28. Why would someone celebrate about that?

3. <u>Deposition Jane Gilles-Copps and Susan Osmond, of the Shamrock Club of Appleton</u>
- Jane Gilles-Copps planned on bringing her daughter Claire over to view me opening up my beehive in either late May or June of 2017.
- It started to rain after work and I called her to cancel. For unknown reasons, she was furious! We never did re-schedule after that.
- Gilles-Copps is the secretary of the Shamrock Club of Appleton. She is the go to person, for new arrivals, scheduling, events planning and would have the ability in directing anyone to our activities.
- Susan Osmond a member of the Shamrock club; she used her granddaughter, Lelia Eldredge, in an enticement/ religious and age discrimination, harassment, stunt at the Christmas dinner in December 2017. Susan Osmond carried out numerous harassment/age, religious discrimination stunts for Sargento legal team from 2017 thru 2019.
- Putting the pieces of the puzzle together with what Gilles-Copps, Osmond and other members of the Shamrock Club have been involved in, is a strong argument that Gilles-Copps was planning on being involved in a harassment, discrimination/enticement stunts for Sargento legal team in 2017. In addition, she would be the person to direct and facilitate any request Sargento needed. She would have inside knowledge of whom and how they were using in their schemes. Either it be Osmond, McCray, Francart or herself, she would have insight to what Sargento were looking to do.
- Knowing what I know now; there is no doubt in my mind, the scheduled beehive meeting wasn't just an educational lesson for her daughter.

This information should be made available for the jury to see. The harassments or discriminations while employed and afterwards were committed in an effort to stop me from filing this case, or dropping it. These actions are linked together hand in hand.

These acts of enticements perpetrated by Sargento Foods Inc. needs to be explored. Regardless if its purpose was to entrap for criminal implementations or to harass me, all of them contained acts of sexual, religious and age discriminations.

Bless

*Timothy R Gove*

TIMOTHY Y RYAN GOVE

PRO SE