UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY RYAN GOVE,

        Plaintiff,

    v.                            Case No. 18-cv-1335-pp

SARGENTO FOODS, INC.,

        Defendant.

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 83), GRANTING DEFENDANT'S RULE 7(H) EXPEDITED MOTION TO COMPEL DISCOVERY RESPONSES (DKT. NO. 93), GRANTING DEFENDANT'S RULE 7(H) EXPEDITED MOTION TO COMPEL PLAINTIFF'S DEPOSITION APPEARANCE (DKT. NO. 98) AND EXTENDING DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

      The parties have filed numerous motions since the last court hearing (in June 2022); this order addresses three of them. On July 26, 2022, the plaintiff filed a "Motion to Compel Requested Information from Sargento Foods Inc. from 26(f) Report and/or Documents Request." Dkt. No. 83. The plaintiff asserts that some of the defendant's discovery responses are deficient and alleges that the defendant is withholding documents. Id. at 5–6, 8–9. The defendant filed its response on August 16. Dkt. No. 87. On September 9, 2022, the defendant filed an expedited, non-dispositive motion under Civil Local Rule 7(h) to compel the plaintiff's discovery responses. Dkt. No. 93. The defendant alleges that the plaintiff has withheld responsive information and documents, as well as "refus[ing] to otherwise correct glaring deficiencies with his responses to" the

1

defendant's first set of interrogatories and requests for production of documents. Id. at 1. The plaintiff filed his response on September 21. Dkt. No. 97. On September 28, 2022, the defendant filed an expedited, non-dispositive motion under Civil Local Rule 7(h) to compel the plaintiff's deposition appearance. Dkt. No. 98. The defendant asserts that the plaintiff failed to appear for his properly noticed deposition, which was scheduled for September 28, 2022. Id. at 1. The plaintiff filed his response on October 6. Dkt. No. 101.

The discovery deadline expired on September 30, 2022 and the dispositive motion deadline was November 18, 2022. In its motion to compel the plaintiff's deposition appearance, the defendant asks the court to issue an order extending the discovery and dispositive motion deadlines by at least sixty days to permit the defendant to obtain outstanding discovery from the plaintiff. Dkt. No. 98 at 1, 3.

## I.     Plaintiff's Motion to Compel (Dkt. No. 83)

### A.     Arguments

In his motion, the plaintiff first argues that the timeframe for the defendant to object to his discovery requests has elapsed and any objections should be waived. Dkt. No. 83 at 2. According to the plaintiff, "[s]ince the 26(F) Report the defendant has had 93 days from the 3-30-22 timeframe." Id. The plaintiff asserts that "[t]his is a deliberate act of resisting discovery . . . ." Id. The plaintiff contends that he has requested information from the defendant four times but has not received responses:

> I have requested information from Sargento Foods INC via twice in
> the 26(F) report, via email to the defendants rep. Kayla McCann on

2

June 13, 2022 See EXHIBIT A & B, thru [sic] the erroneous serving of the subpoena to Sargento Foods INC. on June 2, 2022 see EXHIBIT B, for a total of four times.

In all these requests; stemming from as early as March 30, 2022; I have not heard one single response that the defendant's lawyers, either Dill or McCann, or any objections about the material(s) or gave any inclination that these requested materials were not being gathered and assembled for delivery. When a person reads the 26(f) report, there is no doubt that the information listed was being sought after and requested. McCann and Dill were well aware of requested materials.

Dkt. No. 83 at 2.

The defendant's response brief clarifies that the plaintiff served his discovery requests on June 13, 2022 and that the defendant served its discovery responses, objections and accompanying documents on July 13, 2022. Dkt. No. 87 at 3. The plaintiff's motion to compel appears to allege deficiencies in those responses.

Neither party provided the court with a copy of the defendant's responses and objections to the plaintiff's discovery requests. The plaintiff provided what appears to be one page of the defendant's responses—partial answers to Requests #2 and #3. See Dkt. No. 83-1 at 7. The court has done its best to figure out what issues the plaintiff has with the defendant's responses and objections without actually seeing the responses and objections.

The plaintiff provided a copy of his discovery requests, dkt. no. 83-1 at 4–5, and his motion refers to personnel files, discussions of employee complaints and investigations that he requested from the defendant, dkt. no. 83 at 2. Regarding Request #2, the plaintiff argues that "[t]he defendant only listed some of the people who were permanent full time employees and worked

3

regularly at the north plant." Id. at 5–6. The plaintiff asserts that the files the
defendant produced are incomplete and that "there are numerous
discrepancies in what they provided." Id. at 6. Finally, the plaintiff implies that
the defendant did not comply with his seventh request in a document that he
called a "subpoena," seeking the names, phone numbers and addresses of all
Sargento employees who "were required and/or volunteered to participate in a
fitness for duty examination' [sic] and/or 'forensic [sic] psychological
examination or mandated psychological consultation(s)." See Dkt. No. 83 at 8–
9; Dkt. No. 83-1 at 4. The motion also appears to reference objections the
defendant made to the plaintiff's discovery requests. For example, the plaintiff
refers to a "General Objections" section in the defendant's "Response to
Plaintiff's Requests for Production of Documents" and argues that his discovery
requests are not overly burdensome, vague, ambiguous or broad. Dkt. No. 83
at 1–2. The plaintiff states at one point that "[t]he defendant objects to anything
containing confidential information . . . ." Id. at 9.

    The defendant responds that it has responded to the plaintiff's document
requests by producing 190 pages of documents, but that the plaintiff "seeks
additional documents that either do not exist or that are simply not relevant to
the allegations in this case." Dkt. No. 87 at 1. The defendant asserts that the
plaintiff's discovery requests are overly broad in time scope. Id. at 7. The
defendant contends that because the plaintiff filed his charge with the Equal
Employment Opportunity Commission on June 9, 2018, the relevant period for
the allegations in the second amended complaint is August 13, 2017 to June 9,

4

2018. Id. (citing 42 U.S.C. §2000e-5(e)). The defendant asserts that the plaintiff's requests for documents dating back to 2010 or 2012 "are entirely overly broad and seek documents simply not relevant to the claims or defenses of either Party in this case." Id. The defendant also argues that the court should deny the motion to compel because the plaintiff failed to meet and confer with the defendant in good faith before filing the discovery motion. Id. at 1–3. And the defendant asserts that its objections to the plaintiff's discovery requests were timely. Id. at 3.

The plaintiff's reply claims to "clarify the misrepresentation" of the defendant's response. Dkt. No. 88 at 1. The plaintiff asserts that two emails he sent to the defendant in July explained what he was offering and demonstrated that he was willing to negotiate. Id. The plaintiff states that after a week of receiving no response to the first of these emails, he concluded that "the defendant had no intentions of negotiating the plaintiff's demands." Id. The plaintiff argues that he already possessed the 190 pages of documents the defendant produced and alleges that what is missing from the defendant's document production is "over a dozen documented events from the summer of 2012 until the day [the plaintiff] was fired." Id. at 2. The plaintiff argues that the defendant is incorrect in stating that the period for which the plaintiff's claim is valid is August 13, 2017 through June 9, 2018. Id. According to the plaintiff, he submitted his claim to the EEOC on April 8, 2018 and the relevant timeframe is June 13, 2017 to April 8, 2018. Id.

B.     "Meet and Confer" Requirement

Federal Rule of Civil Procedure 37(a) states that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The rule first requires the party filing the motion to "include a certification that [he] has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Id. The Local Rules for the Eastern District of Wisconsin echo this requirement and provide further instructions, stating that the certification "must recite the date and time of the conference or conferences and the names of all parties participating in the conference or conferences." Civil Local Rule 37 (E.D. Wis.).[1]

The plaintiff's motion includes a section titled "WHAT I OFFERED TO KEEP THIS FROM THIS [sic] MOTION FROM BEING FILED." Dkt. No. 83 at 3. The motion references two emails the plaintiff says he sent to defense counsel on July 14 and July 22, 2022 as part of an email thread titled "Discovery Responses." Id. See also Dkt. No. 83-1 at 6. The July 14, 2022 email states the plaintiff's understanding that the defendant was "open to negations [sic] regarding [the defendant's] objections response to [the plaintiff's] subpoenaed Sargento document request" and appears to offer to make concessions and adjustments to the plaintiff's discovery requests (offering to vacate two requests and shorten the timeframe for a third). Dkt. No. 83-1 at 6. The July 22, 2022

_____

[1] The Local Rules are available on the court's website: https://www.wied. uscourts.gov.

6

email reiterates these offers and offers to modify another request. Id. The motion states that as of July 24, the plaintiff had not heard back from the defendant. Dkt. No. 83 at 12.

The defendant acknowledges receiving these emails but describes them as "incoherent." Dkt. No. 87 at 2. According to the defendant, the emails "demand[ed] additional documents after Defendant produced reasonable responses and valid objections." Id. The defendant states that the plaintiff "never invited a discussion to meet and confer with" the defendant and that the July 14 and 22 emails "do not demonstrate a good-faith effort to meet and confer with" the defendant. Id. The defendant also points out that the plaintiff filed his motion to compel only two or three days after his second email. Id. at 2 n.1.

According to the plaintiff, when a week had passed without him receiving a response to his July 14 email, his "only conclusion was the defendant had no intentions of negotiating the plaintiff's demands." Dkt. No. 88 at 1. The plaintiff asserts that he sent a follow up email to the defendant on July 22. Dkt. No. 83-1. The plaintiff filed his motion to compel only four days later. Dkt. No. 83 at 1.

The plaintiff's "WHAT I OFFERED TO KEEP THIS FROM THIS MOTION FROM BEING FILED" section in his motion arguably does not comply with Fed. R. Civ. P. 37 or this court's Civil L.R. 37. It does not certify that the plaintiff gave notice to the defendant that he was planning to file a motion to compel discovery, as required by Fed. R. Civ. P. 37. It does not contain a certification that the plaintiff attempted to confer in good faith, as required by Fed. R. Civ.

7

P. 37 and Civil L.R. 37. It does not identify any conferences with defense counsel, much less give the date and time of any conferences and the names of the people attending as required by Civil L.R. 37. The plaintiff appears to be under the misimpression that sending two emails to defense counsel, offering to modify certain requests, constitutes a meet-and-confer; it does not. The plaintiff himself says that he is "using emails as a primary source of communication" to stop "questionable hearsay from the defendant;" in one email he sent to defense counsel on June 14, 2022, he stated that "all contacts will be thru email." Dkt. No. 69-6 at 3. It appears the plaintiff has refused to meet with defense counsel, either in person or by phone. The failure to meet and confer, on its own, is a reason for the court to deny the plaintiff's motion to compel.

