UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY RYAN GOVE,

                Plaintiff,

    v.                                Case No. 18-cv-1335-pp

SARGENTO FOODS, INC.,

                Defendant.

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO DEPOSITION WITNESSES PREVIOUSLY QUASHED DUE TO INVALID PROCEDURE RULING (DKT. NO. 80), GRANTING PLAINTIFF'S MOTION TO SUSPEND DEADLINE OF PEOPLE I PLAN ON DEPOSITION UNTIL REQUESTED INFORMATION FROM SARGENTO FOODS INC HAS BEEN RECEIVED AND HAS BEEN REVIEWED (DKT. NO. 81), GRANTING PLAINTIFF'S MOTION TO COMPEL DEPOSITION CURRENT OR PAST EMPLOYEE'S OF SARGENTO (DKT. NO. 82), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO PERMIT SARGENTO FOODS INC MANAGEMENT TO BE DEPOSITION OF WRITTEN QUESTIONS (DKT. NO. 86), DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL DOCUMENTS 81, 82, 83, 86 TO BE RULED ON (DKT. NO. 95), DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL DOCUMENT 80 TO BE RULED ON (DKT. NO. 96), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION DEPOSITION FORMER SUPERVISOR ERIC DRIESSEN (DKT. NO. 100), DENYING PLAINTIFF'S MOTION TO PERMIT DEPOSITION OF DEBRA SEIDL (DKT. NO. 105) AND DENYING PLAINTIFF'S MOTION FOR AMENDMENT TO BUECHELS DEPOSITION REQUEST, TO ADD KELLY BUECHEL FOR SUBPOENA FOR DEPOSITION (DKT. NO. 108)**

The plaintiff, who is representing himself, filed this employment discrimination suit alleging that the defendant had discriminated against him and subjected him to harassment; the plaintiff also alleged unlawful termination in retaliation for his requests for disciplinary action. See Dkt. No. 20. Without notifying either the defendant or the court, the plaintiff sent

1

subpoenas to third parties, demanding their appearances for scheduled depositions. At a hearing in June 2022, the plaintiff advised the court that although in his Rule 26(f) report he had identified over 140 individuals/entities whom he wanted to depose or subpoena, he had sent subpoenas only to third parties Taylor Chevalier, Jane Gilles-Copps, Jeffrey Buechel and Barbara Finnel.

In mid-June of 2022, third party Kelly Buechel filed a motion to quash the subpoena the plaintiff had sent to her husband, Jeffrey Buechel. Dkt. No. 65. The subpoena indicated that the written deposition questions were for "Jeffery [sic] Buechel/spouse." Dkt. No. 65-1 at 2. The court granted Buechel's motion and quashed the Buechel subpoena the next day. Dkt. No. 66. A couple days later, the defendant filed a motion to quash subpoenas that the plaintiff sent to various other third parties[1] and a motion for a protective order requiring the plaintiff to seek the court's approval before issuing any third-party subpoenas. Dkt. No. 67. The same day, third party Taylor Chevalier filed a motion to quash the subpoena the plaintiff had sent to her. Dkt. No. 70. Four days later, the plaintiff filed three motions asking the court to compel the various individuals or entities upon whom he'd served subpoenas to appear and be deposed. Dkt. Nos. 72–74.

---

[1] This motion involved, but was not limited to, subpoenas the plaintiff sent to Experience Fitness, Inc., Allianz Global, Ogletree Deakins, Jane Gilles-Copps, Debra Seidel, Barbara Finnel and Taylor Chevalier. Dkt. No. 67 at 1.

On June 27, 2022, the court held a hearing on the outstanding motions (Dkt. Nos. 75, 78); the court:

- granted the defendant's motion to quash subpoenas (Dkt. No. 67) and quashed any third-party subpoenas the plaintiff had served prior to June 27, 2022;
- granted Taylor Chevalier's motion to quash the subpoena requiring her to testify (Dkt. No. 70);
- denied the plaintiff's motion for subpoenas served to key witnesses to be compelled (Dkt. No. 72);
- denied the plaintiff's motion for the Buechel quashed subpoena to be reversed and compelled (Dkt. No. 73); and
- denied the plaintiff's motion to quash and allow all notarized subpoenas to be compelled and overruled the plaintiff's objection to the defendant's requested protective orders (Dkt. No. 74).

Dkt. No. 78 at 2–3.

Earlier on the same day that the court held that hearing, the plaintiff had refiled his Motion to Quash and Allow All Notarized Subpoenas to be Compelled and Objection to Requested Protective Orders (Dkt. No. 76) and his Motion for Buechel Quashed Subpoena to be Reversed and Compelled (Dkt. No. 77). The day after the hearing, the court issued an order recounting that these motions were identical to those the court had denied at the June 27 hearing and denying the refiled motions. Dkt. No. 79.

In granting the defendant's request for a protective order under Federal Rule of Civil Procedure 26(c)(1)(C), the court ordered that by the end of the day on July 15, 2022, the plaintiff must file with the court a document that:

(a) list[ed] the name of each individual or organization whom he wishes to subpoena, (b) explain[ed] with regard to each individual or organization whether he wish[ed] to subpoena that individual or organization for documents or for oral examination (deposition), (c) explain[ed] for each individual or organization the information he wishe[d] to obtain and (d) explain[ed] for each individual or

3

organization how that information relate[ed] to the allegations in the second amended complaint (including why he believe[d] the information [was] related to the defendant's treatment of the plaintiff during his employment with the defendant).

Dkt. No. 78 at 3.

Over the next eight months, the plaintiff filed motions relating to depositions. Between July 11 and 14, 2022, the plaintiff filed a Motion for Order to Depose Witnesses Previously Quashed (Dkt. No. 80), a Motion to Suspend Deadline (Dkt. No. 81) and a Motion to Compel Depositions (Dkt. No. 82). On August 10, 2022, the plaintiff filed a Motion for Order to Permit Deposition by Written Questions. Dkt. No. 86. On October 6, 2022, he filed a Motion to Take Deposition from Former Supervisor Eric Driessen. Dkt. No. 100. On January 6, 2023, the plaintiff filed a Motion to Permit Deposition of Debra Seidl. Dkt. No. 105. On February 28, 2023, the plaintiff filed a Motion for Amendment to Buechels Deposition Request to Add Kelly Buechel for Subpoena for Deposition. Dkt. No. 108. This order addresses these motions.[2]

## I.   Motion for Order to Depose Witnesses Previously Quashed (Dkt. No. 80)

The plaintiff again asks to depose Taylor Chevalier, Jane Gilles-Copps, Jeffrey Buechel and Barbara Finnel (subpoenas to whom the court already has quashed), as well as to depose someone named Susan Osmond. Dkt. No. 80 at

---

[2] The court has addressed the plaintiff's Response to Defendant and Motion to Compel Requested Information (Dkt. No. 83), the defendant's Rule 7(h) motion to compel plaintiff's discovery responses (Dkt. No. 93) and the defendant's Rule 7(h) motion to compel plaintiff's deposition appearance (Dkt. No. 98) in a separate order.

4

2. The plaintiff acknowledges that at the June 27, 2022 hearing, the court quashed the subpoenas he had sent to Taylor Chevalier, Jane Gilles-Copps, Jeffrey Buechel and Barbara Finnel. Dkt. No. 80 at 1. But the plaintiff states that he "will now reveal these facts, to make [his] case why these people need to be" deposed. Id.