C.   The Appropriate Methods for Requesting Discovery

The plaintiff's motion also misapprehends the law. The plaintiff says that he requested information from the defendant "via twice in the 26(F) report." Dkt. No. 83 at 3. A Rule 26(f) report is not a discovery demand; it is a planning tool. It is a document in which the parties lay out their anticipated litigation schedule—deadlines for completing discovery, agreements about how to handle certain kinds of discovery (such as electronic documents), *etc.* The plaintiff filed his own, separate Rule 26(f) report and amended Rule 26(f) report (in most cases the parties file a joint report), and he included in them lists of people he wanted to depose and information he wanted, dkt. nos. 56, 61, but under the Federal Rules of Civil Procedure, those documents did not trigger any

8

obligation on the part of the defendant to produce that information. Under the Federal Rules of Civil Procedure, parties are required to make certain disclosures regardless of whether the other side asks for them (Fed. R. Civ. P. 26(a)(1)), but all other discovery requests must be made under either Fed. R. Civ. P. 33 (interrogatories—questions that the opposing party must answer), Fed. R. Civ. P. 34 (requests for production of documents and other physical evidence) or Fed. R. Civ. P. 36 (requests for the other party to admit or deny certain facts). A party wishing to orally depose a witness must comply with Fed. R. Civ. P. 30.

The plaintiff also says that he requested information from the defendant "via email to the defendants rep. Kayla McCann on June 13, 2022 . . . ." Dkt. No. 83 at 2. He references Exhibits A and B, which he attached to the motion; Exhibit A is part of his amended Rule 26(f) plan. Dkt. No. 83-1 at 1-2. Exhibit B is a two-page document that the plaintiff called a "subpoena," demanding thirteen categories of information, and asserting that the requested information must be mailed to him "within 14 days of the delivered date of this subpoena." Id. at 4-5. The plaintiff also references Exhibit C, the July 14, 2022 and July 22, 2022 emails he sent to defense counsel. Dkt. No. 83-1 at 6.

As the court has explained, Exhibit A—the amended Rule 26(f) report— does not constitute a discovery demand. Exhibit B is not a subpoena because it does not comply with the requirements of Fed. R. Civ. P. 45, and a subpoena is not the appropriate way to make discovery demands; as the court explained above, the proper way to make discovery demands is through interrogatories,

requests for production and requests for admission. Exhibit C is not a demand; it is the emails from the plaintiff to defense counsel modifying demands he already had (improperly) made.

       D.    <u>The Timing of the Plaintiff's Motion</u>

Even though the documents the plaintiff sent to Attorney McCann on June 13, 2022 were not appropriate discovery demands, the defendant acknowledges receiving them and treating them like discovery demands. Dkt. No. 87 at 3. Under Fed. R. Civ. P. 34(b)(2)(A), the defendant had thirty days from June 13, 2022 to respond to any requests for production of documents— that is, until July 13, 2022.[2] (The plaintiff stated in his request that discovery should be mailed to him within fourteen days; there is no rule requiring an opposing party to provide discovery within fourteen days of receipt of a demand.) The defendant served the documents on July 13, 2022—within the timeframe specified by Rule 34(b)(2)(A).

One day later, the plaintiff sent his first email offering to modify some of his requests; he sent the second email nine days after receiving the defendant's discovery responses. Dkt. No. 83-1 at 6. Although the plaintiff perceives that these emails "express[ed] [his] willingness to discuss negotiating what [he] was seeking, in the demands listed above," neither message asked for any action or response from defense counsel. Neither message stated that the responses the

---

[2] Rule 33(b)(2) gives an opposing party thirty days to respond to interrogatories and Rule 36(a)(3) gives an opposing party thirty days to respond to requests for admission. The plaintiff did not serve interrogatories or requests for admission, but if he had, the defendant would have been entitled to thirty days to respond.

defendant had provided were insufficient. Neither message asked to meet with defense counsel. But when the plaintiff did not receive the responses he did not request, he filed this motion to compel. He filed the motion on July 26, 2022—only four days after his second email to defense counsel—and it appears that he drafted the motion on July 24, 2022—only *two* days after his July 22, 2022 email to defense counsel. See Dkt. No. 83 at 12. Even though the emails did not ask for responses, the plaintiff concludes that because defense counsel did not respond to him within days of receiving the emails, the defendant is refusing to cooperate. Id.

Even if the plaintiff's emails had advised defense counsel that he believed that their responses were deficient and explained why, or asked defense counsel to respond or take action, or asked to meet with defense counsel, in the world of busy litigation lawyers who are handling numerous cases and clients, the plaintiff did not give defense counsel sufficient time to respond. For all the plaintiff knows, defense counsel were in trial (an eight-to-twelve-hour-a-day commitment, often for several days in a row), or out of town, or home with sick family members. The plaintiff did not reach out again and say, "I sent you emails on July 14 and July 22 and have not heard from you. Please let me know your thoughts on my offers." He did not call to find out why he had not heard back from defense counsel. He jumped to the conclusion that the only explanation for the lack of immediate response from defense counsel was ill will, and he prematurely and improperly filed this motion to compel.

11

E.    The Court's Action

The court understands, as it has since the plaintiff filed this case, that the plaintiff is angry and frustrated at the defendant and feels the defendant has wronged him terribly. The court also understands that when confronted with the confusing nature of federal court civil litigation—all the detailed rules and requirements—the plaintiff perceives the defendant's reliance on and citation to the rules as the defendant throwing up roadblocks to prevent him from seeking redress. But the plaintiff has chosen to represent himself. If he is going to continue to represent himself, he must interact professionally with the lawyers who are representing the defendant. He must follow the same rules the lawyers are required to follow, even though he is not a lawyer. "Even pro se litigants are obliged to follow procedural rules." McCurry v. Kenco Logistics Servs., LLC, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (citing Members v. Paige, 140 F.3d 699, 702 (7th Cir. 1998)). The plaintiff does not have to like the defendant, but he must be polite and civil in his interactions with the lawyers the defendant has hired.[3]

The court would be warranted in denying the plaintiff's motion to compel solely because he did not comply with the federal and local procedural rules

_____

[3] As the court will discuss in more detail later in this decision, some of the emails the defendant has provided in support of various pleadings show the plaintiff being disrespectful and belligerent, calling defense counsel names, accusing counsel of improper conduct and casting aspersions on counsel's character. See Dkt. No. 69-6. The court has advised the plaintiff once before about this kind of unprofessional, uncivil conduct. The court would not tolerate this conduct from a lawyer; it would be sanctionable. Plaintiffs who represent themselves are not excused from the court's rules of civility and decorum.

12

and because the timing of the motion was unreasonable. But in the hope of heading off more unnecessary motions, the court will address the substance of the plaintiff's motion.

F.     The Timeliness of the Defendant's Responses

The motion to compel asserts that the defendant's objections to the plaintiff's discovery requests were untimely: "The timeframe the defendant had to object to these demands has elapsed. All these objections should be waived." Dkt. No. 83 at 2.

The court already has explained that the Rule 26(f) plans did not constitute proper discovery requests. It also has explained that the Exhibit C "subpoena" did not comply with Rule 45 and was not a proper tool for demanding documents. What the court has not explained is that the "subpoena"—even if it had complied with Rule 45 and even if subpoenas were a proper way to obtain discovery—was not properly served. In late May/early June of 2022, the plaintiff served the "subpoena"—the court's civil subpoena cover sheet and the attached list of information the plaintiff was demanding— directly on the defendant's business address. See Dkt. No. 69-3. Defense counsel advised the plaintiff that this was improper, that all communications and discovery requests must go through the defendant's attorneys and that the plaintiff should not send anything to, or communicate directly with, Sargento. Dkt. No. 69-6 at 7. Defense counsel's email also pointed out that because Sargento is a party to the case, the proper avenue for requests for production of documents was through Rule 34 and not through a subpoena under Rule 45.

13

Id. The plaintiff responded by agreeing to make his requests through the law firm in the future. Id. at 6. In the motion to compel, the plaintiff acknowledges that service of this June 2 subpoena was "erroneous." Dkt. No. 83 at 2.

Of all the documents the plaintiff lists in his motion, the only one that resembles a valid discovery demand under the Federal Rules of Civil Procedure is the plaintiff's June 13, 2022 request to defense counsel for the list of documents attached to the improperly-served subpoena. As the court explained above, if the court assumes (as the defendant did) that the June 13, 2022 request constituted a Rule 34 request for production, this means that the defendant had until July 13, 2022 to respond or object to the plaintiff's requests. The defendant timely served its discovery responses, objections and accompanying documents on July 13, 2022. Dkt. No. 87 at 3. The defendant's responses were not untimely.

G.     Alleged Contempt of Court and Obstruction of Justice

Under the heading "Sargento Contempt of Court, Obstruction of Justice," the plaintiff asserts that "[t]he defendant only listed some of the people who were permanent full time employees and worked regularly at the north plant." Dkt. No. 83 at 5–6. He lists a number of groups of people whom he says should have been included: technicians, office personnel and management. He also describes how some people from some shifts or some plants would work other shifts or in other plants. Id. He concludes by saying that "[a]ll permanent and temporary staff workers talked and had interpersonal relationships." Id. at 6.

14

Request #2 on the list of items the plaintiff requested on June 13, 2022 requests "all names, addresses and phone numbers of employees employed between 2012 thru 2018 at the Hilbert plant location." Dkt. No. 83-1 at 4. The plaintiff provided the court with what appears to be a portion of the defendant's objection and response to Request #2. See Dkt. No. 83-1 at 7. It seems the defendant objected to this request because it sought "information of individuals who are not parties to this lawsuit and who have not agreed to have their personal and private information made available to Plaintiff or Plaintiff's counsel." Id. at 7–8. Subject to this objection, the defendant indicated that it had "provided a list of employees who, during the period of August 10, 2017 through June 9, 2018, worked on the same shift as Plaintiff at the Hilbert location." Dkt. No. 87 at 4–5.

In response to the plaintiff's assertion that the defendant provided the requested information for only some of the people who worked at Sargento, the defendant argues that Request #2, as well as the similar requests in #4 (requesting the names of all employees and temporary workers at the Hilbert facility in 2017 and 2018 and their telephone numbers) and #10 (requesting the names, addresses, phone numbers and payroll records for all volunteers of the summer work program at the Hilbert plan from 2012 through 2020), are overly broad and constitute a fishing expedition. Dkt. No. 87 at 5. The defendant argues that there is no reason the plaintiff would need a list of *all* employees employed at the Hilbert facility from 2012 to 2018 other than to identify similarly situated comparators. Id. The defendant cites case law

15

holding that comparators must be similar to the plaintiff in all material respects, which the Seventh Circuit has explained includes having the same supervisors and being subject to the same standards. Id. (citing Coleman v. Donahoe, 667 F.3d 835, 8474 (7th Cir. 2012); Gates v. Caterpillar, Inc., 513 F.3d 680, 690 (7th Cir. 2008); Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 680 (7th Cir. 2005); McDonald v. Vill. of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004)). The defendant argues that the plaintiff is not entitled to a list of employees spanning several years because employees who worked on different shifts or in different departments reported to different supervisors, or were "volunteers for the summer work program" are not proper comparators.[4] Id.