The motion reiterates what the plaintiff has alleged in other filings: that the defendant intended to harass him or discriminate against him by using young women to "disprove [his] faith and its belief's of absence of sex before marriage as false." Id. at 2. The plaintiff asserts that he swam at a fitness club in the mornings before work, that the defendant was looking for people to entice him at work, that Taylor Chevalier (allegedly a friend of the niece of the plaintiff's supervisor) met him at the fitness club and talked to him and that the Buechels were the ones who notified the defendant of the plaintiff's swim schedule. Id. at 2-5. He says that Barbara Finnel witnessed him being harassed at his five-year banquet. Id. at 6. He asserts that Gilles-Copps "was planning on being involved in harassment stunts" for the defendant, and that Osmond "was involved" in harassment stunts for the defendant. Id. at 7.

At the end of the motion, the plaintiff argues that his allegations should be made available to the jury and that the defendant harassed and discriminated against him, both during his employment and after, in an effort to stop the plaintiff from filing this lawsuit or to make him drop it. Id. at 8. The plaintiff contends that "[t]hese acts of enticements perpetuated by [the

5

defendant] needs [sic] to be explored" and that regardless of their purpose, "all of them contained acts of sexual, religious and age discriminations." Id.

The defendant responds that the court already has addressed this issue and that the information the plaintiff seeks from these individuals is irrelevant and disproportional to the needs of the case. Dkt. No. 84 at 1. The defendant asserts that the plaintiff still "fails to establish a legitimate reason to depose these individuals and therefore, the subpoenas should remain quashed." Id. at 3.

A.    Plaintiff's Renewed Request to Depose Taylor Chevalier, Jane Gilles-Copps, Jeffrey Buechel and Barbara Finnel

The court treats the plaintiff's request to depose the individuals the subpoenas to whom the court previously quashed (Taylor Chevalier, Jane Gilles-Copps, Jeffrey Buechel and Barbara Finnel) as a motion to reconsider. Motions to reconsider are "not a vehicle for rearguing previously rejected motions," Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000), nor "a vehicle for a party to undo its own procedural failures . . ." Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000). A party's generic request asking a court to reconsider the merits of an earlier decision falls "under either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure." United States v. Deutsch, 981 F.2d 299, 200 (7th Cir. 1992).

Rule 59(e) allows a party to ask the court to alter or amend a judgment; the party seeking reconsideration must file the motion no later than twenty-eight days after the judgment is entered. The court did not enter judgment at the June 27, 2022 hearing; it has not entered judgment in the case at all. That

6

means the court must treat the plaintiff's motion as a motion for relief from the court's June 27 and 28, 2022 orders under Fed. R. Civ. P. 60(b).

Rule 60(b) allows a court to relieve a party from a final order for one of six reasons:

- mistake, inadvertence, surprise or excusable neglect;
- newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
- fraud, misrepresentation or misconduct by an opposing party;
- the judgment from which the party seeks relief is void;
- the judgment from which the party seeks relief has been satisfied or otherwise discharged; or
- "any other reason that justifies relief."

The first five reasons don't apply here. The court did not mistakenly quash the subpoenas. The plaintiff has not cited any newly discovered evidence that he could not have presented before the court quashed the subpoenas. The court's ruling was not the result of fraud or misrepresentation. No judgment has been entered. That leaves "any other reason that justifies relief."

Rule 60(b)(6) "catchall" relief is available "only when Rules 60(b)(1) through (b)(5) are inapplicable." Kemp v. United States, ___ U.S. ___, 135 S. Ct. 1856, 1861 (2022). "[R]elief under Rule 60(b)(6) is available only in "extraordinary circumstances."" Buck v. Davis, 580 U.S. 100, 123 (2017) (quoting Gonzalez v. Crosby, 545 U.S. 524, 535 ((2005)). Courts may consider a wide range of factors in deciding whether "extraordinary circumstances" exist, including the "risk of injustice to the parties." Id. (quoting Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864 (1988)).

7

The plaintiff's motion does not identify anything that constitutes the "extraordinary circumstances" that would justify the court reconsidering its ruling quashing the subpoenas. The court understood at the time of the June 27 and 28, 2022 rulings—and it understands now—that the plaintiff believes that the defendant's harassment and discrimination against him was so pervasive that the defendant had agents go outside the workplace to place temptation in the plaintiff's path in all the aspects of his life. But Title VII prevents employers from discriminating in *employment*. It prohibits *workplace* harassment. It prevents discriminatory *employment* actions such as discrimination in hiring, promotion and firing. The plaintiff's belief that people who were not employed by the defendant somehow were a part of, or were witnesses to, discrimination against and harassment of the plaintiff are too attenuated and remote from the second amended complaint's allegations of *employment* discrimination and harassment. The second amended complaint does not mention the names of Taylor Chevalier, Jane Gilles-Copps and Jeffrey Buechel; it does not allege the actions the motion accuses them of committing on the defendant's behalf (or allege any events that occurred after the plaintiff's employment with the defendant ended). The plaintiff has not demonstrated the extraordinary circumstances necessary to warrant the court reconsidering its order quashing the subpoenas to Chevalier, Gilles-Copps and Buechel. The court will deny the plaintiff's motion as to these individuals.

The second amended complaint *does* name Barbara Finnel. It alleges that the defendant subjected the plaintiff to harassment, retaliation and

discrimination at the [a]nniversary dinner banquet event" on February 1, 2018, and asserts that the plaintiff's date to that event, Barbara Finnel, was a witness. Dkt. No. 20 at 10. The plaintiff argues in the instant motion that "Finnel was a witness to the events, and to my reactions and comments I made regarding in what transpired. She is a witness to these deliberate harassments [the defendant] committed to shame and mock me." Dkt. No. 80 at 6. The information the plaintiff seeks to elicit from Barbara Finnel is relevant to the allegations in the second amended complaint.

But the plaintiff also appears to allege in the instant motion that Barbara Finnel was involved in the defendant's alleged plans to use young people to entice the plaintiff:

> Barbara Finnel niece [sic] and her girlfriends were over for a July 4, for a [sic] gathering at her sister's house in 2019. This was a continuation of the stunt the pastor at Cross Walk Church of Appleton pulled. Its purpose of us stopping there meant was [sic] as a harassment stunt to dissuade the litigation from continuing?

Dkt. No. 80 at 6–7. The court believes the "church stunt" the plaintiff references is an incident the plaintiff has described in previous filings. See, e.g., Dkt. No. 74 at 4 (alleging that a pastor used a ten- to twelve-year-old girl to entice the plaintiff). These allegations were not included in the second amended complaint and are too attenuated from the plaintiff's claims of *employment* discrimination to be relevant or proportional to the needs of the case.

The court will deny the plaintiff's motion to depose Taylor Chevalier, Jane Gilles-Copps and Jeffrey Buechel, the subpoenas to whom the court previously

9

quashed. The court will grant the plaintiff's request to depose Barbara Finnel *only about what she observed and heard when she attended the February 1, 2018 anniversary dinner/banquet.* He may *not* question Barbara Finnel about other events.

B.    <u>The Plaintiff's New Request to Depose Susan Osmond</u>

The plaintiff asks to depose Susan Osmond. Dkt. No. 80 at 2. The second amended complaint does not mention Susan Osmond, nor does it refer to or describe any of the events involving Susan Osmond that the plaintiff raises in the instant motion. The plaintiff believes that Susan Osmond is another player in the "harassment, discrimination/enticement stunts" allegedly orchestrated by the defendant. <u>Id.</u> at 7. The plaintiff states that Susan Osmond used her granddaughter in a "stunt at the Christmas dinner in 2017"[3] and alleges that "Susan Osmond carried out numerous harassment/age, religious discrimination stunts for Sargento legal team from 2017 thru [sic] 2019." <u>Id.</u> Like Taylor Chevalier, Jane Gilles-Copps and Jeffrey Buechel, Susan Osmond is too attenuated from the plaintiff's *employment* discrimination claims against the plaintiff. The court will deny the plaintiff's request to depose Susan Osmond.