In his July 14 and 22, 2022 emails to defense counsel, the plaintiff said he was willing to "shorten the date" for Request #2 to the Hilbert plant employees employed from 2016 to 2018. Dkt. No. 83-1 at 6. In the motion to compel, the plaintiff insists that he needs a complete list for this period because it will provide him with "names of the individuals who have witnessed the continuous harassment and discriminatory acts" described in the second amended complaint. Dkt. No. 83 at 4. The plaintiff asserts that people other than permanent and full-time employees at the north plant may have witnessed the relevant incidents. Id. at 5. The plaintiff identifies two

_____

[4] The court has not analyzed the defendant's arguments about comparators, because the plaintiff's motion makes no reference to comparators. The plaintiff seems to be seeking witnesses, not comparators.

16

individuals, Ricky Ferron and Emily DenDecker, whom he mentioned in the second amended complaint but who are not included in the defendant's list. Id. See Dkt. No. 20 at 8. The plaintiff alleges that the defendant deliberately omitted these names. Dkt. No. 83 at 5. The defendant argues that "there is no reason to believe that employees on other shifts, temporary workers, or seasonal high school workers would witness" the events described in the plaintiff's allegations. Dkt. No. 87 at 6.

"District judges have broad discretion over discovery matters . . . ." Kuttner v. Zaruba, 819 F.3d 970, 974 (7th Cir. 2016) (citation omitted). "[T]he court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In determining whether requested discovery is "proportional to the needs of the case," the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues,

and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

The plaintiff's demand for the names, addresses and phone numbers of every human being who was employed at or worked at the Hilbert plant from 2016 to 2018 is not proportional to the needs of the case. The fact that someone other than the employees who worked the same shift as the plaintiff at the same location *might* have witnessed some of the incidents the plaintiff alleges does not justify such a broad, intrusive and burdensome request. If a party were entitled to discovery about every person in the world who theoretically might have witnessed an event, the legal system would grind to a halt. Delivery persons who were on site for ten minutes *might* have seen something. The mail delivery person *might* have seen something. Alleging "that someone is a 'potential witness' is not a sufficient basis for permitting [a party] to rummage through confidential and sensitive records based on nothing but the hope that something relevant will be found." Arms v. Milwaukee Cty., No. 18-CV-1835, 2020 WL 5292146, at *2 (E.D. Wis. Sept. 4, 2020). It is reasonable for the defendant to provide the plaintiff with the list of the employees who worked the same shift as the plaintiff in the same location; if it turns out that any of *those* individuals are aware of others who witnessed the conduct of which the plaintiff complains, he can ask permission to conduct follow-up discovery. (This is why courts often give lawyers several months to conduct discovery: one witness may lead to another.)

In providing the plaintiff with the information he requested for employees working the same shift as the plaintiff at the same time, the defendant provided a list of *fifty* names. This is not an example of the defendant hiding the ball. It also appears that the plaintiff had knowledge of and access to the names of the people who worked with him, as evidenced by the fact that he identified several individuals in his Rule 26(f) report and in the second amended complaint.[5] Requiring the defendant to supplement its response with information the plaintiff already possesses would be unreasonably cumulative, inconvenient and unnecessarily burdensome. The defendant adequately responded to Request #2 by providing an extensive list of fifty Sargento employees who worked at the Hilbert location from August 10, 2017 through June 9, 2018.

H.    <u>Alleged Missing Documents</u>

The motion to compel claims that the files the defendant produced are incomplete and that "there are numerous discrepancies in what they provided." Dkt. No. 83 at 6. The plaintiff asserts that "[t]here are at least a dozen documents of events which occurred with peers" at Sargento and that he knows there are documents missing because he "can recognize documents missing of events of harassment, discriminations, and other events in which peers attempted to have Sargento management invoke disciplinary measures against [him], to get [him] fired." <u>Id.</u> The motion mentions "events" and

_____

[5] This also explains why some of the discovery the defendant provided the plaintiff was information the plaintiff already had—a fact which is not unusual or surprising in civil litigation.

"incidents" with little other specificity, contending that "some" of these incidents "are listed in the Second Amended Complaint." Id. The plaintiff also argues that the defendant's response and production do not contain "notes mentioning the conversations [the plaintiff] had with HR or supervisors in discussion of the events, [his] complaints, or arguing for [his] defense." Id. According to the plaintiff, "[s]ome of these testimonies were written on paper by [the plaintiff] or management, while others were taped audibly." Id. The plaintiff provides one specific example of documents that he believes the defendant should have included in its production: "In the documents what Sargento supplied me, only 2 out of 4 harassing/bulling [sic] events involving Bruce Behnke and Joe Skarga were submitted from late 2012 and into early 2013 time peroid [sic], and continued to the day I was fired." Id. at 7.

Though the plaintiff does not say so, it appears that he is asserting that the defendant did not fully respond to Request #1, in which the plaintiff sought "all submitted files, either paper files, footnotes, and / or any electronic media; either digital or tape recordings which pertains to Timothy Ryan Gove employment from 2/2012 to 4/2018" and stated this "would include any internal or external investigations of the allegations, complaints, discussions or reports of discrimination, harassment, bulling [sic], or the physical assault." Dkt. No. 83-1 at 4. The defendant says that in response to this request, it produced 190 pages of documents involving the plaintiff, which included the plaintiff's entire personnel file and notes regarding investigations during the plaintiff's employment. Dkt. No. 87 at 4. The defendant states that, contrary to

20

the plaintiff's allegations, these are the only documents in the defendant's possession regarding this request. Id. The defendant argues that the plaintiff's claims that the defendant possesses additional notes or audio recordings of conversations are "purely speculative" and that such "meritless speculation" is not a ground for the court to compel the defendant's production of documents it does not possess. Id. (citing Davis v. G.N. Mortg. Corp., 396 F.3d 869, 885 (7th Cir. 2005); Todd by Todd v. Merrell Dow Pharm., Inc., 942 F.2d 1173, 1178 (7th Cir. 1991)).

The plaintiff has not provided the court with sufficient information to allow it to conclude that the defendant has deliberately failed to comply with Request #1. He identified only one "incident" for which he believes documents are missing—two alleged bullying events involving Bruce Behnke and Joe Skarga from 2012/2013. Dkt. No. 83 at 7. As the court will explain below, the plaintiff's demand that the defendant will provide him with discovery about events dating back years before the timely filing period is overly broad. But even during the timely filing period, the plaintiff must do more than allege that there are documents missing because he knows there are documents missing. If the plaintiff had said, "Three times in January 2018, I met with supervisor Jones and complained about harassment, and Supervisor Jones took notes and told me she would file those notes in my personnel file, but those notes are not included in the discovery provided," the defendant would be able to respond by looking for those notes or talking to supervisor Jones. But neither the defendant nor the court can respond to vague allegations of missing

21

documents about unspecified events or conversations. This is not a basis for the court to grant the motion to compel.

I.   Alleged Distortion of Information/Relevant Claim Period

The plaintiff argues that defense counsel "distorts" the relevant claim period for the purpose of "eliminat[ing] key witnesses and events." Dkt. No. 83 at 8. The plaintiff refers to this as "a deliberate deception by the defendant." Dkt. No. 88 at 2. The plaintiff admits that he does not understand "what exact date the 300 day timeframe goes back to," but asserts that it is "around 05-15-2017." Id. The plaintiff alleges that this "distortion" of the timely filing period excludes some witnesses, such as summer high school students whom the plaintiff claims the defendant hired to harass him. Id.

The plaintiff stated in his reply brief that he submitted his EEOC claim on April 8, 2018; he argues that "[f]rom that date you subtract 300 days to arrive at the timeframe which the claim is active," and that this means the relevant claim period is June 13, 2017 to April 8, 2018. Dkt. No. 88 at 2. The plaintiff attached to his reply a document titled "EEOC (INQUIRY) NUMBER: 44-2018-01286." Dkt. No. 88-1. This document—which is not on an official EEOC or Wisconsin Equal Rights Division form and does not bear a "received" stamp—states next to "Date of Incident (Approximate)" the date of March 12, 2018. Id. But in November 2018, the plaintiff filed with the court an EEOC Form 212-A. Dkt. No. 7-1 at 8. This form lists the plaintiff as the charging party and the defendant as the respondent. It indicates that the EEOC received the document on June 9, 2018. Id. The EEOC assigned the case Charge No.

22

443-2018-01286C. Id. The plaintiff also provided the court with the EEOC's Dismissal and Notice of Rights form dated June 15, 2018; this form notified the plaintiff that if he wished to file a lawsuit, he must do so within ninety days. Id. at 16.

A person alleging employment discrimination under Title VII must file a charge of discrimination within 180 days after the alleged unlawful employment practice occurred; if the person initially instituted proceedings with a state or local employment discrimination agency (such as Wisconsin's Equal Rights Division), the person must file the charge within 300 days of the date the alleged unlawful employment practice occurred. "In Wisconsin, a plaintiff has 300 days from the alleged discriminatory act to file a complaint with the EEOC or the state Equal Rights Division." Calvin v. Sub-Zero Freezer Co., 697 F. App'x 874, 875 (7th Cir. 2017). The question of whether allegedly discriminatory events that occurred more than 300 days before the plaintiff files a charge with the EEOC or ERD is a complex one, but the date from which the 300 days is calculated is not complex. The 300 days is calculated by subtracting 300 days from the date the plaintiff filed the *charge*. In this case, the plaintiff filed the charge on June 9, 2018. Dkt. No. 7-1 at 8. Three hundred days prior to June 9, 2018 is August 13, 2017. The defendant is correct and has not "distorted" the timely filing period. The plaintiff is entitled to discovery relating to events that occurred between August 13, 2017 and June 9, 2018.

23

J.     Other Employees

The plaintiff wants to prove that the only reason he was required to take a fitness exam was because the defendant was trying to protect itself. Dkt. No. 83 at 8. He says that the evidence he seeks will prove why people other than him also were required to take a fitness exam. Id. The plaintiff says he wants the names and phone numbers of any individuals who were required to take a fitness exam. Id. at 9. This argument appears to relate to Request #7, in which he demanded the names, phone numbers and addresses of all Sargento employees who "were required and/or volunteered to participate in a fitness for duty examination' and/or 'forensic psychological examination or mandated psychological consultation(s)." Dkt. No. 83-1 at 4.