C.    <u>Conclusion</u>

The court will deny the plaintiff's Motion for Order to Depose Witnesses Previously Quashed as to Taylor Chevalier, Jane Gilles-Copps and Jeffrey

---

[3] The second amended complaint does not describe any 2017 Christmas dinner event.

Buechel. Dkt. The court will deny the plaintiff's new request to depose Susan Osmond. The court will grant the plaintiff's motion to depose Barbara Finnel, but *only to the extent that the deposition questions seek information about what Finnel observed and heard at the February 1, 2018 anniversary dinner banquet event*.

## II. Motion to Suspend Deadline of People I Plan on Deposition Until Requested Information From Sargento Foods Inc Has Been Received and Has Been Reviewed (Dkt. No. 81)

As noted above, at the June 27, 2022 hearing, the court set a deadline of July 15, 2022 by which the plaintiff must provide the court with a list of the people he wanted to subpoena and to provide the court with information about each of those people. On July 11, 2022—four days before the July 15, 2022 deadline—the court received from the plaintiff Dkt. No. 81, titled "Motion to Suspend Deadline of People I Plan on Deposition Until Requested Information From Sargento Foods Inc Has Been Received and Has Been Reviewed." The motion explained that it was taking the plaintiff more time than he had expected to make the list of people he wanted to subpoena, and he asked the court to "suspend the deadline of July 15, 2022; for participants I need to subpoena or deposition, until the information I requested from Sargento Food is provided." Dkt. No. 81. The plaintiff also objected to being subject to any deadline by which to name individuals or entities that he wanted to subpoena or depose, arguing that he had until the discovery deadline on "September 30, 2022 to discover information related to this litigation, and will be greatly

11

restricted by deadline to name newly discovered people to be subpoenaed or" deposed. Id.

The court did not rule on that motion within the next four days (the court was presiding over a civil rights trial the week of July 11, 2022). Even if the court had been available to do so, it would not have ruled on that motion in the four days after the plaintiff filed it. Civil Local Rule 7(b) (E.D. Wis.) gives a non-moving party twenty-one days to respond to a motion. The only exceptions to that twenty-one-day response rule are summary judgment motions (which have their own briefing schedule under Civil L.R. 56) and expedited, non-dispositive motions filed under Civil L.R. 7(h). For a motion to be treated as an expedited, non-dispositive motion under Rule 7(h), the party must state in the motion's title that it is a "Civil L.R. 7(h) Expedited Non-Dispositive Motion." The plaintiff did not designate his motion for an extension of time as a Rule 7(h) expedited, non-dispositive motion, so the defendant had twenty-one days—that is, until August 1, 2022—by which to oppose the motion for an extension of time.

In his reply to the defendant's opposition to his motion to depose certain people by written questions, the plaintiff asserted that he "requested an extension of those orders for deposing witnesses, and is acting in accordance in assuming that motion is could [sic] be granted." Dkt. No. 92 at 2. A party cannot simply assume that the court is going to grant any motion the party files. Someone who wants an extension of a deadline either must contact the opposing party and obtain that party's agreement for the extension (such an

12

agreement often is called a "stipulation" between the parties) or must file his motion early enough that the opposing party has a chance to respond. The plaintiff could have contacted defense counsel and asked defense counsel to agree to an extension of the July 15, 2022 deadline; lawyers do this for each other all the time. (This is one reason that lawyers rarely call each other names, accuse each other of lying or attack each other in their pleadings. They realize that if they are disrespectful, uncivil or unprofessional to the opposing lawyer, the opposing lawyer will be less likely to agree to reasonable requests for extensions of time or other accommodations.) Or, the plaintiff could have filed his motion for an extension of time as a Civil L.R. 7(h) expedited, non-dispositive motion; if he'd filed it by July 7 or so, the defendant could have responded before the July 15, 2022 deadline. But it is not an option for a party to file a motion asking for an extension of time and simply assume that the court will grant it. When the plaintiff did not hear from the court by July 15, 2022, he should have filed the list of people he wanted to subpoena. In the future, if the plaintiff seeks extensions of deadlines the court sets, he must either get the defendant's agreement to extend the deadline or file his motion far enough in advance so that the defendant has time to respond before the deadline expires.

That said, in the separate order ruling on the parties' pending motions to compel, the court has extended the discovery deadline to July 28, 2023. For that reason, at the conclusion of this order, the court will give the plaintiff additional time to comply with the court's June 27, 2022 order and file a list of

13

the people he wishes to subpoena and provide the court with the information it required about each of those people. But the court *will* impose a deadline by which the plaintiff must provide that list.

At the June 27, 2022 hearing, the court explained that there were several reasons it was requiring the plaintiff to submit a list of the people he wanted to subpoena and information about those people: the plaintiff initially had listed over 140 individuals or entities he planned to depose, had provided no notification to the court or the defendant before serving subpoenas to third parties and had proposed questions that were inappropriate and irrelevant. The court also found that requiring the plaintiff to provide a list was appropriate given the wide-ranging allegations the plaintiff had made after filing the second amended complaint and the attenuated nature of these allegations. Dkt. No. 75. Nothing has changed; if anything, the court is more convinced that requiring the plaintiff to seek leave of court before serving a subpoena, and requiring him to explain the type of deposition, the information he wishes to obtain and the relevance of that information, is necessary to prevent the discovery from wandering far afield of the employment discrimination allegations in the second amended complaint.

The plaintiff's motion for an extension of the July 15, 2022 deadline asserted that at the June 27, 2022 hearing, the court had told the plaintiff that he could take as much time as he needed: "Quoting you, you said 'I could take as much time as I need to complete a list of those I need to deposition.'" Dkt. No. 81. See also Dkt. No. 92 at 3–4. While the court *did* make that statement,

14

the plaintiff leaves out the rest of the conversation. After explaining what the court required the plaintiff to file, the court asked the plaintiff how much time he thought he would need to compile the list and the information. The plaintiff replied that he was not sure but that he would probably need a week or two. Dkt. No. 75. The court responded that it would give the plaintiff the time he needed and asked him whether a thirty-day deadline would work. The plaintiff responded that the court would have the list within a week. The court told the plaintiff that if he wanted more than a week, it would be happy to give the plaintiff until July 15, 2022. The plaintiff replied that he would have the list of individuals he wanted to depose filed by July 15, 2022.

The court did tell the plaintiff at the hearing that he could ask for as much time as he wanted; he then asked for a week. The court gave him more than that—it gave him eighteen days, until July 15, 2022. The court did *not* tell the plaintiff that he could have an unlimited amount of time, or that he could have until the end of the discovery period. It would have made no sense for the court to give the plaintiff until the end of the discovery period to tell the court who he wanted to subpoena, because the end of the discovery period would have been too late. If the court had gotten the plaintiff's list on the day the discovery period ended, he would have missed his opportunity to subpoena or depose anyone.

The plaintiff's motion for an extension of time was untimely filed and it misrepresented the court's statements at the June 27, 2022 hearing. But because the court has extended the discovery deadline to July 28, 2023, it will

15

grant the motion and give the plaintiff another deadline by which to provide the names of the individuals he wishes to subpoena and the information the court required him to provide about those individuals.