The second amended complaint does not allege that the defendant discriminated against the plaintiff by making him take a fitness exam. It asks "why Sargento would go so far out their way to create such a paper trail (requiring a Fitness for Duty exam) when they didn't have to" and alleges that the plaintiff "was set up to be fired." Dkt. No. 20 at 11–12. It also alleges that the defendant forced the plaintiff to participate in the Fitness for Duty Examination and that "[t]his was Sargento's retaliations for the most recent hostile environment act by its workers; and a continuation of the civil right/employer liability violations . . . ." Id. at 10.

The plaintiff insists that he is seeking only the names and phone numbers of all employees whom the defendant required to undergo the Fitness for Duty Examination, not these individuals' medical records, notes or results

24

of the examination. Dkt. No. 92 at 2. The defendant's response brief does not mention its response to Request #7, but asserts in relation to Request #13 (a request for "[a]ll personnel file records of any complaints, discipline actions, and/or any discussion(s) involving" fourteen of the defendant's current or former employees) that producing those files would implicate significant privacy concerns. Dkt. No. 87 at 6.

Forcing the defendant to disclose the names and phone numbers of individuals who were required to undergo fitness exams, as well as the personnel files and disciplinary records of other employees, raises significant privacy concerns. These individuals are not parties to this case and have not consented to the release of their information. "[D]istrict courts have broad discretion to limit a request for the discovery of personnel files, in order to prevent the dissemination of personal or confidential information about employees." Brunker v. Schwann's Home Serv., Inc., 583 F.3d 1004, 1010 (7th Cir. 2009) (citation omitted). Producing "personnel folders may infringe on the privacy interests of non-parties. While it is true that no privilege exists to protect personnel files, courts recognize that such information is sensitive, and that they should weigh the value of the information sought against the burden of providing it." Arms, 2020 WL 5292146, at *1 (citation omitted). The very fact that an individual underwent a fitness for duty examination/forensic psychological examination implies and reveals private information.

Nor has the plaintiff explained what he might learn in contacting third parties whom the defendant required to take the exam, or in obtaining the

personnel and disciplinary files of other employees. The plaintiff asserts only that the defendant won't provide the discovery because it is scared the plaintiff will use the information against the defendant; he says that the defendant is denying these employees their right to decide whether they would like to participate in this litigation and share their stories. Dkt. No. 83 at 9. Employers have obligations to protect the private information of their employees, and this lawsuit is not about providing a therapeutic experience for other people. There is no basis for the court to compel the defendant to produce this information and every reason to decline to.

The plaintiff states that if the court grants his request for the contact information for employees who took fitness exams, he "will need permission to subpoena Daniel J Burbach of Midwest Consultant and Forensic Psychology LLC for the names, addresses and phone numbers of Sargento employees evaluated by Dr. Burbach." Dkt. No. 83 at 9. The defendant interprets this as a request for permission to subpoena Dr. Burbach. Dkt. No. 87 at 7–8. The court is denying the plaintiff's request that the court compel the defendant to produce information about employees who took fitness exams, and it does not construe the plaintiff's conditional statement as a formal request from the plaintiff to subpoena Dr. Burbach.

K.    Charitable and Political Contributions

The motion to compel asserts that the plaintiff wants information about contributions to civil liberties and religious groups or politicians because he believes that the reason more people do not file discrimination lawsuits against

26

the defendant is because these organizations won't help victims due to the defendant's significant political and charitable donations. Dkt. No. 83 at 10-11. This argument seems to relate to Requests #11 and #12, in which the plaintiff demanded "[n]ames or titles and contributions monies amounts donated to any non-profit organizations of political and/or civil rights and/or religious and/or constitutional rights organization(s) which were beneficiaries of Sargento donations," and "[a]ll contributions paid with monies amount to any mayor and/or district attorney and/or any judicial campaigns, from 2010 to current." Dkt. No. 83-1 at 5. The defendant argues that these requests are irrelevant to the plaintiff's Title VII claims of discrimination, the allegations in the second amended complaint and/or the plaintiff's employment with the defendant. Dkt. No. 87 at 6. In his July 22 email to defense counsel, the plaintiff appeared to acknowledge the defendant's objections to these requests and modify his request: "What I propose is this; at the trial, I will only refer to the recipients of donations to the jury by the number according to their position on the list provided. This should elevate any concerns your donor clients should have." Dkt. No. 83-1 at 6.

This request goes far beyond anything permissible under the discovery rules. Even if the defendant contributes heavily to charitable organizations and political candidates, that fact has not deterred the plaintiff from filing this lawsuit. It is not relevant to whether the defendant discriminated against the plaintiff. The plaintiff expresses concern that defense counsel will tell the jury that the defendant never has been sued and that it has received many awards

27

for being a good place to work; he is concerned that this information will cause the jury to believe that he is fabricating his allegations. Dkt. No. 89 at 10. He reasons that the jury will consider the defendant's charitable and political donations as proof that people are scared to sue the defendant. All of this is speculation and conjecture. If the case makes it beyond summary judgment to trial, the parties will have the opportunity to file motions *in limine* seeking to limit or preclude certain evidence and arguments; the court will rule on those motions at that time. The court will not order the defendant to comply with Requests #11 and #12.

L.    Conclusion

Rule 37(a) allows a party to move to compel discovery responses if the opposing party fails to answer an interrogatory submitted under Rule 33 or fails to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). The plaintiff did not file interrogatories or requests for production. Nonetheless, the defendant has provided 190 pages of discovery. The plaintiff prematurely and improperly filed a motion to compel that does not comply with the rules. The motion seeks information that is not relevant or proportional to the plaintiff's claims and has not specifically described documents he believes are missing. The plaintiff asks for discovery relating to events well outside the filing period. The court will deny the motion to compel.

The defendant has asked the court to award the defendant the attorney's fees and costs "it has been forced to incur in opposing Plaintiff's baseless Motion." Dkt. No. 87 at 8 (citing Fed. R. Civ. P. 37(a)(5)(B)). Rule 37 requires

28

that if the court denies a party's motion to compel, the court "must, after giving an opportunity to be heard, require the movant . . . to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). "[T]he court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." <u>Id.</u> The plaintiff's motion was not substantially justified. The court will allow the defendant to file a statement of proposed fees and costs and will give the plaintiff an opportunity to respond.

## II. Defendant's Rule 7(h) Expedited Motion to Compel Plaintiff's Discovery Responses (Dkt. No. 93)

The defendant alleges that the plaintiff has withheld responsive information and documents and has "refuse[d] to otherwise correct glaring deficiencies with his responses to" the defendant's first set of interrogatories and requests for production of documents. Dkt. No. 93 at 1. The defendant asks that under Rule 37(a)(3), the court compel the plaintiff to provide full and complete responses to the defendant's discovery requests. <u>Id.</u>

On August 5, 2022, the defendant served its discovery requests on the plaintiff, along with a letter explaining the plaintiff's discovery obligations under the Federal Rules of Civil Procedure and specifically pointing the plaintiff to Rules 26, 33 and 34. Dkt. Nos. 94-1 and 94-2. On September 1, 2022, the plaintiff responded via email and attached his responses to the defendant's discovery requests as well as authorizations for disclosure of protected health information. Dkt. Nos. 99-3, 99-4. The defendant alleges that the plaintiff's

29

responses had multiple and readily apparent deficiencies, including the following:

- In response to Defendant's Interrogatory No. 5 and Requests for Production Nos. 2, 3, 4, 5, 6, and 7, Plaintiff outright acknowledged he possessed responsive information and materials but he refused to disclose such until "plaintiff presents his case in the court of law, or the trial" and also objected to disclosure based on a purported "Pro Se privilege[.]"
- In response to Request for Production No. 1, requesting documents that Plaintiff used to help him answer Defendant's first set of interrogatories, Plaintiff refused to produce any documents claiming the documents would constitute a fishing expedition, and that the request is ambiguous, burdensome, and "impossible to complete."

Dkt. No. 93 at 1–2.

The defendant also asserts that in response to its request for production No. 13, the plaintiff failed to produce completed authorization forms enabling the defendant to obtain medical records relevant to evaluating the plaintiff's claim for compensatory damages. Id. at 2. According to the defendant, defense counsel called the plaintiff on September 6 to discuss these deficiencies, but the plaintiff did not answer. Id. (citing Dkt. No. 94 at ¶4). That same day, the defendant sent the plaintiff a follow up email addressing in part the alleged deficiencies in the plaintiff's discovery responses. Dkt. No. 94-5. The plaintiff responded the next day via email; the defendant states that the plaintiff "refuses to confer by voice with" the defendant. Dkt. No. 93 at 2. In his response email, the plaintiff insisted that he was not withholding documents from the defendant because the documents in his possession "w[ould] be made available at the appropriate times" and directed the defendant to the plaintiff's responses to the questions and requests. Dkt. No. 94-6 at ¶3. The defendant

argues that the plaintiff's "improper withholding" of documents prejudices the defendant's ability to fully prepare its defenses to the claims in the second amended complaint. Dkt. No. 93 at 3. The defendant asks the court to order the plaintiff to submit full and complete responses to the defendant's discovery requests and to correct the deficiencies within two days of the court's order. Id.

The plaintiff responded to the defendant's motion. Dkt. No. 97. Like the plaintiff's motion to compel, his response to the defendant's motion fails to follow the court's procedural rules. The defendant filed its motion to compel under Civil L.R. 7(h). Dkt. No. 93. Civil L.R. 7(h) requires that the party responding to the motion file its opposition "within 7 days of service of the motion, unless otherwise ordered by the Court." Civil L.R. 7(h)(2). Because the defendant filed its motion on September 9, the rule required the plaintiff to file his response by September 16. The court received the plaintiff's response on September 28; the response was untimely by almost two weeks. Civil L.R. 7(h)(2) also requires that "[t]he respondent's memorandum must not exceed 3 pages." Not counting the attached exhibits, the plaintiff's response is thirteen pages. Dkt. No. 97. As this court has stated in other cases, "[t]he court expects all parties who litigate in the Eastern District of Wisconsin to comply with the court's local rules." Pressley v. Ozaukee Cty., No. 20-cv-1404, 2022 WL 889386, at *4 (E.D. Wis. Mar. 25, 2022) (citing General L.R. 1 ("Compliance with the rules is expected.")). On the other hand, "the rules are intended to be enforced primarily upon the Court's own initiative, and the filing of motions

alleging noncompliance with a rule may be reserved for egregious cases." General L.R. 1.