### III. Motion to Compel Deposition Current or Past Employee's of Sargento (Dkt. No. 82)

The plaintiff seeks leave to depose Victoria Zahn, Katherine Clauson and Ricky Ferron.[4] Dkt. No. 82. He says that "[a]ll of these people were employee's [sic] of [the defendant] in 2017 when I was employed there, and all have been involved in my alleged allegations, one way or another, with the what [sic] I outlined in my 'Second Amended Complaint.'" Id.

The defendant objects. Dkt. No. 85. The defendant asserts that the plaintiff did not follow the court's June 27, 2022 order requiring the plaintiff to provide certain information about any individual he wants to depose. Id. at 1–2. The defendant argues that the plaintiff did not provide for each listed individual an explanation of "the information [the plaintiff] wishes to obtain" and an explanation of "how that information relates to the allegations in the second amended complaint (including why he believes the information is related to the defendant's treatment of the plaintiff during his employment with the defendant)." Id. at 2 (quoting Dkt. No. 78). The defendant asserts that the plaintiff's motion "vaguely" indicates that these people were employees of the defendant in 2017 and that they have all been involved in the plaintiff's

---

[4] The motion seeks to depose "Ricki Ferron." Dkt. No. 82. The second amended complaint refers to events involving "Ricky Ferron." See Dkt. No. 20 at 8, 10–11. The court assumes these filings refer to the same individual.

16

allegations. Id. The defendant asks the court to deny the plaintiff's request to depose Victoria Zahn, Katherine Clauson and Ricky Ferron. Id.

The second amended complaint includes Victoria Zahn and Katherine Clauson in its list of the "main active participants" in the group of co-workers that allegedly committed "ongoing discriminating, harassing, threaten [sic] and assaulting actions" against the plaintiff. Dkt. No. 20 at 5. The name "Katherine Clauson" appears on every page, either in descriptions of acts the plaintiff alleges she committed or in connection with the acts of others whom the plaintiff alleges harassed him and discriminated against him because of the "Katherine Clausen issues." Id. at 5–12. The second amended complaint states that Clausen engaged in numerous acts of sexual harassment against the plaintiff due to his religion, such as repeatedly making sexual comments and gestures at the plaintiff. Id. at 5–6. The second amended complaint asserts that management was aware of Clausen's actions but did not impose any "corrective measures or disciplinary actions": "All of these events and more not listed were ignored without disciplinary actions by Sargento Human Resources Management. Due to their lack of the disciplinary measures; a series of discriminatory events quickly escalated to an unwelcomed intimidating, harassing behaviors by both Sargento co-workers and later by Sargento management." Id. at 6–7.

The second amended complaint alleges that Victoria Zahn was friends with Katherine Clausen and also harassed the plaintiff. Dkt. No. 20 at 6, 10. The second amended complaint alleges that Zahn made sexual gestures at the

plaintiff in retaliation for the plaintiff reporting Katherine Clausen to management. Id. at 6. It asserts that although the plaintiff reported this event to the defendant's HR personnel and it was investigated, no action was taken. Id. The second amended complaint also mentions an incident in which Zahn allegedly "thru [sic] hands right in front of [the plaintiff's] face, because [he] accidentally turned around and walked in front of her." Id. at 10. According to the plaintiff, he reported this issue (and others) and the HR personnel "all refused to allow [him] the opportunity to file a complaint." Id.

The second amended complaint discusses Ricky Ferron. See Dkt. No. 20 at 8, 10–11. It describes an assault at the defendant's facility during which three employees, including Ricky Ferron, allegedly threw at the plaintiff, and hit him with, "boxes filled with product" as he was trying to work. Id. at 8. The plaintiff alleged that this harassing and intimidating behavior stemmed from "the Katherine Clausen issues." Id. The second amended complaint also described an incident that same day in which an employee made a comment to Ricky Ferron about how Katherine Clausen could not work a certain shift because of the plaintiff's lies. Id. The plaintiff described this as harassment, intimidation and spreading false rumors. Id. The second amended complaint refers to this alleged assault multiple times and states that "[t]he final decision to fire [the plaintiff] was made after the assault . . . ." Id. at 10–11. It alleges that "[m]anagement decided it was easier with get [sic] rid of one person than to deal with half dozen people." Id. at 11.

18

The court agrees with the defendant that the plaintiff did not follow the court's order regarding the information the plaintiff must include for each individual he seeks to subpoena. The court was required to review the second amended complaint to determine the relevance each individual might have to the plaintiff's claims. But that review makes clear that the testimony of these three individuals is relevant to the claims in the second amended complaint and proportional to the needs of the case. The court will grant the plaintiff's motion to subpoena Victoria Zahn, Katherine Clauson and Ricky Ferron for oral depositions.

### IV. Motion for Order to Permit Sargento Foods Inc Management to be Deposition of Written Questions (Dkt. No. 86)

The plaintiff filed a motion asking permission to use written questions to depose several of the defendant's human resources personnel and supervisors. Dkt. No. 86 at 1. The plaintiff identifies the human resources management personnel as Maria Herrera, Laura Beihn, Jeffery Kiesner[5] and Sonia Otte.[6] Id. The plaintiff identifies the supervisors as Eric Driessen[7] and Jeff Miller. Id. The plaintiff attached to his motion six exhibits, each corresponding to one of the

---

[5] The motion seeks to depose "Jeffery Kieser." Dkt. No. 86 at 1. The second amended complaint refers to a "Jeffery Kiesner." Dkt. No. 20 at 6–10. The court assumes these filings refer to the same individual.

[6] The motion seeks to depose "Sonja Otte." Dkt. No. 86 at 1. However, previous filings, including the second amended complaint, refer to a "Sonia Otte." See Dkt. No. 20 at 10; Dkt. No. 80 at 6. The court assumes these filings refer to the same individual.

[7] The defendant reports that it no longer employs Eric Driessen. Dkt. No. 89 at 2, n.1.

identified individuals and listing the written questions he would like that individual to answer. Id. at 3–39. The plaintiff asserts that the written depositions are necessary for him to conduct an "in-depth inquiry" of the events leading to his termination; he alleges that there are "discrepancies" in the documents the defendant produced in response to the plaintiff's request for his personal employment records. Id. at 1. The plaintiff explains that the purpose of these questions is "to inquire into the investigative procedures and events listed in the second amended complaint and events which occurred at [the defendant's] facilities and outside of them." Id. The defendant objects, asserting that the plaintiff has failed to comply with the court's June 27, 2022 order and that the plaintiff failed to provide proper notice to the defendant. Dkt. No. 89 at 1.

A. Timeliness

The defendant argues that the court imposed a July 15, 2022 deadline for the plaintiff "to identify deponents," but that the defendant did not receive the plaintiff's request to depose these individuals by written questions until "Plaintiff emailed Attorney Kayla McCann on August 8, 2022." Id. at 1–2. (The court received the plaintiff's motion to depose by written questions on August 10, 2022. Dkt. No. 86). The plaintiff responds that previously he had asked for "an extension of those orders for deposing witnesses, and is acting in accordance in assuming that motion is could [sic] be granted." Dkt. No. 92 at 2. The plaintiff cites Dkt. No. 81, his Motion to Suspend Deadline written on July 8 and filed on July 11, 2022. Id.

As the court has explained, the plaintiff *did* file a motion, which the court received before the July 15, 2022 deadline, asking for more time to compile the list of people he wanted to subpoena. Dkt. No. 81. But, as the court also has explained, that motion was not timely filed, because it did not give the defendant twenty-one days by which to respond.