Although the plaintiff filed his response twelve days late and his response is ten pages over the limit, these are not the same sorts of egregious procedural violations as the plaintiff's refusal to meet and confer with the defendants or his filing of a motion to compel—a serious step in federal civil litigation—without a justifiable basis. And most of the plaintiff's response memorandum discusses issues irrelevant to the motion to compel. See Dkt. No. 97 at 2, 4–10, 12–13. Although the plaintiff did not comply with Civil L.R. 7(h), the court will consider the merits of the plaintiff's opposition to the defendant's motion.

The plaintiff asserts that releasing his personal documentation of his experiences while employed with the defendant will damage his case because it will lead to the defendant destroying important documents the plaintiff requested from the defendant. Dkt. No. 97 at 3, 11–12. The plaintiff asserts that the defendant will use these documents to coach its witnesses, alleging that the sole purpose of the defendant seeking these documents is "the tampering of documents and the requested witnesses." Id. at 3, 12. The plaintiff says that "[e]very document the defendant is seeking from the plaintiff is to avoid perjury of their client and to hinder the requested witnesses from telling the truth!" Id. at 11. The plaintiff stresses the importance of his personal documentation of the events in developing the questions he will ask witnesses in depositions and at trial. Id. He does not want "Sargento witnesses" to have access to these documents because he claims the witnesses will use them to

32

commit perjury. Id. The plaintiff asserts that "[a]llowing the defendant access to this data would destroy the plaintiff ability [sic] to successfully bring the truth out in the trial." Id.

The plaintiff repeatedly claims that the defendant's legal counsel cannot be trusted with the documents they request and alleges that the defendant's attorneys do not act in "good faith." Id. at 1, 6, 8, 10–13. The plaintiff argues that the defendants are seeking privileged documents, characterizing the requested discovery as "documents of attorney client privilege" and "Pro Se privilege." See id. at 10–12. The plaintiff asserts that "[r]elease of these documents will remove all equality and fairness in the plaintiff presenting his case." Id. at 13. And the plaintiff refuses to provide requested documents to defense counsel because he contends that "all they have to do is request the plaintiff's personnel records from their client" because "[t]here is plenty of information there." Id. at 3. Finally, the plaintiff reiterates a general objection that "the defendant has bombarded [him] with burdensome and ambiguous requests . . . ." Id. at 10. See also id. at 11 (referring to the plaintiff's responses that the defendant's production requests three and four are ambiguous and burdensome).

The civil discovery system is designed to ensure that neither party sandbags the other. The rules require *both* parties to turn over discovery. A party who voluntarily comes into federal court to file a lawsuit is asking to use that court to pursue his rights; he cannot then refuse to comply with the discovery rules that govern practice in that court. The plaintiff has demanded

33

that the defendant provide him with discovery—*lots* of discovery; he cannot refuse to provide discovery the defendant asks of him. Deliberate refusal to provide reciprocal discovery is extremely serious and is grounds for the court to impose sanctions. That said, the court turns to the individual issues.

Regarding the medical record authorization forms, the plaintiff asserts that he provided authorization for release of his medical records for a span of ten years. Dkt. No. 97 at 1. The plaintiff also refers to a request for medical records spanning more than ten years as a "witch hunt" and argues that it has nothing to do with the "punitive damage calculations." Id. at 4. The plaintiff asserts that these records are irrelevant and states that he "questions the defendant's motive, use, and purpose" behind this request. Id.

In compliance with the "meet-and-confer" requirement of Fed. R. Civ. P. 37(a)(1), the defendant's motion explains that defense counsel unsuccessfully attempted to call the plaintiff and then sent the plaintiff a follow up email "inviting a discussion about his deficient discovery responses." Dkt. No. 93 at 2. The motion asserts that the plaintiff "refuses to confer by voice with" defense counsel and that the plaintiff's reply email "maintained his position that he would not disclose responsive information or documents before trial . . . ." Id. The plaintiff's email demonstrates that he had no intention of discussing the discovery requests further; it asserted that the plaintiff was not withholding "evidence of any documents" and directed the defendant to re-review his objections. Dkt. No. 94-6 at 1. The defendant's motion to compel sufficiently

34

certifies that the defendant attempted in good faith to confer with the plaintiff before filing the motion.

Rule 26(b) describes the scope of discovery, stating that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Id. at 26(b)(1). Under Rule 33, a party may serve written interrogatories upon another party and these interrogatories "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(1)–(2). "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Id. at 33(b)(2). "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Id. at 33(b)(4). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if another "party fails to answer an interrogatory submitted under Rule 33 . . . ." Fed. R. Civ. P. 37(a)(3)(B)(iii). For the purposes of a motion to compel, Rule 37(a) requires a court to treat "an evasive or incomplete disclosure, answer, or response . . . as a failure to disclose, answer, or respond." Id. at 37(a)(4).

In Interrogatory No. 5, the defendant requested the following: "Identify each statement (written or oral) and/or recording you have regarding any of your claims or allegations in the Complaint, including the identity of the person providing the statement or included in the recording, what it is about, and the date it was prepared." Dkt. No. 94-2 at 5. The plaintiff responded that "[a]ll

35

original written documents will be made available to the defendant after the plaintiff presents his case to the court of law or the trial." Dkt. No. 94-3 at 4. As to electronic recordings, the plaintiff similarly stated these "will be presented in the discovery summary report as required by the Federal Rules of Civil Procedure, or as each recording is reviewed." Id. The plaintiff stated that "these documents will only be reviewed after the plaintiff has received the defendant's requested interrogatories questions and the plaintiff's [sic] has completed his requested subpoena for depositions interrogatories of witnesses." Id.

As the defendant has argued, it appears the plaintiff possesses the information necessary to fully answer this interrogatory but chose not to do so because he believes the defendant is not entitled to that information at this time. The plaintiff is incorrect. His response is unacceptable and violates the Federal Rules of Civil Procedure.

Throughout his discovery responses, the plaintiff refers to "the discovery summary report," indicating that it is required by the Federal Rules of Civil Procedure. Dkt. No. 94-3 at 4, 8–9, 11. The plaintiff appears to be under the misimpression that once discovery is complete, the parties produce a report summarizing the information and documents each has uncovered during the discovery process. The Federal Rules of Civil Procedure do not provide for or require a "discovery summary report." As to the proper time for responding to the defendant's discovery demands, that time is within thirty days of the date the defendant makes the demands. The plaintiff's response that he will not answer interrogatories or produce documents until a "discovery summary

36

report" is prepared is improper, unacceptable and in violation of the discovery rules.

The plaintiff objected that this interrogatory "is Attorney/Client privileged information or Pro Se privileged information" and "is burdensome and ambiguous." Id. 4. The "burdensome and ambiguous" portion of the objection does not provide the specificity required by Rule 33(b)(4). The plaintiff does not explain how or why providing documents or recordings that he has in his possession is burdensome or ambiguous. General objections are not helpful and rarely considered valid:

> When a party raises objections to discovery requests, the objecting party bears the burden of proving that a discovery request is improper. General objections to discovery requests that merely recite boilerplate language without explanation do not meet this burden, and courts within the Seventh Circuit consistently overrule them or entirely disregard such objections.

Raab v. Wendel, No. 16-CV-1396, 2018 WL 11408277, at *1 (E.D. Wis. Feb. 15, 2018) (citations omitted).

As for his privilege arguments, there is no such thing as "pro se privilege" and "[t]he attorney-client privilege protects communications made in confidence by a client . . . to an attorney, acting as an attorney, for the purpose of obtaining legal advice." Design Basics LLC v. Campbellsport Bldg. Supply, Inc., 99 F. Supp.3d 988, 915 (E.D. Wis. 2015) (citing Sandra T.E. v. S. Berwyn Sch. Dist. 100, 600 F.3d 612, 618 (7th Cir. 2010)). The plaintiff does not have an attorney, so any statements or recordings he has cannot have been made in confidence by him to an attorney for the purpose of obtaining legal advice. Further, Rule 26 requires a party who asserts a privilege and seeks to withhold

otherwise discoverable information on the basis that it is covered by that privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The plaintiff has not done so. The court will grant the defendant's motion to compel and order the plaintiff to provide a complete answer to Interrogatory No. 5.

Next, the defendant identifies deficiencies in the plaintiff's responses to several of the defendant's requests for production of documents, including Request Nos. 1 through 7 and 13. Dkt. No. 93 at 1–2. Requests to produce documents under Rule 34 are subject to the discovery scope and limits of Rule 26(b). As with responses to interrogatories, "[t]he party to whom the request is directed must respond in writing within 30 days after being served . . . " Fed. R. Civ. P. 34(b)(2)(A). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B). Objections to requests for production "must state whether any responsive materials are being withheld on the basis of that objection." Id. at 34(b)(2)(C). "An objection to part of a request must specify the part and permit inspection of the rest." Id.

In Request for Production No. 1, the defendant sought all documents the plaintiff used or referenced to help him answer the defendant's first set of interrogatories. Dkt. No. 94-2 at 6. This is a common request in civil litigation.

38

The defendant reports that the plaintiff did not provide any documents in response to this request, and the plaintiff's written response states only that he used "Wisconsin Department of Workforce Development websites, and the internet." Dkt. No. 94-3 at 8. The plaintiff's response refers to this request as a "fishing expedition of a [sic] inquiry" and asserts that "[t]his request is ambiguous and burdensome and impossible to complete." Id. Again, this is a general objection that does not "state with specificity the grounds for objecting," nor does it "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(B)–(C). The plaintiff has not explained how this request is ambiguous or why it is burdensome and impossible to complete.

In Request No. 2, the defendant sought all written statements and/or recordings made by any individual related to the claims as alleged in the plaintiff's second amended complaint. Dkt. No. 94-2 at 6. The plaintiff responded that all audio and video recordings "will be submitted in the discovery summary report, after each one is reviewed or deemed of value." Dkt. No. 94-3 at 8. As for written statements, the plaintiff responded that "[o]riginal documentation of the events which occurred at Sargento . . . will be made available for the defendant to review after the plaintiff has presented his case to the court of law or trial." Id. The plaintiff alleges that releasing this requested information to the defendant before trial "will result in the defendant tampering with the witnesses, and documents the plaintiff doesn't have, thus interfering in the plaintiff's case." Id. Finally, the plaintiff's response adds an objection

39

stating that "[t]his demand is Attorney/Client privileged information or Pro Se

Privileged information, and this demand is burdensome and ambiguous." Id.