B.      Failure to Comply with the Court's June 27, 2022 Order

That said, the July 15, 2022 deadline was a deadline for the plaintiff to provide the court with the list of people he wanted to *subpoena*. The motion the court received from the plaintiff on August 10, 2022 is a motion to permit the plaintiff to depose certain current and former employees of the defendant by written questions. Dkt. No. 86. In its opposition to this motion, the defendant argues that the plaintiff has failed to comply with the court's June 27, 2022 order requiring the plaintiff to list the name of each individual or entity he wishes to subpoena and to explain as to each individual or organization whether he wants to subpoena them for documents or for oral deposition. Dkt. No. 89 at 1-2. But the plaintiff is not asking leave to *subpoena* Maria Herrera, Laura Beihn, Jeffery Kieser, Sonja Otte, Eric Driessen and Jeff Miller; he is asking to depose them by written questions (as the defendant points out in its opposition, a procedure allowed by Fed. R. Civ. P. 31). The court did not order the plaintiff to list the people he wished to depose by written questions; that is not something the parties discussed at the June 27, 2022 hearing. The court ordered the plaintiff to provide a list of people he wished to *subpoena*, either to produce documents or for oral testimony. To depose a person by written

21

questions, the plaintiff must follow the requirements of Rule 31, and to do so within the discovery period. The plaintiff's August 10, 2022 motion to permit Sargento Foods Inc. management to be deposed by written questions does not violate the court's June 27, 2022 order.

C.    Notice

As the court has stated, its order ruling on the motions to compel extends the discovery deadline to July 28, 2023. If the plaintiff wants to depose anyone by written questions, he will have time to do so. But the defendant's objection is correct on one point: there is a procedure that a party must follow to depose someone by written questions. The plaintiff must follow that procedure, just as the defendant would be required to follow the procedure if the defendant were seeking to depose someone by written questions. Given that, the court emphasizes a few of the requirements of Rule 31.

First, Fed. R. Civ. P. 31(a)(2)(i) requires a party to obtain the court's permission to depose someone by written questions if the parties have not stipulated (agreed) to the deposition and the deposition would result in more than ten depositions being taken by a single party (either orally or by written questions). In other words, if the plaintiff wants to conduct more than ten depositions in *any* form, he needs to obtain the defendant's agreement to depose any of the individuals or entities he seeks to depose by written questions.[8] If the defendant won't agree (and the defendant is not required to

_____

[8] Even if the defendant agrees to the plaintiff deposing someone by written questions, if the plaintiff is required to compel that person's appearance for the

agree), the plaintiff must ask this court's permission to depose the individuals by written questions.

Second, the rule requires that "[a] party who wants to depose a person by written questions must serve [the questions] on every other party, with a notice stating, if known, the deponent's name and address." Fed. R. Civ. P. 31(a)(3). The defendant asserts that the plaintiff's August 8, 2022 email to the defendant did not adequately comply with this requirement. Dkt. No. 89 at 3. Although the plaintiff's email notified the defendant of the *names* of the individuals he wished to depose and provided the written questions, the plaintiff did not provide *addresses* as the rule requires. Dkt. No. 90-1.

Third, the rule requires that the notice "state the name or descriptive title and the address of the officer before whom the deposition will be taken." Fed. R. Civ. P. 31(a)(3). The defendant asserts that the plaintiff "did not provide any information about an officer before whom the deposition will be taken." Dkt. No. 89 at 3. The August 8, 2022 email from the plaintiff to the defendant did not identify the officer before whom the written depositions would be taken or the address of that person. Dkt. No. 90-1. Given the plaintiff's statement in his email to the defendant that he "expect[ed] all of these interrogatories responses to the provided questions to be verified and signed under oath by the responding party," id. at 1–2, it appears the plaintiff (a) may be unaware of the

_____

written deposition, the plaintiff must follow the requirements of Rule 45 (which governs the issuance of subpoenas) and must provide the name and other identifying information the court required in its June 27, 2022 order for people whom he wishes to subpoena.

difference between interrogatories (allowed by Fed. R. Civ. P. 33)[9] and depositions by written questions (allowed by Fed. R. Civ. P. 31) and (b) may be unaware that a deposition by written questions still must be taken before an officer. As the one seeking to take depositions, the plaintiff must follow the procedure in Rule 31, which includes arranging and paying for an officer (such as a stenographer or court reporter) to conduct the depositions. See Fed. R. Civ. P. 28 (governing persons before whom depositions may be taken).

Fourth, the rule requires the person who notices the deposition to "deliver to the officer [such as a stenographer or court reporter] a copy of all the questions served and of the notice." Fed. R. Civ. P. 31(b). The officer then must act promptly to take the deposition, prepare and certify it and send it to the party.

Finally, the rule requires that once the deposition is complete, the party who noticed the deposition "must notify all other parties when it is completed." Fed. R. Civ. P. 31(c).

The plaintiff stated in his reply that "the plaintiff as required by the Federal Rules of Civil Procedure has to present the defendant a 21 day notice of the questions the plaintiff plans on asking at any deposition." Dkt. No. 92 at 2. This statement is incorrect; there is no such requirement in Rule 31. The Advisory Committee Notes to Rule 31 state that "[n]o special restriction is

---

[9] Rule 33(a)(1) allows a party to serve no more than twenty-five interrogatories—written questions—on any other *party* to the lawsuit. The questions must be relevant to the claims in the lawsuit. A party may not use interrogatories to ask questions of non-parties.

placed on the time for serving notice of taking the deposition and the first set of questions." Even Rule 30, which governs depositions by oral examination, does not impose a twenty-one-day time requirement; it states that "[a] party who wants to depose a person by oral questions must give *reasonable* written notice to every other party." Fed. R. Civ. P. 30(b)(1) (emphasis added).

The plaintiff asserts that the individuals he seeks to depose through written questions "have firsthand knowledge and were involved in and to the events which occurred at [the defendant]" through their employment as human resources personnel and supervisors. Dkt. No. 92 at 3. The court acknowledges that, with the exception of Jeff Miller, the plaintiff named these individuals in the second amended complaint and they are relevant to the plaintiff's allegations that the defendant's management did nothing to address the discrimination and harassment: Maria Herrera (dkt. no. 20 at 6–7, 10–11); Laura Beihn (id. at 8, 10–11), Jeffery Kiesner (id. at 6–10); Sonia Otte (id. at 10); and Eric Driessen (id. at 9–10).

The defendant opposed the plaintiff's motion to depose these individuals by written questions based on a misunderstanding of the court's June 27, 2022 ruling. The plaintiff appears to have shared that misunderstanding, as well as appearing to have no knowledge of the requirements of Rule 31. The court will deny without prejudice the plaintiff's motion to permit Sargento Foods Inc management to be deposed by written questions. That means that if the defendant will not stipulate (or agree) to the depositions and if the plaintiff concludes that he is prepared to follow all the requirements of Rule 31, the

25

plaintiff may file a new motion for leave to depose these individuals by written questions.

## V.     Motion to Take Deposition from Former Supervisor Eric Driessen (Dkt. No. 100)

Upon learning from the defendant's opposition to his motion for leave to depose by written questions (dkt. no. 89 at 2, n.1) that Eric Driessen no longer works for the defendant, on October 6, 2022 the plaintiff filed a separate motion seeking the court's permission to depose Eric Driessen. Dkt. No. 100. The plaintiff appears to be seeking leave to take an oral deposition, because he states that if the defendant stipulates to the deposition, the plaintiff "will vacate his request to subpoena Driessen by written deposition." Dkt. No. 100 at 1. The plaintiff provides the following information in support of his request:

> [Eric Driessen] was involved in the handling of worker complaints, disciplinary actions, including several of the plaintiffs [sic]. He was involved in discussion with other managerial personnel regarding the plaintiff, and harassed the plaintiff himself. He has actively participated in the recruitment of women and underage girls for his company to be used against the plaintiff, while plaintiff was still employed at Sargento. The plaintiff needs Driessen's testimony to be put on record, in case he becomes a flight risk and due to the geographic location cannot be subpoenaed to testify at the trial.