The plaintiff's responses and objections to the defendant's requests for

production continue in this manner, repeatedly asserting that applicable

documents will be included in "the discovery summary report" and making

general objections based on alleged attorney-client/pro se privilege and that

the request is ambiguous and burdensome:

> **REQUEST NO. 3** All documents that concern communications
> between you and any other person regarding or related to the
> allegations contained in the Complaint from April 2018, to the
> present date.
>> **RESPONSE:** Attorney/Client privileged information or
>> Pro Se privileged information. If apical [sic] to this case,
>> documents will be included in the discovery summary
>> report. This demand is ambiguous and burdensome.
>
> **REQUEST NO. 4** All notes and journals you maintained during your
> employment with Defendant.
>> **RESPONSE:** Original documentation of events which
>> occurred at Sargento Food Inc. will be made available
>> for the defendant to review after the plaintiff has
>> presented his case to the court of law or trial. This
>> demand is Attorney/Client privileged information or Pro
>> Se privileged information, and this demand is
>> burdensome and ambiguous.
>
> **REQUEST NO. 5** All documents you believe support your claims
> that you were treated differently by Defendant because of your sex.
>> **RESPONSE:** See the required fitness for duty or EAP
>> evaluation documentation. DKT. NO. 7-2. Original
>> documentation will be made available for the defendant
>> to review after the plaintiff has presented his case to the
>> court of law or trial. This demand is Attorney/Client
>> privileged information or Pro Se privileged information.
>> This demand is burdensome and ambiguous.
>
> **REQUEST NO. 6** All documents you believe support your claims
> that you were treated differently by Defendant because of your
> religion.
>> **RESPONSE:** See the required EAP or fitness for duty or
>> forensic psychological evaluation documentation. DKT.
>> NO. 7.2 Original documentation will be made available

for the defendant to review after the plaintiff has presented his case to the court. This demand is Attorney/Client privileged information or Pro Se privileged information. This demand is burdensome and ambiguous.

**REQUEST NO. 7** The "40 pages of documentation describing what [you] endured on a regular basis", as referenced in "Plaintiff Response to Defendant and Motion to Compel Requested Information From Sargento Foods, Inc. From 26(f) Report and/or Document Requests." (Dkt. 83, pg. 7).

**RESPONSE:** Original documentation will be made available for the defendant to review after the plaintiff has presented his case to the court of law or trial, otherwise the defendant will tamper with witnesses and documents, and impede and/or interfere with the plaintiff's case. This demand is Attorney/Client privileged information or Pro Se privileged information. This demand is burdensome and ambiguous.

Dkt. No. 94-2 at 7; Dkt. No. 94-3 at 9–10. The plaintiff's responses to the defendant's production requests number 12 and 17 are similar. Dkt. No. 94-3 at 11, 12. (The plaintiff responded to numbers 8 through 11, and 14 through 16. Id. at 10, 12.)

As the court has explained, there is no "discovery summary report" required under the Federal Rules of Civil Procedure; the time for the plaintiff to respond to valid discovery demands is within thirty days of receiving them. Vague, general objections that the defendant's demands are burdensome and ambiguous are not sufficient to alert the defendant or the court to the reasons why the plaintiff cannot comply. As the court has explained, there is no "pro se privilege" and the plaintiff has no lawyer with whom to have attorney-client privileged communications. Nor has he complied with the requirements for identifying privileged documents.

41

The plaintiff's repeated assertions that "[o]riginal documentation will be made available for the defendant to review after the plaintiff has presented his case to the court" are flagrant violations of the discovery rules. The whole point of the discovery rules is for the parties to exchange discovery *before* trial, so that neither side is taken by surprise and everyone knows the universe of documents and evidence that will be involved. As for the plaintiff's repeated reference to "original documentation," he doesn't have to provide originals; he can provide copies, but he *must* provide documents responsive to valid discovery demands. And the plaintiff's speculations of future misuse of discovery, perjury, witness tampering and violations of the discovery rules are totally unsupported, unprofessional and improper.

Finally, in production request number 13, the defendant requested the following:

> Complete and sign the attached "Authorization for Disclosure of Protected Health Information (Not Including Psychotherapy Notes)" and "Authorization for Disclosure of Protected Health Information (Psychotherapy Notes)" for each and every medical provider containing health records relevant to damages or relief sought from Defendant or any physical and/or mental conditions that you have experienced from the alleged conduct of Defendant's employees.

Dkt. No. 94-2 at 8. The plaintiff responds that he signed the "Authorization for Disclosure of Protected Health Information (Not Including Psychotherapy Notes)" and authorized release "for the time period the plaintiff was employed at Sargento INC to present day." Dkt. No. 94-3 at 11. The plaintiff also stated that "[t]he authorization for psychotherapy notes is not apical [sic]," which the court assumes to mean "not applicable." Id. The plaintiff's response indicates

42

that "[t]he only psychotherapy the plaintiff attended while working for the defendant, was the mandated psychological evaluation and/or the 'fitness for duty' or the EAP evaluation in which the defendant required the plaintiff to attend." Id. The plaintiff explains that he "will agree to medical authorization document release to the defendant only for the time period from February 2012 thru to [sic] present day, or for a time period of ten years." Id. On the two authorization forms the plaintiff returned to the defendant in response to production request number 13, the plaintiff made handwritten notes and restrictions before signing. See Dkt. No. 94-4.

In a September 6. 2022 email, the defendant indicated that it could agree to the plaintiff's proposed ten-year period and would seek authorization for release of medical records only from February 2012 to the present. Dkt. No. 94-5. The defendant informed the plaintiff that it could not agree to the plaintiff's other terms and that because the plaintiff seeks damages for emotional distress, the defendant is entitled to the plaintiff's medical and treatment records. Id. Defense counsel indicated that she would like to obtain updated authorization forms without the plaintiff's added restrictions. Id. The defendant argues that the plaintiff's complete medical records, including psychotherapy notes, are relevant to evaluate the plaintiff's claim for compensatory damages. Dkt. No. 93 at 2.

The second amended complaint asserts that the plaintiff "suffered lost wages, financial hardships, humiliation, embarrassment, and emotion [sic] stress." Dkt. No. 20 at 5. It also alleges that the alleged incidents have

43

"negatively affected [the plaintiff's] health, life and work." Id. at 7. The second amended complaint indicates that the plaintiff "seek[s] $750,000 for punitive damages." Id. at 5. Yet on the "Authorization for Disclosure of Protected Health Information (Not Including Psychotherapy Notes)" that the plaintiff signed, the plaintiff crossed out all mention of records and reports regarding psychiatric and/or psychological treatment, counseling and evaluations, asserting that these kinds of records were not applicable. Dkt. No. 94-4 at 1–2. Although he did sign the authorization, the plaintiff wrote "not apical [sic]" at the top of the "Authorization for Disclosure of Protected Health Information (Psychotherapy Notes Only)." Id. at 4.

The plaintiff must sign unrestricted release authorization forms for the ten-year period to which the parties have agreed. The records covered by the forms are relevant because the plaintiff has alleged that he suffered emotional distress and a negative effect on his health and life resulting from the incidents described in his second amended complaint. The plaintiff has put his mental and physical health at issue; he cannot do that and then refuse to provide the defendants with records describing his health.[6]

---

[6] The court has issued a protective order. Dkt. No. 63. That order allows parties to produce requested discovery, but designate the documents "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY." The court will enclose with this order a copy of the protective order; if the plaintiff is concerned about releasing confidential medical information, he may review the protective order and ask that any records that comply with the conditions in that order be marked "CONFIDENTIAL" and treated as such.

44

"[T]here is a psychotherapist-patient privilege in federal cases," and privileged information is not discoverable. Doe v. Oberweis Dairy, 456 F.3d 704, 718 (7th Cir. 2006) (citing Jaffee v. Redmond, 518 U.S. 1 (1996)); Fed. R. Civ. P. 26(b)(1). But this privilege is not absolute; "[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." Oberweis Dairy, 456 F.3d at 718 (citations omitted). The plaintiff cannot object to authorizing the release of medical records relevant to claims in the second amended complaint with a vague and unsupported assertion that the records are "not applicable."

In his response to the defendant's motion to compel, the plaintiff summarizes that he "only objects the [sic] releasing of documents of attorney client privilege, the ones he plans on using in presenting his case to the court, and for depositions." Dkt. No. 97 at 12. The court has addressed the attorney-client privilege issue; there is no such privilege in this case. As for the documents the plaintiff plans to use to present his case in court and the ones he plans to use for depositions, those are *exactly* the documents that the rules of discovery require parties to disclose. The defendant is entitled to know about and examine the documents and records the plaintiff plans to use to support his claims against the defendant, so that it can—as it has a right to do—prepare a defense.

In his response to the defendant's email seeking to discuss his discovery responses, the plaintiff stated that "[d]ocuments the plaintiff has in his

45

possession will be made available at the appropriate times." Dkt. No. 94-6 at ¶3. The court has explained that that "appropriate time" is within thirty days of the date the plaintiff received the discovery demands.

The plaintiff *was* entitled to object to period covered by the requested authorizations. Although the production request was limited to "health records relevant to damages or relief sought from Defendant or any physical and/or mental conditions that [the plaintiff has] experienced from the alleged conduct of Defendant's employees," dkt. no. 94-2 at 8, the authorization forms themselves do not reflect this limitation, and they did not reflect the ten-year period to which the parties now have agreed. See Dkt. No. 94-4. The court will require the defendant to provide the plaintiff with forms that reflect the limits of the production request and that are limited to the ten-year period upon which the parties have agreed. The court will grant the defendant's Civil L.R. 7(h) expedited non-dispositive motion to compel the plaintiff's discovery responses and order the plaintiff to submit full and complete responses to the defendant's discovery requests.

The defendant asks the court award its expenses, including attorney's fees, incurred since September 2, 2022, related to the plaintiff's written discovery responses. See Dkt. No. 93 at 3. As the court already has discussed, when it grants a motion to compel, the court *must* award attorneys' fees. The court will allow the defendant to submit a statement of proposed fees and will give the plaintiff the opportunity to respond.

46

III.     **Defendant's Rule 7(h) Expedited Motion to Compel Plaintiff's Deposition Appearance (Dkt. No. 98)**

The defendant alleges that on September 28, 2022, the plaintiff failed to appear for his properly noticed deposition; the defendant asks the court to compel the plaintiff to appear for deposition, award the defendant the costs and fees incurred in bringing this motion and extend the discovery and dispositive motion deadlines to permit the defendant to obtain outstanding discovery from the plaintiff. Dkt. No. 98 at 1.