Id. The defendant opposed the motion, dkt. no. 102, and the plaintiff filed a reply brief, dkt. no. 103.

On August 31, 2022, the defendant filed its response to the plaintiff's motion to depose Driessen by written questions. Dkt. No. 89. It appears that until the plaintiff received that document—at the earliest, a month before the discovery deadline was to expire—the plaintiff may not have been aware that Driessen no longer worked for the defendant. See Dkt. No. 94-6 at 1

26

(September 7, 2022 email from the plaintiff to defense counsel). For reasons that are not clear, the plaintiff waited until October 6, 2022, almost a week after the expiration of the discovery deadline, to file a motion asking to subpoena Driessen for an oral deposition. The defendant argues that the plaintiff made this request beyond the July 15, 2022 deadline the court had set for listing individuals whom the plaintiff wanted to subpoena. Dkt. No. 102 at 2. Technically, the defendant is correct. But it appears that the plaintiff had planned to depose Driessen by written questions; he sought permission to do so on August 10, 2022—seven weeks before the close of discovery. The plaintiff sought leave to subpoena Driessen for a Rule 30 oral deposition only after he learned that Driessen was no longer an employee of the defendant, and that appears to have been on or after August 31, 2022.

   More concerning is the fact that the court received the plaintiff's motion for leave to subpoena Driessen for oral deposition on October 6, 2022—a week *after* the September 30, 2022 discovery deadline. The plaintiff dated the motion October 4, 2022—still four days *after* the discovery deadline. Dkt. No. 100. The plaintiff did not file a motion asking the court to extend the discovery deadline. The plaintiff's request was late by any measure.

   As the defendant argues, the plaintiff's motion also makes allegations against Driessen that go far beyond the allegations in the second amended complaint. The second amended complaint lists the "active participants" in the discrimination against him as Katherine Clauson, Bruce Behnke, Melissa Bratz, Victoria Zahn, Amy Fucile, Jeff Van Asten and William Roit. Dkt. No. 20

27

at 5. The twelve-page, single-spaced document mentions Driessen only twice. Driessen's name does not appear until page 9; the plaintiff alleged that Driessen was a supervisor and that he was aware of two incidents in which co-workers tried to blame machine issues on the plaintiff or tried to make it look like he wasn't working. Id. at 9. The plaintiff said that Driessen asked the plaintiff how he felt about meeting the company's quotas. Id. On page 10, the plaintiff alleged that Driessen "refused" to sign his quarterly safety sheets for three or four days, which "would have" resulted in a reduced annual bonus. Id. at 10. The plaintiff alleged that this was retaliation from "the Katherine Clauson discrimination behaviors and the 03-12-2018 assault." Id. In contrast, in his motion for leave to subpoena Driessen, the plaintiff now claims that Driessen "actively participated in the recruitment of women and underage girls for his company to be used against the plaintiff" and that Driessen "harassed the plaintiff himself." Dkt. No. 100 at 1. The court has explained that allegations about enticement are not part of the claims in the second amended complaint.

Finally, the plaintiff asserts—without any support—that he needs to get Driessen's testimony on the record "in case [Dreissen] becomes a flight risk." Id. As the court has explained to the plaintiff in the past, this is not a criminal case. Driessen is not a defendant. The plaintiff has provided nothing to support a conclusion that Driessen would make himself unavailable if this case were to make it to trial and if Driessen were to be called as a witness.

28

The plaintiff's motion is procedurally improper because he filed it after the close of discovery. It seeks information far outside the boundaries of the allegations in the second amended complaint and seeks to justify deposing Driessen based on an unsupported allegation that he might not appear for trial. All of these are reasons for the court to deny the plaintiff's motion, and it will do so. But the court will deny the motion without prejudice. Because the court has extended the discovery deadline in its order ruling on the parties' motions to compel, the plaintiff will have time to decide which individuals are most likely to have knowledge about the employment discrimination he has alleged. Perhaps Driessen, as his former supervisor, is one of those individuals. If so, the plaintiff will have to ask whether the defendant would agree to the plaintiff deposing Driessen by written questions under Rule 31. If not, the plaintiff again may seek leave of the court to depose Driessen by written questions, or may—by the deadline the court sets below—seek leave to subpoena Driessen.

## VI. Motion to Permit Deposition of Debra Seidl (Dkt. No. 105)

On January 6, 2023, the court received from the plaintiff a motion seeking the court's permission to depose Debra Seidl. Dkt. No. 105. The plaintiff provides the following information in support of his request:

> Debra Seidl was a woman I had dinner with four times between May and November of 2017 while I was employed at Sargento Food INC. Seidl like Barbara Finnel; were women friends which the plaintiff confided in about the circumstances occurring in Sargento Hilbert WI facility. She has firsthand knowledge of privileged information and is also a witness to this case pertaining to the events which occurred, and the emotional turmoil the plaintiff was experiencing while employed.

Eric Driessen was a goal oriented supervisor who went beyond the call of duty to help his employer achieve a legal advantage in dealing with the allegations the plaintiff is stating in this case. Seidl was one of the first persons Sargento enlisted in exploring what the plaintiff was thinking and what he knew, so they could decide on how to respond to it.

An importance [sic] aspect to consider is; the connection she maintained with my Sargento supervisor Eric Driessen. Debra Seidl and Erick Driessen attended the same church; Breakthrough Covenant of Appleton Wisconsin, a congregation were [sic] Driessen preached at. DKT.27p2 .

. . .

Debra Seidl is the link which connects my current supervisor Driessen to the activities Sargento was involved in and the people they used. These included information gathering and data mining, which led to a scheme of framing the plaintiff via thru [sic] enticements. Not only does it show what Sargento would embark in, it specifically outlines the extent which Eric Driessen would involve himself in numerous schemes to earn respect and possibly a promotion! See illustration below.

Seidl → Driessen ←Chevalier ←Buechel.
Driessen→Sargento Foods Inc Management.

All of these aspects need to be allowed in discovery to be investigated. The jury needs to see the whole picture how Sargento Foods Inc. was looking for a viable way of getting rid of a persecuted employee, or in their eyes a problem employee.

From May of 2017 to present; Sargento hired people to gather information, share information of what the plaintiff was thinking and aware of, set scenarios of entrapment by involving underage girls at the Hilbert facility and other venues, for one purpose of getting rid of a [sic] employee they viewed as an issue. Debra Seidl is the link which connects Sargento's motive for contempt in these alleged schemes. Furthermore; it proves Sargento was well aware of the plaintiff's faith based beliefs of abstaining from sex before marriage, and what other employees were doing to him. They were so clear on what was being perpetrated against the plaintiff, that they incorporated drastic measures to rectify the issue.

Though [sic] dinner conversations the plaintiff had with Seidl, it was
the bases for setting everything in motion!

Dkt. No. 105 at 1–2.