The defendant called the plaintiff on September 6, 2022 to discuss the plaintiff's availability for deposition, but was unable to reach the plaintiff. Id. (citing Dkt. No. 94 at ¶4). The defendant sent a follow-up email to the plaintiff that same day. Id. (citing Dkt. Nos. 94 at ¶5; 94-5). The email informed the plaintiff that the defendant wished to depose the plaintiff and inquired about the plaintiff's availability for three dates in late September ("September 26, 27 or 28"), as well as addressing additional discovery matters. Dkt. No. 94-5. The next day, the plaintiff responded to the defendant via email. Dkt. No. 94-6 at 1. The plaintiff mentioned the other discovery issues but did not indicate his availability for deposition. Id. at ¶3. Although the court can't tell for sure, this portion of the plaintiff's response appears to be directed to the defendant's request to depose the plaintiff: "The plaintiff has 30 days to respond to your requests made in your email. When he makes a decision according to the Federal Rules of Civil Procedure, he will let both of you, Kayla McCann and Jesse Dill know of his decision." Id. at ¶4. The defendant says this email

47

demonstrates that the plaintiff "would not timely cooperate to schedule his deposition with" the defendant. Dkt. No. 98 at 1.

On September 9, 2022, the defendant served the plaintiff with a deposition notice directing the plaintiff to appear for a deposition on September 28. Dkt. No. 99-1. On September 20, the defendant served the plaintiff with an amended deposition notice adding the specific address at which the plaintiff should appear for the deposition. Dkt. No. 99-2. The plaintiff did not appear on September 28. Dkt. No. 99 at ¶4. The defendant states that approximately fifteen minutes after the deposition was scheduled to begin, the defendant called the plaintiff. Id. at ¶5. The defendant says that during this phone conversation, the plaintiff "confirmed he would not appear for his deposition as noticed and took the position that he had 30 days to decide whether he would appear for a deposition." Id.; Dkt. No. 98 at 2.

The defendant moves to compel the plaintiff's appearance for deposition under Rule 37(a)(3). Dkt. No. 98 at 1. To accommodate the deposition, the defendant asks the court to extend the September 30, 2022 discovery deadline (now long past, due to the time it has taken the court to address these motions) by at least sixty days under Rule 6(b)(1), which "permits the Court to extend a deadline for good cause when the request is made prior to the expiration of the deadlines at issue." Id. at 2–3. The defendant argues that good cause exists because the plaintiff refused to appear for his scheduled deposition and has failed to fully and meaningfully participate in discovery. Id. at 2. The defendant also seeks attorney's fees and costs incurred since September 28, 2022 related

48

to the plaintiff's failure to appear at his deposition and an order that the plaintiff's failure to appear for and meaningfully participate in the next scheduled deposition will result in the court's dismissal of this lawsuit. <u>Id.</u> at 2–3.

The plaintiff responded to the defendant's motion. Dkt. No. 101. Again, the response is procedurally deficient. The defendant filed its motion to compel as an expedited, non-dispositive motion under Civil Local Rule 7(h). Dkt. No. 98. The plaintiff filed his response a day late and it was over the allowed page limit. For the same reasons the court considered the merits of the plaintiff's late and overlong opposition to the defendant's discovery motion, however, the court will consider the merits of the plaintiff's opposition to this motion.

The plaintiff asserts that he had thirty days to respond to the defendant's deposition notice: "In essence, the plaintiff was not required to give McCann a reason to why he was not at the deposition; he had 30 to do so or to appear." Dkt. No. 101 at 8. The plaintiff argues that Rules 34 and 30(b)(2) apply because the defendant required him to bring documents to the deposition:

> [T]he time limits apply when a party requires a deponent to bring documents to the deposition, which are ruled by Rule 34's limitations. In addition; Rule 30(b)(2) states if you wish to compel the party to bring documents, the deposition cannot be notice to occur for at least 30 days. The documents in possession of the plaintiff which the defendant required him to bring to the deposition; was in itself, him, the documents were stored in his head. For this reason, Rule 30(b)(2) rule applies to the plaintiff.

<u>Id.</u> at 7–8.

Neither the notice of deposition nor the amended notice of deposition required the plaintiff to bring documents to the deposition and the defendant

49

did not serve the plaintiff with a subpoena *duces tecum*. Dkt. Nos. 99-1, 99-2. The plaintiff asserts, however, that the "documents" in his possession were "him"—that the "documents were stored in his head." Dkt. No. 101 at 8. This argument has no merit; a person's testimony is not a "virtual document" and a party cannot evade a lawful deposition by claiming that it is. The plaintiff also misapprehends Rule 30(b)(2); that rule does not mandate that a deposition cannot take place for thirty days if a party requires a deposed individual to produce documents at the deposition. Rule 30(b)(2) states that if a party serves a subpoena *duces tecum* on the deponent requesting production of materials at the deposition, the "notice to a party deponent *may* be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition." Fed. R. Civ. P. 30(b)(2) (emphasis added). The defendants did not serve the plaintiff with a subpoena *duces tecum*, or a request under either Rule 30(b)(2) or Rule 34.

The plaintiff also cites Rule 45(c)(3)(i) for the principle that "there is a specific timeframe limitation for deposition testimony" and that "the time to comply must be reasonable." Dkt. No. 101 at 7. The plaintiff argues that because the court had not yet ruled on the plaintiff's deposition motions, it was unreasonable for the defendant to depose him. Id. The plaintiff is a party to this case and the defendant provided written notice of the deposition to the plaintiff as required by Rule 30(b)(1). See Dkt. Nos. 99-1, 99-2. Rule 30(a)(1) provides that "[t]he deponent's attendance *may* be compelled by subpoena under Rule 45," but a subpoena is not required. Fed. R. Civ. P. 30(a)(1)

50

(emphasis added). Rule 45 governs subpoenas, but the defendant did not

subpoena the plaintiff for deposition. Because there is no Rule 45(c)(3), the

court presumes that the plaintiff intended to cite Rule 45(d)(3)(A)(i), which

includes the language the plaintiff recounts. But this rule involves quashing or

modifying a subpoena and requires a court to do so when, on timely motion,

the subpoena "fails to allow a reasonable time to comply." Fed. R. Civ. P.

45(d)(3)(A)(i). Again, the defendant did not serve the plaintiff with a subpoena

and even if it had, the plaintiff did not file a motion to quash or modify.

Finally, the applicable rule for depositions by oral examination required

the defendant to "give reasonable written notice." Fed. R. Civ. P. 30(b)(1). It

does not reference or provide for a thirty-day timeframe. The defendant sent

the plaintiff a notice of deposition on September 9, 2022 for a September 28,

2022 deposition—just shy of three weeks ahead of the scheduled deposition.

The defendant contacted the plaintiff earlier than that—on September 6,

2022—to inquire about his availability and the plaintiff refused to cooperate.

The federal rules do not define "reasonable" notice and "much will depend on

the other circumstances of the particular case." 8A Wright & Miller, Federal

Practice & Procedure: Civil §2111 (2022). Nineteen days' notice was not

unreasonable, particularly when the plaintiff has given no explanation for why

he could not appear, or even said that he could not appear.

The plaintiff raises additional issues with the defendant's notice of

deposition, including his assertions that the defendant failed to notify the

plaintiff as to the reason the defendant wanted to depose him and did not

51

provide him with the questions the defendant would ask during the deposition. Dkt. No. 101 at 8. The plaintiff also argues that the defendant "never supplied or offered to the plaintiff monies for time and travel" or a copy of Federal Rules of Civil Procedure 45(c), (d), (e) and (g). Dkt. No. 101 at 7. The plaintiff asserts that these are violations of the Federal Rules of Civil Procedure. Id. They are not. Rule 30 does not include these requirements; it states only that "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party. The notice must state the time and place of the deposition and, if known, the deponent's name and address." Fed. R. Civ. P. 30(b)(1). Both the notice of deposition and amended notice contained the deponent's name and address and the time of the deposition. Dkt. Nos. 99-1 and 99-2. The notice of deposition indicated that the deposition would "be conducted remotely with Plaintiff to appear in person at a location in Green Bay, Wisconsin with a specific address to be provided at a later date." Dkt. No. 99-1. The amended notice provided the specific place of deposition: Bay Reporting, 2301 Riverside Dr., Green Bay, Wisconsin 543021. Dkt. No. 99-2. The notices met the general notice requirements of Rule 30.

Rule 30 states that "[t]he party who notices the deposition must state in the notice the method for recording the testimony," which may include recording by audio or "stenographic means." Fed. R. Civ. P. 30(b)(3)(A). Both the notice of deposition and amended notice stated that the method of recording the plaintiff's testimony would be "either by sound or stenographic means." Dkt. Nos. 99-1 and 99-2. Finally, as the court previously explained,

52

Rule 30(b)(2) and its additional notice requirements do not apply because the defendant did not serve a subpoena *duces tecum* requiring the plaintiff to provide materials at his deposition. The defendant properly noticed the deposition.

The defendant was not required to give the plaintiff a reason for deposing him. The plaintiff filed this lawsuit. He has made serious allegations that the defendant violated his rights under federal law. The defendant is entitled to defend itself and it is entitled to depose the plaintiff. Nor was the defendant required to give the plaintiff a list of the questions defense counsel planned to ask at the deposition. During a deposition, a deponent may object on the record to specific questions, although the deponent still must answer the objected-to question; after the deposition is over, the parties may ask the court to rule on the objections recorded during the deposition. Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony taken is subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner."). But a deponent does not have a right to know beforehand the questions he will be asked.

The plaintiff also argues that the defendant "never sought permission by the court to deposition [sic] the plaintiff after the elapsed July 15, 2022 deadline for depositions, as required by the 6-27-22 ruling and agreed by the

53

defendant." Dkt. No. 101 at 8–9. See also id. at 12 (contending the defendant "violated the 06-27-2022 ruling in deposition procedure, in which they agreed to"). This allegation appears to refer to the court's June 27, 2022 order granting the defendant's request for a protective order and requiring *the plaintiff* to submit a list of the people/organizations he wished to subpoena by July 15, 2022. Dkt. No. 78. The plaintiff was not the one who moved for the protective order (in fact, he opposed it); the court's June 27 order granted the *defendant's* requested relief and the July 15, 2022 deadline applied *only to the plaintiff*.

Finally, the plaintiff repeatedly refers to "privileged information" and asserts that he should not be compelled to expose this information in a deposition. Dkt. No. 101 at 4, 6, 9. The plaintiff does not clarify which privilege he claims, but he mentions "attorney client privileged information" at one point. Id. at 4. The court has explained that without an attorney, the plaintiff cannot claim attorney-client privilege and that "pro se privilege" does not exist.