In his March 30, 2022 Rule 26(f) report, the plaintiff identified Debra
Seidl as one of the approximately 140 individuals/entities he wanted to depose
or subpoena. Dkt. No. 56 at 12. The defendant included Seidl in its June 17,
2022 motion to quash the plaintiff's "Subpoenas to Produce Documents,
Information, or Objects or to Permit Inspection of Premises in a Civil Action."
Dkt. No. 67 at 1 (asserting that the motion to quash subpoenas applied "to
several entities, including, but not limited to, Experience Fitness, Inc., Allianz
Global, Ogletree Deakins, Jane Gilles, *Debra Seidel*, Barbara Finnel, and Taylor
Chevalier"). The plaintiff's January 2023 request to depose Seidl acknowledges
this objection: "Since the Defendant has objected against the plaintiff [sic]
deposition of Debra Seidl previously. Defendant's objections are noted, but at
this point any objections have elapsed." Dkt. No. 105 at 1.

At the June 27, 2022 hearing, the plaintiff informed the court that of the
individuals his Rule 26(f) report identified, he had thus far sent subpoenas only
to third parties Taylor Chevalier, Jane Gilles-Copps, Jeffrey Buechel and
Barbara Finnel. In his January 6, 2023 request to depose Debra Seidl, the
plaintiff reemphasizes this fact: "It should be noted too; Seidl was never served
with a subpoena by the plaintiff." Dkt. No. 105 at 1.

The plaintiff appears to seek Debra Seidl's deposition primarily as a "link
which connects . . . supervisor [Eric] Driessen to the activities Sargento was
involved in and the people they used." Dkt. No. 105 at 2. As the court explained

31

above, however, the plaintiff's allegations that Driessen was involved in enticement schemes are new and were not included in the second amended complaint. And his request to depose Seidl is extremely untimely. The court-ordered deadline for the plaintiff to identify individuals he wished to subpoena was July 15, 2022, and the discovery deadline was September 30, 2022; the plaintiff dated his motion to depose Seidl on January 3, 2023—over three months after the discovery deadline had expired and almost six months after the deadline the court had set for him to list the people he wished to subpoena. The plaintiff identified Seidl as a possible witness as far back as March 30, 2022. Dkt. No. 56 at 12. At the June 27 hearing, the plaintiff briefly mentioned Debra Seidl's name once in attempting to explain why he felt it necessary to subpoena and depose several third-party individuals. Dkt. No. 75 at 21:53– 22:02 (audio of June 27, 2022 hearing) (mentioning Debra Seidl as being connected, such as because she attended Eric Driessen's church). This did not constitute a request to subpoena Seidl. And the court quashed any third-party subpoenas the plaintiff had served prior to June 27, 2022. Dkt. No. 78 at 2–3.

Because the plaintiff appears to want to depose Seidl to prove allegations against Driessen that the plaintiff did not make in the complaint, Seidl is too attenuated from the employment discrimination claims to be relevant. The plaintiff's request to depose her is extremely untimely. The court will deny the plaintiff's motion to depose Debra Seidl.

**VII. Motion for Amendment to Buechels Deposition Request to Add Kelly Buechel for Subpoena for Deposition (Dkt. No. 108)**

On February 28, 2023, the court received from the plaintiff a motion advising the court that he intended to subpoena Kelly Buechel. Dkt. No. 108.

As noted above, on June 14, 2022, Kelly Buechel filed a motion to quash a subpoena the plaintiff had sent to her husband, Jeffrey Buechel. Dkt. No. 65. The subpoena indicated that the written deposition questions were for "Jeffery [sic] Buechel/spouse." Dkt. No. 65-1 at 2. The court granted the motion and quashed the Buechel subpoena the next day. Dkt. No. 66. On June 21, 2022, in asking the court to reconsider its decision, the plaintiff clarified that he sought to depose only Jeffrey Buechel: "And to correct a mistake, I only planned on subpoena [sic] Jeffery [sic] Buechel; I made a mistake putting spouse on there." Dkt. No. 73 at 4. The plaintiff now states that he "stipulates that comment to be ignored and changes his intentions to subpoena Kelly Buechel for deposition." Dkt. No. 108 at 1.

In his February 2023 motion, the plaintiff indicates that his reason for requesting permission "to depose Kelly Buechel at this time is due to fact and the law dictates that a spouse cannot be forced to testify against someone they are married too [sic]; using spousal privilege or the 5th amendment." Dkt. No. 108 at 1. The plaintiff asserts that "the only way to avoid any issues is by mandating Mrs. Buechel to testify in a deposition" because this "removes any notion or strategy by the Sargento legal team of Jeffery [sic] Buechel, in which he can use an excuse or deny any knowledge of . . . [t]he fact that he was not aware of the involvement of what was going on in his household, or . . . [h]e

33

was not aware of what or how his family was participating in, acting on behalf, or working for Sargento's legal team." Id. at 1–2.

The plaintiff then repeats allegations that the Buechels were involved in alerting Taylor Chevalier (whom the plaintiff asserts was part of the defendant's alleged enticement scheme) to the plaintiff's swim schedule at the fitness club. Id. at 2–3. The plaintiff also asserts that "the Buechel's [sic] used their daughter in acts against the plaintiff for Sargento Foods Inc. in his post employment year of 2019" when she was "a proximally [sic] 12, 13 yrs of age." Id. As the court has repeatedly stated in this and other orders, the plaintiff's allegations involving underage girls and criminal activity are not relevant to the *employment discrimination* allegations in the plaintiff's second amended complaint. The court denied the plaintiff's request to depose Jeffrey Buechel for that reason. Kelly Buechel is no more relevant to the claims in the second amended complaint than was Jeffrey Buechel.

The plaintiff's motion also states:

> Without relying on or mentioning Sargento stunts by carried out by Buechel's [sic] in 2019, there numerous [sic] examples and proof there is more to the Buechel's involvement in which they were actively participating in gathering/relaying information and other acts for Sargento for monies while the plaintiff was still employed. DKT. 107 p6 3RD paragraph.

Dkt. No. 108 at 2. This vague assertion does not comply with the court's June 27, 2022 order that the plaintiff explain for each individual "the information he wishes to obtain" and "how that information relates to the allegations in the second amended complaint (including why he believes the information is

34

related to the defendant's treatment of the plaintiff during his employment with the defendant)." Dkt. No. 78 at 3.

The plaintiff's statement that he intends to subpoena Kelly Buechel comes months after the court-imposed July 15, 2022 deadline. Dkt. No. 78. The plaintiff argues that because he filed his July 11, 2022 motion to extend the July 15 deadline and the court had not yet ruled on that motion, "the request falls into the deadline." Dkt. No. 108 at 3. The court already has explained that this assumption is incorrect. The plaintiff also filed this motion over four months after the September 30, 2022 discovery deadline expired. The court will deny the plaintiff's request to subpoena Kelly Buechel.

## VIII. Motion to Compel Documents 81, 82, 83, 86 to be Ruled On (Dkt. No. 95) and Motion to Compel Document 80 to be Ruled On (Dkt. No. 96)

As stated in this order, the last hearing took place on June 27, 2022. The plaintiff has been filing motions since July 11, 2022—for eight months. The court should have ruled on those motions long ago. Its failure to do so has allowed the plaintiff to rely on unsupported assumptions and misunderstandings, and it has caused the defendant time and expense in responding to motions that the plaintiff might not have filed had the court ruled earlier. The failure to rule sooner is entirely the responsibility of the court.

The plaintiff understandably has been frustrated by the delay. On September 14, 2022, the court received from the plaintiff a document titled "Plaintiff Motion to Compel Documents 81, 82, 83, 86 To Be Ruled On." Dkt.