The plaintiff is under the misimpression that he could simply choose not to attend his deposition. See Dkt. No. 101 at 6 ("[T]his is one reason why the plaintiff chose not to be deposed at this time."); and id. at 8 ("His right to make a decision to attend or not, was never granted, because how [the defendant's attorney] scheduled it."). He is incorrect. "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). All the issues the plaintiff raises in his response should have been raised between the time he learned that the

54

defendant sought to depose him and the scheduled deposition date. The plaintiff indicates that he "never petitioned the court" because "[t]he defendant's objective was so clear to the plaintiff" and the defendant's "subpoena" violated the Federal Rules of Civil Procedure's 30-day notice. Dkt. No. 101 at 8, 12. If the plaintiff had a valid objection to the defendant's notice of deposition, the appropriate mechanism for addressing that objection would have been to file with the court a motion for a protective order under Rule 26(c). The court will grant the defendant's Civil L.R. 7(h) expedited, non-dispositive motion to compel the plaintiff's deposition appearance. The court will extend the discovery and dispositive motion deadlines and will order the plaintiff to cooperate with defense counsel in rescheduling his deposition.

Again, the defendant asks for an award of expenses, including attorney's fees, incurred since September 28, 2022 related to the plaintiff's failure to appear at his scheduled deposition. Again, because the court has granted a motion to compel, it must award fees under Rule 37. The court will allow the defendant to submit a statement of proposed fees and will give the plaintiff an opportunity to respond.

## IV. Civility and Professionalism

Going forward, the court will seriously consider imposing sanctions on the plaintiff for further unsubstantiated and hostile attacks by him on the defendant's legal counsel. At the June 27, 2022 hearing, the court advised the plaintiff that it was unacceptable for the plaintiff to assume without any proof that the defendant's attorneys were violating the law and their professional

55

oaths. Dkt. No. 75. The court advised the plaintiff that the tone he had taken in

communications with defense counsel was not appropriate in federal court. The

defendant has provided email exchanges demonstrating that despite that

warning, the plaintiff remains unable to interact with defense counsel in a civil

and professional manner. See Dkt. No. 93 at 2–3 (citing Dkt. No. 94-6 at 1).

The defendant indicates that the plaintiff continues to threaten and

"improperly berate and defame" defense counsel, as evidenced by the plaintiff's

September 7, 2022 email:

> The plaintiff has put up with your insults, your threats, your scheme
> to obtain a shady verbal agreement, and your constant delay tactics.
> In addition he has also been a victim of you and your firms [sic]
> committed criminal acts, and acts of obstruction of justice on
> numerous accounts. . . .
>
> . . . [I]f you are able to get this case dismissed, it could mean Yahuah
> has made judgment on your client. You need to warn him in what I
> am saying, this is my warning to him. FYI, in judgement [sic] day,
> his blood will not be on my hands.

Id. at 2 (quoting Dkt. No. 94-6 at ¶¶5–6). See also id. at 3 (asserting that

"Plaintiff's conduct plainly contravenes the Court's directives to Plaintiff to

cease such behavior at the June 27, 2022 hearing").

　　The plaintiff repeatedly makes unsupported, accusatory and personal

allegations against the defendant's attorneys, such as the following in his

response to the defendant's motion to compel the plaintiff's deposition

appearance:

- "This is not an issue, its [sic] just a point on the behavior traits of
  Kayla McCann and how she conducts business." Dkt. No. 101 at 2.
- "[N]ot only is Sargento withholding documents intentionally, they
  are doing so with the advice of their legal counsel of Keith Kopplin,

56

Jesse Dill and Kayla McCann. The sole purpose of the deposition of the plaintiff was to discover the documents he has so, they could supplement them as a cover up of the perjury which is going on!" <u>Id.</u> at 3.

- "[T]he defendant will go to any length to win a case for their client, even if it means providing information to their client to aid in the destruction of documents and the tampering of witnesses." <u>Id.</u> at 5.
- "The courts [sic] reluctance to rule on the plaintiffs [sic] motions in a timely matter [sic] has put the plaintiff in a precarious position, just as the criminal activities of Sargento's legal team as discussed earlier in the discovery process!" <u>Id.</u> at 7.
- "This is just another shady act of Sargento's legal team." <u>Id.</u> at 8.
- "Manipulations and criminal activities by Sargento's legal team are regular occurrences in this litigation." <u>Id.</u> at 9.
- "History with McCann proves she deliberately distorts the truth, or in simpler terms she just lies, to influence the court." <u>Id.</u> at 12.

The plaintiff made similar statements in his response to the defendant's motion to compel discovery responses:

- Reference to "a deliberate fabricated a [sic] lie, with the aid of Sargento legal team." Dkt. No. 97 at 3.
- "Distorting facts and lying is constant behavior trait of [McCann]." <u>Id.</u> at 4.
- "There reason [sic] why the plaintiff requested all request's [sic] to be initiated thru [sic] email; is due to McCann's attitude and her demeanor on how she conducts herself in this litigation case. The history of constant lying and distorting facts requires the plaintiff to document all communications with her." <u>Id.</u> at 5.
- Speculating that a missed phone call from the defendant's attorney would have involved "trickery and debauchery." <u>Id.</u>
- "These are just a couple of the uncounted harassment stuns [sic] perpetuated by Sargento's legal team." <u>Id.</u> at 6.
- Stating that the plaintiff mentioned property damages and harassments to Jesse Dill during a phone call in 2021 and asserting the following: "So who ever was responsible for these malicious actions; either Sargento, or his law firm, these acts should have ceased immediately! If Dill was acting in good faith, he would have either stopped these acts or advised his client to knock it off!" <u>Id.</u>
- "[McCann's] professionalism of how she does business is ill mannered and insulting. After this meeting; the plaintiff realized that in order to avoid a 'he said, she said accusations', [sic] it would be more safe and beneficial to have everything in writing. This is why

we are communicating via email. She can't be trusted to tell the truth!" <u>Id.</u> at 9.

- "[McCann] constantly distorts facts of this case and events purposefully." <u>Id.</u>
- "She's is [sic] playing everyone in this judicial proceeding, it should be frowned upon! McCann does not act in good faith and cannot be trusted!" <u>Id.</u> at 10.
- "The oath of office taken to uphold justice by attorney's, are [sic] useless if attorneys refuse to abide by it." <u>Id.</u> at 11.
- "The plaintiff has acted in good faith towards the defendant even after he dealt with an intentional delay strategy for filing required court documents, insults and adverted [sic] attempts to entrap him in a verbal agreement by attorney Kayla McCann." <u>Id.</u> at 12.
- "Sargento lawyers Jesse Dill, Kayla McCann and Keith Kopplin have not been acting according to the oath they took. These attorneys cannot be trusted to act in good faith." <u>Id.</u> at 13.
- Referring to alleged property damage, threats to family and friends, and "continuing harassment schemes perpetrated by Sargento Foods or the lawyers at Ogletree Deakins Nash Smoat and Stewart P.C." <u>Id.</u>

Such antagonistic language and behavior are unacceptable in federal court—they are unacceptable in any court. The plaintiff has presented no evidence to support his accusations that the defendant's attorneys are engaging in unethical and illegal conduct. Although the court understands the plaintiff's anger and frustration with his former employer and with the legal process, the plaintiff is inappropriately channeling this frustration into unsupported attacks upon the character, professionalism and integrity of defense counsel. The attorneys are not the ones who fired or allegedly discriminated against the plaintiff; they are doing their jobs by competently and professionally representing their client.

This is the court's second warning to the plaintiff. If the plaintiff cannot control himself and interact civilly and professionally with defense counsel,

58

defense counsel will be within their rights to ask the court for sanctions against the plaintiff. The court itself has the authority to sanction the plaintiff even if defense counsel do not ask; the court may consider appropriate sanctions up to and including dismissal of this case. Federal district courts have an inherent "authority 'to fashion an appropriate sanction for conduct which abuses the judicial process,' including the 'particularly severe sanction' of dismissal." Abner v. Scott Mem'l Hosp., 634 F.3d 962, 964 (7th Cir. 2011) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991)). See also Mohammed v. Anderson, 833 F. App'x 651, 653 (7th Cir. 2020) (affirming the district court's dismissal of a "case with prejudice pursuant to its inherent sanctioning authority because of [the plaintiff's] persistent misconduct toward the defendants and their counsel"). A party's "pro se status [does] not insulate him from sanctions." Id. at 655 (citing Collins v. Illinois, 554 F.3d 693, 697 (7th Cir. 2009)).

To be clear: the court has the authority to dismiss this case, or to impose financial or other sanctions on the plaintiff, if he does not stop his attacks on defense counsel. The court does not want to be forced to sanction the plaintiff, but it will do so if the plaintiff does not control his conduct.

## V.      Conclusion

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 83.

The court **ORDERS** that by the end of the day on **April 14, 2023,** the defendant may file a statement of expenses incurred in opposing the plaintiff's motion to compel. If the plaintiff wishes to object to any of the listed expenses,

59

the plaintiff must do so in time for the court to receive his objection by **April 21, 2023**.

The court **GRANTS** the defendant's Civil L.R. 7(h) expedited non-dispositive motion to compel discovery responses. Dkt. No. 93.

The court **ORDERS** that the plaintiff must serve on counsel for the defendant full and complete responses to the defendant's discovery requests in time for defense counsel to receive them by the end of the day on **April 28, 2023**.

The court **ORDERS** that by the end of the day on **April 14, 2023**, the defendant must provide the plaintiff with updated medical record release forms reflecting the limitations in the request for production and the agreed upon ten-year time frame.

The court **ORDERS** that by the end of the day on **April 21, 2023**, plaintiff must sign and return to defense counsel the medical record release forms; the plaintiff must not add additional restrictions to the release forms.

The court **ORDERS** that by the end of the day on **April 28, 2023**, the defendant may file a statement of expenses incurred in filing its motion to compel discovery responses. If the plaintiff wishes to object to any of the listed expenses, the plaintiff must do so in time for the court to receive the objection by the end of the day on **May 5, 2023**.

The court **GRANTS** the defendant's Civil L.R. 7(h) expedited non-dispositive motion to compel the plaintiff's deposition appearance. Dkt. No. 98.

The court **ORDERS** that the plaintiff must appear for a deposition via

videoconference before the end of the day on **May 26, 2023**, unless the parties agree to a later date. The court **ORDERS** that the plaintiff must cooperate with defense counsel to reschedule an appropriate date and time for the deposition.

The court **ORDERS** that by the end of the day on **June 9, 2023**, the defendant may file a statement of expenses incurred in filing its motion to compel the plaintiff's deposition. If the plaintiff wishes to object to any of the listed expenses, he must file his objection in time for the court to receive it by the end of the day on **June 16, 2023**.

The court **GRANTS** the defendant's request to extend the discovery and dispositive motion deadlines. Dkt. No. 98 at 3.

The court **ORDERS** that the deadline for completing discovery is **EXTENDED** to the end of the day on **July 28, 2023**. The court **ORDERS** that the deadline for filing dispositive motions is **EXTENDED** to the end of the day on **September 1, 2023**.

Dated in Milwaukee, Wisconsin this 27th day of March, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**

61