35

No. 95. The plaintiff states in the motion that he called chambers a couple of times to ask when the court would rule. He stated that he understood that the court had a busy schedule (and made a reference to "summer time vacation" days). He stated that he'd been told by someone in chambers that the court was "well aware of the motions and the timeframe in which discovery is active." Id. On September 21, 2022, the plaintiff also filed a similar motion titled "Plaintiff Motion to Compel Document 80 to be Ruled On." Dkt. No. 96.

The court has been aware that the plaintiff has filed several motions, just as it has been aware that parties in the over 300 other civil cases on the court's docket have been filing motions. The court regrets that it cannot act on every motion as it comes in and certainly regrets that it did not rule sooner on the motions in this case. But a party cannot "compel" a court to rule. What a party can do is ask the court to extend deadlines. Other parties have done so in other cases, and when the court realizes that its own actions have caused delays, it does not hesitate to grant such motions. The court understands that the plaintiff is not a lawyer; perhaps he was not aware that he needed only to file a motion saying, "The discovery deadline is approaching and the court has not ruled on several discovery motions. The plaintiff asks the court to extend the discovery deadline until it can rule on those motions." That was, however, the appropriate action for the plaintiff to take—not to assume that his motion to extend the July 15, 2022 deadline would be granted, or to continue to file motions long after the discovery deadline had expired.

The plaintiff has a right to represent himself. But that choice has, in some respects, made his suit more difficult for him and for everyone else. The plaintiff strongly believes the defendant's discrimination against him was wide-ranging and relentless, but he has made specific allegations in the second amended complaint. The plaintiff has a right to obtain discovery about those allegations from people with knowledge about them, but he finds it difficult to confine himself to the allegations in the amended complaint. The plaintiff's initial proposal to depose an unheard-of 140 individuals in a single-plaintiff employment discrimination case, and his premature action in subpoenaing some individuals without notifying the court or the defendant, caused the court to require the plaintiff to provide the court with a list of the people he wanted to subpoena and a description of their relevant to the allegations in the amended complaint. The court deferred to the plaintiff in setting a deadline for him to provide that list and gave him more time than he requested to file it; he did not meet that deadline and relied on his incorrect assumption that once he'd filed a motion to extend the deadline, he didn't need to comply with it.

The plaintiff's interactions with defense counsel have been combative, accusatory and personal. The court told the plaintiff at the June 27, 2022 hearing that such behavior was inappropriate and unprofessional and that he must stop. He has not. Although many defense counsel are willing to work with *pro se* parties—stipulating to extensions of deadlines, holding off on motions to compel, declining to object when a plaintiff doesn't fully follow a particular procedural rule—the plaintiff's interactions with defense counsel (who, as the

court has indicated in its order ruling on the motions to compel, are not the people who discriminated against the plaintiff and are simply doing their jobs) likely have made such cooperation less likely.

Even after the court required the plaintiff to notify the court of the people he wished to subpoena—in the hope that it would help the plaintiff narrow to the most critical the list of people he believed had information about the events alleged in the second amended complaint—the motions the court has ruled on in this order mention sixteen possible deponents,[10] well over the ten allowed without leave of court by Rule 31. The court has seen many civil cases in which both sides were represented by experienced lawyers that did not involve this many depositions. Depositions are time-consuming and expensive. The deposing party must arrange for and compensate the court reporter or other official. As this order indicates, there are rules governing the issuance of subpoenas (Rule 45), the noticing and conduct of oral depositions (Rule 30) and the noticing and conduct of written depositions (Rule 31). Represented parties often take all these considerations into account and carefully determine who they really need to depose and why.

And, as the court indicated in the order ruling on the motions to compel, non-lawyers are not excused from complying with all the national and local

---

[10] The court has ruled that the plaintiff may not depose six of those individuals: Taylor Chevalier, Jane Gilles-Copps, Jeffrey Buechel, Susan Ormond, Debra Seidl and Kelly Buechel. That ruling is final; even though the court is extending the discovery deadline to July 28, 2023, the plaintiff may not depose these six individuals.

procedural rules just because they aren't lawyers. "Even pro se litigants are obliged to follow procedural rules." <u>McCurry v. Kenco Logistics Servs., LLC</u>, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (quoting <u>Members v. Paige</u>, 140 F.3d 699, 702 (7th Cir. 1998)). The court understands that this may not be an easy task for people who don't have legal training—particularly when they might not have high-speed Internet or a nearby legal library. But the law requires all parties—not just lawyers—to follow the procedural rules.

In its order ruling on the motions to compel, the court has extended the discovery deadline to July 28, 2023. This will give the plaintiff a final opportunity to think through who he truly needs to depose (orally or in writing), to interact courteously and professionally with defense counsel and to familiarize himself with the procedural rules and follow them. The court will not grant further extensions of the discovery deadline unless a party files a *timely*—that is, filed in time for the other side to object—motion for an extension of time. The court will do its best to rule more promptly on such motions.

Because this order and the court's order ruling on the motions to compel resolves all the pending motions upon which the plaintiff has asked the court to rule, the court will deny the motions to compel ruling as moot.

## IX. Conclusion

The court **DENIES** the plaintiff's Motion for Order to Depose Witnesses Previously Quashed as to Taylor Chevalier, Jane Gilles-Copps and Jeffrey Buechel. Dkt. No. 80.

The court **DENIES** the plaintiff's motion to subpoena Susan Osmond. Dkt. No. 80.

The court **GRANTS** the plaintiff's motion to subpoena Barbara Finnel for an oral deposition, but restricts the scope of the plaintiff's deposition of Barbara Finnel to questions only about what she observed and heard at the February 1, 2018 anniversary dinner banquet event. See Dkt. No. 20 at 10; Dkt. No. 80 at 6.

The court **GRANTS** the plaintiff's Motion to Suspend Deadline. Dkt. No. 81.

The court **GRANTS** the plaintiff's motion to subpoena Victoria Zahn, Katherine Clauson and Ricky Ferron for oral deposition. Dkt. No. 82.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's Motion for Order to Permit Deposition by Written Questions. Dkt. No. 86.

The court **DENIES AS MOOT** the Plaintiff Motion to Compel Documents 81, 82, 83, 86 to be Ruled On. Dkt. No. 95.

The court **DENIES AS MOOT** the Plaintiff Motion to Compel Document 80 to be Ruled On. Dkt. No. 96.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's Motion to Take Deposition from Former Supervisor Eric Driessen. Dkt. No. 100.

The court **DENIES** the plaintiff's Motion to Permit Deposition of Debra Seidl. Dkt. No. 105.

The court **DENIES** the plaintiff's Motion for Amendment to Buechels Deposition Request to Add Kelly Buechel for Subpoena for Deposition. Dkt. No. 108.

The court has addressed the parties' motions to compel (Dkt. Nos. 83, 93, 98) in a separate order.

The court **ORDERS** that by the end of the day on **April 21, 2023**, the plaintiff must file with the court a motion that (a) lists the name of each individual or organization whom he wishes to subpoena, (b) explains with regard to each individual or organization whether he wishes to subpoena that individual or organization for documents or for oral examination (deposition), (c) explains for each individual or organization the information he wishes to obtain and (d) explains for each individual or organization how that information relates to the allegations in the second amended complaint (including why he believes the information is related to the defendant's treatment of the plaintiff during his employment with the defendant). The plaintiff must file this motion in time for the court to *receive* it by the end of the day on April 21, 2023. If the court does not receive the motion, or a timely motion to extend the deadline for filing it, by the end of the day on April 21, 2023, the plaintiff will forfeit his ability to subpoena witnesses for oral deposition.

Dated in Milwaukee, Wisconsin this 27th day of March, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**